## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY, AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

       *Plaintiff,*

    v.

JPAY INC.

       *Defendant.*

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox
Mag. Judge Patricia T. Morris

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiff*

MORGAN, LEWIS & BOCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

---

## DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION

### Oral Argument Requested

Defendant JPay Inc. ("Defendant"), by its attorneys, and pursuant to the

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, hereby moves for an order compelling

arbitration of Plaintiff's claims and dismissing or staying the case.  Defendant relies on the facts and law set forth in the accompanying brief in support.

Pursuant to Local Rule 7.1(a), counsel for Defendant advised Plaintiff of this Motion and its legal basis on June 1, 2018 via telephone.  Counsel for Defendant requested, but did not obtain, concurrence in the relief sought.  Defendant filed a Motion to Compel Arbitration on June 1, 2018 (Doc. No. 12).  Pursuant to the Stipulated Order Regarding Plaintiff's Proposed Amended Complaint (Doc. No. 17), Plaintiff was granted leave to file an amended complaint.  Pursuant to the same, Defendant's initial Motion to Compel Arbitration (Doc. No. 12) was deemed moot, and Defendant was granted leave to file this Renewed Motion to Compel Arbitration directed towards Plaintiff's amended complaint.

Dated:  July 10, 2018

Respectfully submitted,

JPAY INC.


By: */s/ Elizabeth Herrington*
    One of Their Attorneys

Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

Benjamin W. Jeffers (P57161)
Hickey Hauck Bishoff & Jeffers PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY, AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

        *Plaintiff*,

    v.

JPAY INC.

      *Defendant*.

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox
Mag. Judge Patricia T. Morris

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiff*

MORGAN, LEWIS & BOCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

---

# BRIEF IN SUPPORT OF DEFENDANT'S RENEWED
# MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUE PRESENTED ................................................. vi

STATEMENT OF CONTROLLING AUTHORITY ............................................ vii

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF RELEVANT FACTS ................................................ 2

    A.    Plaintiff Accepted JPay's Terms of Use .............................. 3

    B.    Plaintiff Accepted a Mutually Binding Arbitration Agreement ......... 4

    C.    Plaintiff's Allegations of Wrongdoing .............................. 6

ARGUMENT ..................................................................... 8

I.    PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION .................. 8

    A.    The Parties' Agreement to Arbitrate is Governed by the Federal Arbitration Act ................................................... 8

    B.    Arbitration is Required by the Federal Arbitration Act and Favored by Public Policy ......................................... 9

    C.    The Arbitration Agreement is Binding and Should Be Enforced ...... 11

        1.    The Parties Entered Into a Valid and Enforceable Agreement to Arbitrate .......................................... 12

        2.    The Arbitration Agreement Encompasses Plaintiff's Claims ...................................................... 14

        3.    None Of Plaintiff's Claims Are Excluded From Arbitration .................................................. 15

        4.    Plaintiff Has No Basis to Avoid Arbitration ................... 16

II.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION OR DISMISSED ............................................... 22

CONCLUSION .................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013)................................................................10

*Andrews v. TD Ameritrade, Inc.*,
  596 F. App'x 366 (6th Cir. 2014) ......................................................23

*Aqualucid Consultants, Inc. v. Zeta Corp.*,
  2017 WL 6604258 (6th Cir. Dec. 27, 2017)......................................17

*Asa v. Verizon Commc'ns, Inc.*,
  2017 WL 5894543 (E.D. Tenn. Nov. 29, 2017)................................13

*AT&T Mobility v. Concepcion*,
  131 S. Ct. 1740 (2011)..........................................................10, 15

*AT&T Tech. v. Commc'n Workers of Am.*,
  475 U.S. 643 (1986)..................................................................11

*Cain v. Redbox Automated Retail, LLC*,
  136 F. Supp. 3d 824 (E.D. Mich. 2015) ......................................13, 16

*Catlin v. United States*,
  324 U.S. 229 (1945)..................................................................23

*Centennial Bank v. Adams St. Lofts, LLC*,
  2013 WL 12161864 (N.D. Fla. July 30, 2013)................................19

*City of Detroit Pension Fund v. Prudential Sec. Inc.*,
  91 F.3d 26 (6th Cir. 1996) .............................................................11

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)....................................................................9

*Dietz v. Allied Home Mortg. Capital Corp.*,
  No. CIV. 10-12610-GCS, 2010 WL 4286193 (E.D. Mich. Oct. 26,
  2010) ......................................................................................23

*Ferro Corp. v. Garrison Indus., Inc.*,
  142 F.3d 926 (6th Cir. 1998) .......................................................................16, 17

*Fuego Grill, L.L.C. v. Domestic Unif. Rental*,
  2013 WL 238540 (Mich. Ct. App. Jan. 22, 2013) *appeal denied*
  *sub nom. Fuego Grill, LLC v. Domestic Unif. Rental*, 832 N.W.2d
  201 (Mich. 2013) ...................................................................................................10

*Glazer v. Lehman Bros., Inc.*,
  394 F.3d 444 (6th Cir. 2005) ..............................................................................12

*Granite Rock Co. v. Int'l Bhd. of Teamste*rs,
  561 U.S. 287 (2010)................................................................................................11

*Great Earth Cos. v. Simons*,
  288 F.3d 878 (6th Cir. 2002) ........................................................................11, 17

*Green v. Ameritech Corp.*,
  200 F.3d 967 (6th Cir. 2000) ..............................................................................22

*Hartman v. Hartman*,
  2012 WL 3194068 (Mich. Ct. App. Aug. 7, 2012) ..........................................22

*Hensel v. Cargill, Inc.*,
  198 F.3d 245 (6th Cir. 1999) ..............................................................................22

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan,*
  *Inc.*,
  350 F.3d 568 (6th Cir. 2003) ..............................................................................15

*Kensu v. Keefe Commissary Network, L.L.C. D/B/A Access Corr.*,
  2:18-cv-10171-AC-EAS (E.D. Mich. filed Jan. 16, 2018)................................19

*Litton Fin. Printing Div. v. NLRB*,
  501 U.S. 190 (1991)................................................................................................12

*Mabin v. HSBC Mortg. Servs., Inc.*,
  2015 WL 6161791 (Mich. Ct. App. Oct. 20, 2015) ..........................................19

*Marmet Health Care Ctr., Inc. v. Brown*,
  565 U.S. 530 (2012)................................................................................................10

*Martis v. Dish Network Serv., L.L.C.*,
   597 F. App'x 301 (6th Cir. 2015) ........................................................................8

*Masco Corp. v. Zurich Am. Ins. Co.*,
   382 F.3d 624 (6th Cir. 2004) ...........................................................................11

*McGee v. Armstrong*,
   2012 WL 11010071 (N.D. Ohio Nov. 14, 2012), *report and
   recommendation adopted*, 2014 WL 3012879 (N.D. Ohio July 3,
   2014) ................................................................................................................16

*McIntyre v. First Fin. Grp.*,
   2012 WL 5939931 (W.D. Mich. Nov. 27, 2012) .............................................15

*Mech. Power Conversion, L.L.C. v. Cobasys, L.L.C.*,
   500 F. Supp. 2d 716 (E.D. Mich. 2007) ........................................................9, 15

*Moses H. Kone Mem'l Hosp. v. Mercury Constr. Co.*,
   460 U.S. 1 (1983) ..............................................................................................11

*Orkin Exterminating Co. v. Petsch*,
   872 So. 2d 259 (Fla. Dist. Ct. App. 2004) ..................................................20, 21

*Ozormoor v. T-Mobile USA, Inc.*,
   354 F. App'x 972 (6th Cir. 2009) ....................................................................23

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ...............................................................................17, 18, 20

*Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of
   Pittsburgh, PA*,
   748 F.3d 708 (6th Cir. 2014) ............................................................................10

*Schechner v. Whirlpool Corp.*,
   237 F. Supp. 3d 601 (E.D. Mich. 2017) ..........................................................12

*Silverman v. Spitzer*,
   2014 WL 7157419 (Mich. Ct. App. Dec. 16, 2014) .........................................20

*Simon v. Pfizer Inc.*,
   398 F.3d 765 (6th Cir. 2005) ...........................................................................22

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)...............................................................................16

*Stewart Agency, Inc. v. Robinson*,
  855 So. 2d 726 (Fla. Dist. Ct. App. 2003).........................................21

*Uhl v. Komatsu Forklift Co.*,
  512 F.3d 294 (6th Cir. 2008) ...............................................................8

*Woodruff v. TRG-Harbour House, Ltd.*,
  967 So. 2d 248 (Fla. Dist. Ct. App. 2007).....................................18, 19

**Statutes**

9 U.S.C. § 1 ...............................................................................................15

9 U.S.C. § 2 .................................................................................................9

9 U.S.C. § 3 ...............................................................................................22

9 U.S.C. § 4 ...............................................................................10, 11, 18, 20

MCL § 691.1686(1) ...................................................................................10

## STATEMENT OF ISSUE PRESENTED

Where a consumer enters into a contractual relationship with a company pursuant to a written agreement that includes a broad arbitration provision, and where that consumer files a lawsuit asserting claims against the company arising out of and predicated upon that written agreement, should the Court compel arbitration and dismiss the lawsuit or stay proceedings pending arbitration?

**Defendant answers: Yes**

**Plaintiff answers: No**

**The Court should answer:  Yes**

## STATEMENT OF CONTROLLING AUTHORITY

Pursuant to Local Rule 7.1(d)(2), Defendant states that the following authorities are the controlling or most appropriate authorities for the relief requested by this motion:

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013)

*Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366 (6th Cir. 2014)

*AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011)

Federal Arbitration Act, 9 U.S.C. §1, *et seq.*

*Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926 (6th Cir. 1998)

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444 (6th Cir. 2005)

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)

## <u>PRELIMINARY STATEMENT</u>

This action arises from Plaintiff Temujin Kensu's ("Plaintiff" or "Kensu")
purchase of products and services from Defendant JPay Inc. ("Defendant" or
"JPay").  Plaintiff alleges that JPay's products and services are of deficient quality,
and that JPay deceived him regarding the qualities and characteristics of the products
and services.  Plaintiff asserts causes of action for breach of contract, breach of
express and implied warranty, breach of duty of good faith, fraudulent and negligent
misrepresentations, unjust enrichment, violation of the Michigan Consumer
Protection Act, violation of the Fourth and Fourteenth Amendments, and associated
declaratory relief.

When Plaintiff purchased products and services from JPay, he accepted JPay's
Terms of Use ("TOU").  These terms are part of the binding contract formed between
Plaintiff and Defendant.  JPay amended the TOU several times subsequent to
Plaintiff's initial acceptance, and following each amendment Plaintiff accepted the
revised TOU before purchasing additional products or services.[1]

Every version of the TOU accepted by Plaintiff contains an express, mutually
binding arbitration agreement, which provides in part, "[a]ny dispute, claim or

---

[1] The January 2017 revision and subsequent versions retitled the TOU as "Terms
of Service and Warranty Policy."  To avoid confusion, the abbreviation TOU — as
used herein — refers both to the so-titled "Terms of Use" and to later versions
titled "Terms of Service and Warranty Policy."

controversy among the parties arising out of or relating to this Agreement ('Dispute')
shall be finally resolved by and through binding arbitration…." (Decl. of Atinuke
Sode ("Sode Decl.") Exhibit A, ("2016 TOU") § 5(a); Exhibit B, ("2017 TOU") §
8(a); Exhibit C, ("2018 TOU") § 8(a).) The TOU also contains an express waiver
of Plaintiff's right to bring a class action lawsuit. (2016 TOU § 5(a).)

By bringing an action in this Court, Plaintiff has failed to comply with the
terms of the mutually binding arbitration agreement. For the foregoing reasons and
those explained more fully below, pursuant to 9 U.S.C. § 4, JPay respectfully
requests that this Court order that Plaintiff's claims against JPay be arbitrated in
accordance with the terms of the agreement. Plaintiff's case should be dismissed in
its entirety and/or stayed pending arbitration.

## STATEMENT OF RELEVANT FACTS

JPay is a Delaware corporation with its principal place of business located in
Florida. (First Amended Class Action Complaint for Declaratory Relief, Injunctive
Relief and Damages, Doc. No. 1 ("Compl.") ¶ 15.) Plaintiff is an inmate in the
custody of the Michigan Department of Corrections ("MDOC"). (Compl. ¶ 12.) As
a legal consequence of Plaintiff's incarceration, Plaintiff has limited access to
commerce, and may purchase products and services only from MDOC and vendors
who contract with MDOC for such purposes. (Compl. ¶ 31.)

JPay provides products and services to incarcerated persons in MDOC

custody pursuant to a contract with MDOC.  (Compl. ¶¶ 27, 30.)  This MDOC contract permits JPay to sell electronic communication services, tablets, media content, and accessories to inmates in the custody of MDOC.  (Compl. ¶ 33.) Inmates transact directly with JPay, by purchasing products and services through interactive kiosks located inside of correctional facilities, or through tablets purchased from JPay.  (Compl. ¶ 48.)

Plaintiff, initially registered to use JPay services on February 12, 2012, and his account was subsequently suspended on June 18, 2013.  (Sode Decl. ¶ 8.)  During this period, the only JPay services offered in MDOC facilities were electronic communication and money transfer services through JPay kiosks.  (*Id.* ¶ 9.)  The products and services which form the core of Plaintiff's Complaint—tablets, accessories, and associated media and communications services—were not available to MDOC inmates during this period.  (*Id.*)

## A.    Plaintiff Accepted JPay's Terms of Use.

Plaintiff re-registered to use JPay services on June 10, 2016.  (*Id.* ¶ 10.) Before making any purchases from JPay, Plaintiff was required to accept JPay's TOU.  (*Id.* ¶ 11.)  The TOU began with the following disclaimer:

> BEFORE YOU USE THE JPAY KIOSK OR YOUR JPAY PLAYER AND THE SERVICES PROVIDED THEREUNDER, YOU MUST READ AND AGREE TO THESE TERMS OF USE.  IF YOU CANNOT READ OR UNDERSTAND THESE TERMS OF USE, PLEASE CONTACT CORRECTIONAL STAFF FOR FURTHER EXPLANATION AND CLARIFICATION.

-3-

> BY CLICKING THE "I AGREE" BUTTON, YOU ARE INDICATING THAT YOU CONSENT TO THIS AGREEMENT.

(2016 TOU, p. 1.)  The TOU further provided that the terms may be modified by JPay at any time.  (2016 TOU, p. 4.)  After accepting the TOU, Plaintiff made multiple purchases of "stamps," allowing Plaintiff to utilize JPay's electronic communications services at JPay kiosks.  (Sode Decl. ¶ 13.)

In January of 2017, JPay issued a revised TOU.  (*Id*. ¶ 14.)  The 2017 TOU began with a disclaimer containing materially similar language to the 2016 TOU, with the additional statement that "YOU AGREE TO BE BOUND BY THE CHANGED TERMS AND CONDITIONS OF THIS AGREEMENT UPON YOUR ACCEPTANCE."  (2017 TOU, p. 1.)  Plaintiff accepted the 2017 TOU before making additional purchases from JPay, including his first purchase of a tablet.  (Sode Decl. ¶¶ 14-16.)  JPay revised the TOU again in February of 2018, and Plaintiff again accepted the TOU.  (*Id*. ¶ 18; *see* 2018 TOU, p. 1.)

The TOU, by its terms, applies to all the services that may be accessed by inmates through a kiosk or tablet, and expressly includes, but is not limited to, email, music, games, video content, audio and eBooks, educational materials, players and accessories.  (*See* 2017 TOU § 1.)

## B.   Plaintiff Accepted a Mutually Binding Arbitration Agreement.

When Plaintiff accepted the TOU, he agreed to resolve any disputes through

binding arbitration, and expressly waived his right to bring a class action lawsuit. Each version of the TOU contains a section titled "Dispute Resolution," which provides:

> Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules"). . . . Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).)  The 2017 and 2018 TOU added clarifying language to this provision, in bolded typeface, stating that "**You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration.**" (2017 TOU § 8(a); 2018 TOU § 8(a).)

The TOU further provides that "[t]he arbitration provisions set forth herein, and any arbitration conducted thereunder, shall be governed exclusively by the Federal Arbitration Act, Title 9 United States Code, to the exclusion of any state or municipal law of arbitration."   (2016 TOU § 5(e); 2017 TOU § 8(e); 2018 TOU § 8(e).) The place of arbitration, per the agreement, is Miami, Florida, with provisions made for telephonic appearances if required.  (2016 TOU § 5(c); 2017 TOU § 8(c); 2018 TOU § 8(c).)  The agreement permits that arbitration may be conducted in the

city of incarceration if arbitration in Miami, Florida is contrary to law.  (*Id*.)

Each applicable version of the TOU also contains an explicit waiver of the right to participate in a class action lawsuit or class arbitration, providing that all disputes must be arbitrated on an individual basis.  (2016 TOU § 5(f); 2017 TOU § 8(f); 2018 TOU § 8(f).)  Should the Plaintiff seek to challenge the validity of the class action and class arbitration waiver, the TOU provides that such challenges are exclusively to be determined by a Federal District Court located in the Southern District of Florida or a Florida State Court.  (2016 TOU § 5(g); 2017 TOU § 8(g); 2018 TOU § 8(g).)

Additionally, each version of the TOU provides that the rights of the parties under the agreement are governed by the laws of the State of Florida, exclusive of conflict or choice of law rules.  (2016 TOU § 4; 2017 TOU § 7; 2018 TOU § 7.)

## C.    Plaintiff's Allegations of Wrongdoing.

Plaintiff first ordered a JPay tablet on March 1, 2017, after agreeing to both the 2016 and 2017 TOU.  (Sode Decl. ¶¶ 11, 14-16.)  Plaintiff's allegations of wrongdoing arise from the allegedly deficient performance of a JPay device, and alleged misrepresentations regarding his ability to access digital content and

services.[2]  (Compl. ¶¶ 153-61.)  With respect to the deficient performance of devices, Plaintiff alleges that products were cheaply manufactured and prone to breakage, that software glitches and viruses would shut down devices or remove purchased content, that orders, accounts, funds and content were not accurately reflected on devices, and that the systems would shut down for lengthy periods.  (Compl. ¶ 109.)  Plaintiff also claims that, contrary to alleged representations, the products and services Plaintiff purchased from JPay will allegedly not be available "after the termination of Defendant's JPay Program," that Defendant is able to seize, delete, and restrict his access to content, and that the value of the products, content and services sold by Defendant are therefore less valuable than represented.  (Compl. ¶¶ 161-62.)

On the basis of these allegations, Plaintiff seeks class certification and asserts ten causes of action:  (1) declaratory relief under 28 U.S.C. § 2201; (2) breach of contract; (3) violation of the Michigan Consumer Protection Act; (4) violation of 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments; (5) breach of duty of good faith and fair dealing; (6) negligent misrepresentation; (7) unjust enrichment; (8)

---

[2] JPay sells various devices to MDOC inmates, including various models of tablets. Unfortunately, Plaintiff's 267 paragraph Complaint fails to specify which JPay device Plaintiff found deficient.  Defendant believes that Plaintiff's complaint is in reference to the JPay tablet he purchased on March 1, 2017, and replacement tablets issued to Plaintiff by JPay on May 17, 2017, August 28, 2017, November 22, 2017, February 8, 2018 and March 22, 2018.  (Sode Decl. ¶¶ 16-17.)

fraud/intentional misrepresentation; (9) breach of express warranty, and; (10) breach of implied warranty.  (Compl. ¶¶ 186-281.)

Prior to filing this motion, Counsel for Defendant contacted Plaintiff regarding the arbitration provision, and requested Plaintiff's agreement to arbitrate. As of the filing of this motion, however, Plaintiff has refused to adhere to the terms of his arbitration agreement.  (Declaration of Elizabeth Herrington ¶¶ 3-4.)

## **ARGUMENT**

## I.   **PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION**

### A.   **The Parties' Agreement to Arbitrate is Governed by the Federal Arbitration Act.**

The TOU expressly provides that "[t]he arbitration provisions set forth herein, and any arbitration conducted thereunder, shall be governed exclusively by the Federal Arbitration Act [(the "FAA")], Title 9 United States Code, to the exclusion of any state or municipal law of arbitration."   (2016 TOU § 5(e); 2017 TOU § 8(e); 2018 TOU § 8(e).)   The Sixth Circuit has squarely held that such provisions are enforceable, and any ambiguities should be resolved in favor of federal law.  *See Martis v. Dish Network Serv., L.L.C.*, 597 F. App'x 301, 304 (6th Cir. 2015) (where an agreement states that it is governed by the FAA, and by state substantive law, the FAA applied to the district court's review of the arbitration award); *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 303 (6th Cir. 2008) (where the parties' choice of law provision referenced both the FAA and Michigan law, the FAA governed).

Even in the absence of such a provision, federal law would still govern the agreement to arbitrate. Pursuant to the Supremacy Clause, "[t]he FAA preempts Michigan's law regarding common law arbitration" when a contract involves interstate commerce. *Mech. Power Conversion, L.L.C. v. Cobasys, L.L.C.*, 500 F. Supp. 2d 716, 719 (E.D. Mich. 2007). Here, Plaintiff is a citizen of Michigan, and Defendant is a Delaware corporation with its principal place of business in Florida. (Compl. ¶¶ 12, 15.) Therefore, dealings between the parties constitute interstate commerce, and the arbitration provision is governed by the FAA.

**B.** **Arbitration is Required by the Federal Arbitration Act and Favored by Public Policy.**

The FAA mandates that federal courts compel arbitration of claims where, as here, there exists a valid arbitration agreement and the issues sought to be litigated fall within the scope of the agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis added)). The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon which grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described Section 2 of the FAA as reflecting a "liberal federal policy favoring arbitration" and has directed courts to "place arbitration agreements on an equal footing with other

contracts." *See AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms"); *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 748 F.3d 708, 717 (6th Cir. 2014) ("the FAA manifests a liberal federal policy favoring arbitration agreements"); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012) (the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "reflects an emphatic federal policy in favor of arbitral dispute resolution") (internal quotations omitted).[3]

The FAA further provides that a party to an arbitration agreement may, upon refusal of the other party to arbitrate a dispute arising under the agreement, move to compel arbitration. *See* 9 U.S.C. § 4. The Sixth Circuit has held that when a party files a motion to compel arbitration, the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The

---

[3] The Michigan Revised Uniform Arbitration Act similarly provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract," MCL § 691.1686(1), and, like the FAA, accords a strong presumption in favor of arbitration. *See Fuego Grill, L.L.C. v. Domestic Unif. Rental*, 2013 WL 238540, at *7 (Mich. Ct. App. Jan. 22, 2013) *appeal denied sub nom. Fuego Grill, LLC v. Domestic Unif. Rental*, 832 N.W.2d 201 (Mich. 2013) ("Michigan's public policy strongly favors arbitration to resolve disputes").

required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Cos. v. Simons*, 288 F.3d 878, 899 (6th Cir. 2002); *see also Granite Rock Co. v. Int'l Bhd. of Teamste*rs, 561 U.S. 287, 298–99 (2010) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration").  In the absence of such a showing by the opposing party, a judicial order compelling arbitration is mandatory.  *See* 9 U.S.C. § 4.

"As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Masco Corp. v. Zurich Am. Ins. Co*., 382 F.3d 624, 626 (6th Cir. 2004) (*citing Moses H. Kone Mem'l Hosp. v. Mercury Constr. Co*., 460 U.S. 1, 24-25 (1983)).  In other words, where an agreement contains an arbitration provision, the court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech. v. Commc'n Workers of Am*., 475 U.S. 643, 648-51 (1986).  Because Plaintiff entered into a binding arbitration agreement that expressly covers the claims asserted in his Complaint against Defendant, an order compelling arbitration and dismissing the Complaint is appropriate.

### C.    The Arbitration Agreement is Binding and Should Be Enforced.

"[W]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court." *City of Detroit Pension*

*Fund v. Prudential Sec. Inc.*, 91 F.3d 26, 30 (6th Cir. 1996) (*quoting Litton Fin.*

*Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991)).  The Sixth Circuit has identified

four factors that courts should consider when adjudicating a motion to compel

arbitration under the FAA:

> First, [the court] must determine whether the parties agreed to arbitrate;
> second, [the court] must determine the scope of that agreement; third,
> if federal statutory claims are asserted, [the court] must consider
> whether Congress intended those claims to be nonarbitrable; and fourth,
> if the court concludes that some, but not all, of the claims in the action
> are subject to arbitration, [the court] must determine whether to stay the
> remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citations omitted).

### 1. The Parties Entered Into a Valid and Enforceable Agreement to Arbitrate.

The parties entered into a valid contract that includes an agreement to

arbitrate.  Plaintiff does not dispute, and in fact alleges, that a contract exists between

the Parties.  (Compl. ¶ 186.)  As alleged by Plaintiff, (1) Defendant offered content,

products and services to Plaintiff; (2) Plaintiff accepted the offer by purchasing items

from Defendant; and (3) payments constituting consideration were made by

Plaintiff, to Defendant, in exchange for content, products, and services.  (Compl. ¶¶

183-86.)  *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 608 (E.D. Mich.

2017) ("A contract requires an 'offer, acceptance, consideration, and sufficient

specification of essential terms.'")

Prior to purchasing a device and associated content, products, and services,

Plaintiff was provided with Defendant's TOU.  (Sode Decl. ¶¶ 11, 14-16.)  The TOU provided clear and conspicuous language conditioning Plaintiff's use of Defendant's content, products and services on acceptance with the agreement.  (2016 TOU, p. 1.) Defendant manifested his assent to the TOU by clicking "I AGREE," per the terms of the TOU.  (Sode Decl. ¶¶ 11-12, 14.)  Plaintiff accepted both the 2016 and 2017 TOU prior to purchasing a JPay device.  (Sode Decl. ¶¶ 11, 14-16.)  It is widely accepted that where parties must digitally accept contractual terms prior to making a purchase, those terms are part of the contract and binding on the parties. *See Cain v. Redbox Automated Retail, LLC*, 136 F. Supp. 3d 824, 831 (E.D. Mich. 2015) (users of Redbox movie rental kiosks were bound by "Terms of Use" accepted through the electronic kiosk at the time of purchase); *Asa v. Verizon Commc'ns, Inc.,* 2017 WL 5894543, at *7 (E.D. Tenn. Nov. 29, 2017) (holding that an arbitration provision in a "click-wrap" agreement is enforceable).

Plaintiff agreed to be bound by the TOU on multiple occasions, by agreeing to modified terms following periodic revisions.  (Sode Decl. ¶¶ 11, 14, 18.)  This Court need not resolve which version of the TOU is controlling with respects to Plaintiff's allegations, as each version contains a materially identical arbitration provision.  Each version of the TOU expressly provides, in a section titled "DISPUTE RESOLUTION":

> Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and

through binding arbitration administered by JAMS pursuant to its
Comprehensive Arbitration Rules and Procedures and in accordance
with the Expedited Procedures in those rules (the "JAMS Rules"). . . .
Both the foregoing agreement of the parties to arbitrate any and all
Disputes, and the results, determinations, findings, judgments and/or
awards rendered through any such arbitration, shall be final and binding
on the parties and may be specifically enforced by legal proceedings in
any court of competent jurisdiction.

(2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).)

Because the parties entered into a valid contract, including the TOU and the

arbitration provision contained therein, the parties have entered into a valid and

enforceable agreement to arbitrate.

### 2.     The Arbitration Agreement Encompasses Plaintiff's Claims.

The TOU broadly provides for final and binding arbitration over "[a]ny

dispute, claim or controversy among the parties arising out of or relating to this

Agreement," with no exclusions or exceptions.  (2016 TOU § 5(a); 2017 TOU §

8(a); 2018 TOU § 8(a).)

Plaintiff's claims arise from and relate to his purchases of content, products,

and services pursuant to the TOU.  (*See* Compl. ¶¶ 149-57.)  Accordingly, Plaintiff's

claims fall within the arbitration provision, and he is required to arbitrate each of his

claims.

In filing an amended complaint, Plaintiff seeks to confuse this issue by newly

asserting rights as a third party beneficiary to the contracts between JPay and

MDOC.  (*See, e.g.* Compl. ¶¶ 196-202.)  However, these new allegations do not permit Plaintiff to evade his contractual duty to arbitrate.

All of Plaintiff's claims—even those asserting rights under the MDOC contracts—factually arise from Plaintiff's purchase of products and services from JPay, and those purchases are governed by the TOU.  It is therefore indisputable that Plaintiff's third-party beneficiary claims are also "arising out of or relating to" the TOU.  *See McIntyre v. First Fin. Grp.*, 2012 WL 5939931, at *3 (W.D. Mich. Nov. 27, 2012) (claim asserting rights under Michigan statute was "arising out of or relating to" an agreement, for purposes of applying an arbitration provision, because the facts underlying the claim arose from the contractual relationship); *see also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003) ("[A]n arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.'")

### 3.   None Of Plaintiff's Claims Are Excluded From Arbitration.

Nothing in the FAA indicates Congressional intent to exclude the types of claims brought in this case from arbitration.  9 U.S.C. § 1, *et seq.*  Rather, courts have routinely held that breach of contract and the related claims presented in Plaintiff's complaint may be arbitrated.  *See, e.g., Mech. Power Conversion, L.L.C.*, 500 F. Supp. 2d 716, 721 (compelling arbitration for a breach of contract claim); *AT&T Mobility*, 131 S. Ct. 1740, 1744 (2011) (reversing denial of motion to compel

arbitration in an action alleging false advertising and fraud); *Cain*, 136 F. Supp. 3d at 825 (compelling arbitration in an action alleging breach of contract and unjust enrichment); *McGee v. Armstrong*, 2012 WL 11010071, at *8 (N.D. Ohio Nov. 14, 2012), *report and recommendation adopted*, 2014 WL 3012879 (N.D. Ohio July 3, 2014) (compelling arbitration where complaint included four 42 U.S.C. § 1983 causes of action).

### 4. Plaintiff Has No Basis to Avoid Arbitration.

The Supreme Court has recognized that "arbitration agreements may be revoked 'upon grounds as exist at law or in equity for the revocation of any contract.'" *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 932–33 (6th Cir. 1998) (*quoting Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984)). No such grounds exist in this dispute. Should the Plaintiff argue for revocation on the basis of fraud, duress, or that the agreement is unconscionable, this Court should find those arguments unavailing.

a.   <u>Plaintiff cannot avoid the arbitration agreement through general allegations of fraud.</u>

Plaintiff's complaint includes a generalized allegation of fraudulent misrepresentation. (Compl. ¶¶ 240-49.) Plaintiff might attempt to argue relief from the arbitration provision on the basis that the contract was fraudulently induced. However, "[u]nder the Supreme Court's interpretation of the FAA, the issue of fraudulent inducement of a contract is to be decided by an arbitrator, unless the

making of the arbitration clause itself was fraudulently induced." *Ferro Corp.*, 142 F.3d at 933 (6th Cir. 1998) (vacating lower court's ruling that fraudulent inducement of the contract was justiciable, where parties were bound by an arbitration provision.)   Under Supreme Court precedent, "the arbitration agreement is effectively considered as a separate agreement which can be valid despite being contained in a fraudulently induced contract." *Id.* at 933 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405-407 (1967)).

Because Plaintiff's allegations of fraudulent misrepresentations do not in any way relate to the arbitration provision itself, Plaintiff cannot avoid the arbitration provision through its allegations of fraud. *See Aqualucid Consultants, Inc. v. Zeta Corp.,* 2017 WL 6604258, at *2 (6th Cir. Dec. 27, 2017) ("Plaintiffs' challenge to the enforceability of the arbitration clause based on their broader fraud claims is misplaced.")[4]

> b.   Plaintiff cannot avoid the arbitration agreement through allegations of duress.

Defendant anticipates that Plaintiff may argue the arbitration provision is revocable on the basis of duress.   As a threshold issue, as with fraudulent

---

[4] Moreover, Plaintiff's conclusory and generalized allegation of fraud, as found in the complaint, fail to meet the pleading standard requirement of Fed. R. Civ. P. 9(b), and fall far short of the heightened standard required to defeat a motion to compel arbitration. *See Great Earth Cos.*, 288 F.3d at 899.

inducement, under the reasoning of *Prima Paint Corp* the issue of duress as to the agreement as a whole should be considered as severable to the issue of duress with respect to the arbitration provision.  *See Prima Paint Corp*, 388 U.S. at 403-04; 9 U.S.C. § 4 ("upon being satisfied that *the making of the agreement for arbitration* or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration") (emphasis added).  Unless duress is pled specifically with regards to the arbitration provision, rather than a contract as a whole, Plaintiff cannot invalidate the arbitration provision.

Plaintiff's allegations are also insufficient on the merits.  Per the Governing Law provision of the TOU, the substantive rights of the parties are governed by Florida law.  (*See, e.g.,* 2016 TOU § 4.)  Under Florida law, "[d]uress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will.  To state a cause of action for duress, a plaintiff must demonstrate (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party." *Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. Dist. Ct. App. 2007) (internal citation and quotation omitted).

Plaintiff was provided an opportunity to enter into a contract with the

-18-

Defendant for the purposes of purchasing entertainment and communication services.  Plaintiff entered into the contract voluntarily.  To the extent Plaintiff argues he had no reasonable alternatives for his entertainment desires, this limitation is the result of his incarceration – not any act of the Defendant – and thus, not "the result of coercive acts of the opposite party."  *Woodruff*, 967 So. 2d at 250.  Additionally, Plaintiff in fact had a reasonable alternative to signing the TOU.  Plaintiff could have exclusively used the alternative SecureMedia MP3 Program offered by Keefe Commissary Network, L.L.C.  ("Keefe").  In a separate action in this jurisdiction, Plaintiff brings nearly identical claims against Keefe, alleging Keefe offered similar media services and devices from the beginning of the proposed class period through 2017.  *See Kensu v. Keefe Commissary Network, L.L.C. D/B/A Access Corr.*, 2:18-cv-10171-AC-EAS (E.D. Mich. filed Jan. 16, 2018).  Or, he could have declined to purchase media services from either provider.  *See Centennial Bank v. Adams St. Lofts, LLC*, 2013 WL 12161864, at *2 (N.D. Fla. July 30, 2013) ("[H]aving to choose between unpleasant alternatives is not, without more, duress.")

The result is the same under Michigan law, which holds that a party asserting duress "must establish that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes."  *Mabin v. HSBC Mortg. Servs., Inc.*, 2015 WL 6161791, at *7 (Mich. Ct. App. Oct. 20, 2015).  And that "[a] claim of duress or coercion will not prevail to invalidate a contract entered into with

full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation, and reflection." *Silverman v. Spitzer*, 2014 WL 7157419, at *5 (Mich. Ct. App. Dec. 16, 2014) (internal quotation omitted). Plaintiff has no legitimate basis to allege he was coerced by fear of injury, or that he was not provided knowledge of the TOU and time for consideration.

Moreover, JPay is one of many vendors who provide products and services to inmates pursuant to agreements with MDOC. MDOC's control of Plaintiff's access to commerce is an intended legal consequence of his incarceration. Should the Court find that incarceration, in and of itself, is sufficient to establish contractual duress, all existing and future contracts between vendors and inmates would be rendered unenforceable. In light of the obvious policy ramifications, this result should be avoid.

> c.  <u>Plaintiff cannot avoid the arbitration agreement through allegations that the agreement is unconscionable.</u>

Plaintiff also cannot assert that the arbitration agreement is unconscionable. Again, as a threshold issue, whether the agreement is unconscionable as a whole is severable from the issue of whether the arbitration provision is unconscionable. *See Prima Paint Corp*, 388 U.S. at 403-04; 9 U.S.C. § 4.

Under Florida law, for an agreement to be found unconscionable, the agreement "must be both procedurally unconscionable and substantively unconscionable." *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 264 (Fla. Dist.

Ct. App. 2004) (finding an arbitration provision was not unconscionable). Procedurally, a court will look at the manner in which a contract was entered, such as if the terms are "hidden in a maze of fine print." *Id* at 265. There is nothing "hidden" about the arbitration provision at issue here, which is easily located under the "DISPUTE RESOLUTION" heading of the TOU, and where the terms related to arbitration span several consecutive subsections. (2016 TOU § 5.) The 2017 TOU, which Plaintiff agreed to before purchasing a tablet, added bolded, all-capital language at the beginning of the DISPUTE RESOLUTION heading, plainly stating "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS**." (2017 TOU § 8; 2018 TOU § 8).

An arbitration provision may be substantively unconscionable if the terms are unreasonable or unfair. *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 727 (Fla. Dist. Ct. App. 2003) (finding an arbitration provision was not substantively unconscionable, because it did not limit damages, or preclude injunctive relief.) Courts will look to whether the arbitration provision limits recovery, or unfairly allocates fees. *Id*. The provision at issue here is not substantively unconscionable, as it does not limit recovery, and it apportions fees to the unsuccessful party, or, at the discretion of the arbitrators, fees may be prorated in a proportion the arbitrators determine to be equitable. (2016 TOU § 5(d); 2017 TOU § 8(d); 2018 TOU § 8(d).)

Michigan law likewise will only find an agreement unconscionable where it is both procedurally and substantively so. *See Hartman v. Hartman*, 2012 WL 3194068, at *3 (Mich. Ct. App. Aug. 7, 2012) (agreement was not substantively unconscionable where plaintiff could not show how the outcome was "prejudiced or unfair"). Therefore, under either Michigan or Florida law, Plaintiff cannot avoid the Parties' mutual agreement to arbitrate any and all disputes by claiming the arbitration provision is unconscionable.

## II.   THIS ACTION SHOULD BE STAYED PENDING ARBITRATION OR DISMISSED

If the Court determines that any part of Plaintiff's Amended Complaint is *not* subject to arbitration, the FAA requires that this Court stay the proceeding while the claims subject to arbitration are resolved. *See* 9 U.S.C. § 3.

However, if (as here) all claims are subject to arbitration, then the court may dismiss, rather than stay, the proceedings. *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999); *Green v. Ameritech Corp.*, 200 F.3d 967, 073 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

The Sixth Circuit has held that "a compulsory arbitration provision divests the District Court of jurisdiction[.]" *Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005) (citation omitted). Accordingly, if all of Plaintiff's claims are subject to arbitration, there is "'nothing for the district court to do but execute the

[arbitration] judgment,' [and] dismissal is appropriate." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372 (6th Cir. 2014) (citing *Catlin v. United States*, 324 U.S. 229 (1945)); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *Dietz v. Allied Home Mortg. Capital Corp.*, No. CIV. 10-12610-GCS, 2010 WL 4286193, at *4 (E.D. Mich. Oct. 26, 2010) ("[Defendant] is entitled to dismissal of plaintiff's claims . . . because all of the claims are subject to arbitration").

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant respectfully requests that their Motion be granted and that the Court issue an order compelling arbitration of all claims against Defendant and dismissing the Complaint.

Dated:  July 10, 2018                    Respectfully submitted,

                                         JPAY INC.


                                         By: */s/ Elizabeth Herrington*
                                             One of Their Attorneys

MORGAN, LEWIS & BOCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the foregoing Defendant's Renewed Motion to Compel Arbitration and Defendant's Brief in Support of the Motion were filed on July 10, 2018 with the Clerk of Court using the CM/ECF system.


*/s/ Elizabeth Herrington*

Elizabeth Herrington (IL#6244547)
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

*Attorney for Defendant*