# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY, AND
OF BEHLF OF ALL OTHERS
SIMILARLY SITUATED,

Case:2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox

*Plaintiffs,*

Mag. Judge Patricia T. Morris

v.

JPAY INC.

*Defendant.*

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiff and the Class*

MORGAN, LEWIS, & BROCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS
PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313-964-8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

---

## PLAINTIFF'S RESPONSE TO DEFNDANT'S MOTION TO COMPEL ARBITRARTION

## <u>JURY TRIAL DEMANDED</u>

In accordance with 9 U.S.C. § 4, Plaintiff hereby demands a jury trial as to whether a valid arbitration agreement exists between the parties and whether the agreement can be arbitrated under 9 U.S.C. § 5 even if there is a valid arbitration agreement.

# <u>TABLE OF CONTENTS</u>

JURY TRIAL DEMANDED ..................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF CONTROLLING AUTHORITY ........................................... vii

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ........................................................................................ 3

   I.   There Is an Independent Contract for Which Plaintiffs Can Bring Their
Claims ........................................................................................ 3

   II.  The JPay Contract's Arbitration Agreement is an Unconscionable Adhesion
Contract ..................................................................................... 7

   III.   The Jpay Arbitration Agreement Fails Under Section 5 Of The Federal
Arbitration Act .......................................................................... 14

   IV.   JPay Has Failed to Produce Admissible Evidence That Kensu Agreed to
The Terms of the Arbitration Agreement and Thus Plaintiff Is Entitled to A Jury
Trial On Whether There Is a Valid Arbitration Agreement ................................. 17

CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Adler v Dell, Inc*, ___F Supp 2d___; 2009 U.S. Dist. LEXIS 112204, at *4 (ED Mich, Dec. 3, 2009) ...........................................................................................15

*Allen v. Michigan Bell Telephone Co.,* 18 Mich. App. 632, 637, 171 N.W.2d 689, 692 (1969) .................................................................................................................8

*Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994) ...........................20

*Andersons Inc. v. Horton Farms, Inc.,* 166 F.3d 308 (6th Cir. 1998) ......................8

*B.F. Goodrich Co. v. U.S. Filter Corp*., 245 F.3d 587, 597 (6 Cir. 2001) ..............16

*Brown v. ITT Consumer Fin. Corp*., 211 F.3d 1217 (11th Cir. 2000).............. 15, 16

*Collins v. Citrus Nat'l Bank*, 641 So. 2d 458 (Fla. 5th DCA 1994) .........................5

*Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc*., 484 So. 2d 610, 611 (Fla. 5th DCA 1986) ..............................................................................................6

*Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926 (6th Cir. 1998) .........................3

*Frick v. Patrick*, 165 Mich. App. 689, 419 N.W.2d 55 (1988) ................................4

*Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002) .....................................15

*Hancock v. Am. Tel. & Tel. Co*., 701 F.3d 1248, 1261 (10th Cir. 2012).......... 18, 19

*Howard v. Ferrellgas Partners, L.P*., 748 F.3d 975, 978 (10th Cir. 2014).............18

*KRC Enters., Inc. v. Soderquist*, 553 So. 2d 760, 761 (Fla. 2d DCA 1989) .............5

*Lee v. All Fla. Constr. Co*., 662 So. 2d 365 (Fla. 3d DCA 1995) .............................6

*Morris v. Metriyakool*, 418 Mich. 423, 344 N.W.2d 736, 742 (1984)......................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 103 S. Ct. 927 (1983).....................................................................................................................18

*Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259 (Fla. Dist. Ct. App. 2004) .......9

*Paulsen v. Bureau of State Lottery,* 167 Mich. App. 328, 336, 421 N.W.2d 678 (1988)......................................................................................................................8

*Phx. Motor Co. v. Desert Diamond Players Club, Inc*., 144 So. 3d 694, 696-97 (Fla. Dist. Ct. App. 2014) ....................................................................................6

*Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574-75 (Fla. Dist. Ct. App. 1999)9, 10, 11

*Rieth-Riley Construction Co., Inc. v. Dept. of Transportation*, 136 Mich. App. 425, 357 N.W.2d 62 (1984) ...........................................................................................4

*Sellers v. Macy's Retail Holdings, Inc.*, No. 12-cv-02496-SHL-tmp, 2014 U.S. Dist. LEXIS 85879 (W.D. Tenn. June 5, 2014) ................................................18

*The Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308 (6th Cir. 1998) ..............8

*Tolliver v. Fed. Republic of Nig.*, 265 F. Supp. 2d 873 (W.D. Mich. 2003) ...........19

## Statutes

9 U.S.C. § 3 ................................................................................................17
9 U.S.C. § 4 ............................................................................................ ii, 17
9 U.S.C. § 5 ..................................................................................... ii, 2, 3, 15
M.C.L. §600.1405 .........................................................................................4

**Rules**

Fed. R. Civ. P. 56 ........................................................................................20
Fed. R. Evid. 1002 .....................................................................................2, 20

## **Statement of Issues Presented**

1) If there are two parallel contracts, one of which contains an arbitration provision and one which does not, must the contracts be arbitrated?

   Plaintiff answers: No
   Defendant answers:

2) Are JPay's arbitration agreements unconscionable adhesion contracts?

   Plaintiff answers: Yes

   Defendant answers:

3) If Jpay selected JAMS as the exclusive forum to arbitrate claims and JAMS will not arbitrate the claims, can the claims be brought in court under FAA § 5?

   Plaintiff answers: Yes

   Defendant answers:

4) Has Jpay failed to submit admissible evidence that Plaintiff entered into the arbitration agreements?

   Plaintiff answers: Yes

   Defendant answers:

5) Is Plaintiff entitled to a jury trial on whether the arbitration agreement is valid?

   Plaintiff answers: Yes

   Defendant answers:

# STATEMENT OF CONTROLLING AUTHORITY

Pursuant to Local Rule 7.1(d(2), Plaintiff states that the following authorities are the controlling or most appropriate authorities  in opposition  to Defendant's motion:

Federal Arbitration Act, 9 U.S.C. § 1

## Fed R, Evid. 1002 Cases

*Adler v Dell, Inc*, ___F Supp 2d___; 2009 U.S. Dist. LEXIS 112204, at *4 (ED Mich, Dec. 3, 2009) ..... 15

*Allen v. Michigan Bell Telephone Co.,* 18 Mich. App. 632, 637, 171 N.W.2d 689, 692 (1969) ................. 8

*Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994) ............................................................. 20

*Andersons Inc. v. Horton Farms, Inc.*, 166 F.3d 308 (6th Cir. 1998) ......................................................... 8

*B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 597 (6 Cir. 2001) ................................................. 16

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000) .................................................. 15, 16

*Collins v. Citrus Nat'l Bank*, 641 So. 2d 458 (Fla. 5th DCA 1994) ........................................................... 5

*Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc.*, 484 So. 2d 610, 611 (Fla. 5th DCA 1986) 6

*Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926 (6th Cir. 1998) ........................................................... 3

*Frick v. Patrick*, 165 Mich. App. 689, 419 N.W.2d 55 (1988) ................................................................... 4

*Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002) ....................................................................... 15

*Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) ............................................. 18, 19

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) .............................................. 18

*KRC Enters., Inc. v. Soderquist*, 553 So. 2d 760, 761 (Fla. 2d DCA 1989) ............................................... 5

*Lee v. All Fla. Constr. Co.*, 662 So. 2d 365 (Fla. 3d DCA 1995) ............................................................... 6

*Morris v. Metriyakool*, 418 Mich. 423, 344 N.W.2d 736, 742 (1984) ....................................................... 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983) ..................... 18

*Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259 (Fla. Dist. Ct. App. 2004) .......................................... 9

*Paulsen v. Bureau of State Lottery,* 167 Mich. App. 328, 336, 421 N.W.2d 678 (1988) ............................ 8

*Phx. Motor Co. v. Desert Diamond Players Club, Inc.*, 144 So. 3d 694, 696-97 (Fla. Dist. Ct. App. 2014) 6

*Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574-75 (Fla. Dist. Ct. App. 1999) .................................. 9, 10, 11

*Rieth-Riley Construction Co., Inc. v. Dept. of Transportation*, 136 Mich. App. 425, 357 N.W.2d 62
    (1984) ..................................................................................................................................................... 4

*Sellers v. Macy's Retail Holdings, Inc.*, No. 12-cv-02496-SHL-tmp, 2014 U.S. Dist. LEXIS 85879 (W.D.
    Tenn. June 5, 2014) .............................................................................................................................. 18

*The Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308 (6th Cir. 1998) .................................................... 8

*Tolliver v. Fed. Republic of Nig.*, 265 F. Supp. 2d 873 (W.D. Mich. 2003) ............................................... 19

## PRELIMINARY STATEMENT

Defendant's entire motion is premised upon Plaintiff Kensu having voluntarily agreed to JPay's terms of service and terms of use ("TOS"). ECF #19-2, Exhibits 1-3. Yet Jpay has produced no admissible evidence that Kensu ever agreed to the TOS's.

Defendant's arguments fail for three reasons. First, there is an independent contract between JPay and the Michigan Department of Corrections ("MDOC") for which Kensu and the Class are intended third party beneficiaries. This agreement is separate and apart from the TOS's and does not contain an arbitration clause. This contract forms an independent basis for all of Plaintiffs' claims.

Second, even if this Court were to determine that the JPay/MDOC contract does not provide a separate right to bring an action in Court as opposed to arbitration and that the TOS's control, the TSO's contain unconscionable arbitration terms. Plaintiff had no ability to negotiate the terms of the agreement. More importantly, because JPay is the only vendor available to Plaintiff and the Class for certain important services such as email communications, money transfers, and music, Plaintiff had no choice but to accept JPay's oppressive and one-sided terms or do without these services. The arbitration agreement is both procedurally and substantively unconscionable.

Third, if this Court were to decide that the arbitration agreement is not an unconscionable adhesion contract, the matters cannot be arbitrated because the arbitration forum selected by JPay, JAMS, will not arbitrate this agreement because

it does comply with the minimum consumer standards required of consumer arbitrations.  Thus, under the Federal Arbitration Act, 9 U.S.C. § 5, there is no available forum to arbitrate the dispute and Plaintiffs are allowed to bring their claim in Court.

In support of their motion to compel arbitration, the evidence submitted by JPay via the affidavit of Atinuke Sode, ECF # 19-2, is inadmissible with respect to Plaintiff because anything related to Plaintiff is derived from Sode's review of records which were not attached to the affidavit.  Most specifically, JPay has produced no admissible evidence that Kensu agreed to any of the TOS's.  It is inexplicable as to why JPay failed to provide Kensu's records with the affidavit, but the failure to include the records violates Fed. R. Evid. 1002 and thus to the extent that the affidavit discusses those records, the Court must ignore those references.

Also in support of their motion, Defendants argue at page 20 of their brief that if the Court finds incarceration sufficient to establish contractual duress "all existing and future contracts between vendors and inmates would be rendered unenforceable."  Nonsense.  Plaintiffs position is that given the lack of choice, consumer contracts which are not negotiated between prisoners and the vendors must be looked at with heightened scrutiny when there is no meaningful choice available to prisoners or other consumers in a similar position.  Here, JPay placed very onerous terms for which the Prisoners have no choice but to accept or do without the service.  Not every contract will be unconscionable or unreasonable.  Just contracts such as JPay's TOS's that are the subject of the instant lawsuit.

Lastly, Plaintiff has certainly raised material facts concerning whether there is a valid arbitration agreement and more to the point, whether Kensu agreed to the terms.  Therefore, in accordance with FAA ¶ 4, Kensu demands and is entitled to a jury trial on these issues.

## <u>ARGUMENT</u>

The Supreme Court has recognized that "arbitration agreements may be revoked 'upon grounds as exist at law or in equity for the revocation of any contract.'" *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 932–33 (6th Cir. 1998) (*quoting Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984)).  As discussed below, the JPay contract is not only an oppressive adhesion contract, it fails under Section 5 of the Federal Arbitration Act. Alternatively, Plaintiffs' should be able to bring their case before this court as a third-party beneficiary of the contract between MDOC and JPay.

### I.   There Is an Independent Contract for Which Plaintiffs Can Bring Their Claims

In the FAC, Plaintiffs make reference to the contract between JPay and the MDOC[1]. Because Plaintiffs are third-party beneficiaries of the JPay/MDOC contract, Plaintiffs' have the right to bring their case before this court for breaches of that contract.  In Michigan, certain third-parties have statutory rights as third-

---

[1] The contract was attached to the FAC as Exhibit 1, ECF # 15-1

party beneficiaries to enforce contractual promises. M.C.L. §600.1405 (the "statute") governs the rights of third-parties and, in part, provides:

> Sec. 1405. Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) Contracts Included. A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

Courts use an objective standard to determine whether a party is a third-party beneficiary under the statute. *Frick v. Patrick*, 165 Mich. App. 689, 694, 419 N.W.2d 55 (1988). The agreement itself demonstrates the intentions of the parties. *Rieth-Riley Construction Co., Inc. v. Dept. of Transportation*, 136 Mich. App. 425, 430, 357 N.W.2d 62 (1984). Furthermore, in determining whether a party is a third-party beneficiary, the parties' motives and subjective intentions are irrelevant. *Guardian Depositors Corp v. Brown*, 290 Mich. 433, 287 N.W. 798 (1939).

Plaintiff and all members of the Class are intended third-party beneficiaries of the contract between MDOC and Defendant JPay. Specifically, but by no means a limitation, Attachment "D" of the above-mentioned contract sets forth requirements for JPay's service level agreements which specifically reference prisoners and their families:

"Attachment D: SLA: CUSTOMER SERVICE

> The Contractor must maintain a customer service department that is available 24/7/365 to answer facility questions regarding prisoner orders, address kiosk issues, and provide other customer services in accordance with the Contract as needed or requested by MDOC staff. Equipment and system issues will be repaired within time frames outlined in the Contract. The Contractor must respond to all prisoner correspondence according to the terms of this Contract."

Plaintiff's first amended complaint specifically references this contract and the fact that it is a third-party beneficiary of the contract. FAC ¶¶ 32, 187, 197, 205, 229, 237, 244, 251, 262, 274. Given that sections of the contract between the MDOC and JPay clearly name Prisoners as the intended recipient of JPay's services, Plaintiffs' are able to alternatively bring their case before this court under this other contract.

Defendant argues that because the subject of the JPay/MDOC contract is the same services, then the JPay/MDOC contract is subsumed under the arbitration agreement contained within the TOS's.  Florida courts[2] have held that "[w]here two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. *Collins v. Citrus Nat'l Bank*, 641 So. 2d 458, 459 (Fla. 5th DCA 1994); *see also KRC Enters., Inc. v. Soderquist*, 553 So. 2d 760, 761 (Fla. 2d DCA 1989). But if the parties execute two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration. *Lee v. All Fla.*

---

[2] Assuming, arguendo, that the TOS's arbitration agreements are valid, Florida Law would apply as to the effect of the independent JPay/MDOC contract because JPay has selected Florida Law in the TOS's.

*Constr. Co*., 662 So. 2d 365, 366 (Fla. 3d DCA 1995) (holding that a homeowner could not arbitrate a dispute over a home repair contract, which did not have an arbitration clause, on the grounds that another contract for a home addition with the same contractor contained an arbitration clause)." *Phx. Motor Co. v. Desert Diamond Players Club, Inc*., 144 So. 3d 694 (Fla. Dist. Ct. App. 2014) (internal quotations omitted).

Arbitration provisions from one contract cannot be extended to a separate contract between the same parties unless the parties expressly agree to do so. *Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc*., 484 So. 2d 610, 611 (Fla. 5th DCA 1986) (holding that the arbitration agreement in a written contract did not apply to a dispute arising from a subsequent oral agreement, which did not incorporate the arbitration clause from the written contract). *Id.* (internal quotations omitted).

Here, there are two parallel contracts governing Defendant's relationship with the prisoners of MDOC. One contract between the MDOC and Defendant to provide services to the prison population, and the contract(s) Plaintiff(s) entered into with Defendant in order to access said services. Reading the contracts together, the scope of each contract is different and dictate that arbitration, in this case, should not be required.

The contract between MDOC and Defendant explicitly discusses customer services standards. The TOS's do not contain such provisions. Furthermore, there is nothing in the JPay/MDOC contract which requires or even references to

arbitration.  Because Defendant has breached the JPay/MDOC agreement and all of Plaintiffs claims can use the JPay/MDOC agreement as the basis, Plaintiffs do not lose the right to bring suit under the terms of JPay/MDOC contract merely because Plaintiffs have a different contract with Jpay.

The cases cited by Defendants do not help them here.  None of them consider whether there is an independent agreement in existence for which one party was a third party beneficiary.  Nor do they address the scope of differences in the scope of the agreements.

Thus, Plaintiff and the Class are entitled to bring this action in Court without arbitration because they are intended third-party beneficiaries of the JPay/MDOC contract and that contract has no arbitration provisions.

## II.   The JPay Contract's Arbitration Agreement is an Unconscionable Adhesion Contract

This Court should set aside the JPay contract as an adhesion contract because Plaintiffs had no ability to negotiate the terms, there is no alternative to JPay available to prisoners within the MDOC, and the arbitration terms are procedurally and substantively unconscionable.

"Contracts of adhesion are characterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the second party cannot obtain the desired product or service except by acquiescing in the form agreement." *Morris v. Metriyakool*, 418 Mich. 423, 440, 344 N.W.2d 736, 742 (1984).  Under Michigan law, the party seeking to set aside a contract as an adhesion contract must show that

the contractual provision in question left no realistic choices or options after considering the parties' relative bargaining power and economic strengths, and alternative sources of supply, if any. *See The Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 322 (6th Cir. 1998); *Allen v. Michigan Bell Telephone Co.,* 18 Mich. App. 632, 637, 171 N.W.2d 689, 692 (1969). However, "even if a contract is one of adhesion . . ., a challenged provision remains enforceable if it is substantially reasonable and not oppressive or unconscionable." *Paulsen v. Bureau of State Lottery,* 167 Mich. App. 328, 336, 421 N.W.2d 678 (1988). The court considered two factors when considering whether the contract was oppressive: "(1) whether the relatively weaker party had an alternative source with which it could contract, and (2) whether the contract term in question was in fact negotiable." *Andersons Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 324 (6th Cir. 1998).

The JPay contract is the definition of an oppressive adhesion contract. Not only are Plaintiffs unable to negotiate the terms of the agreement, they have no freedom of choice to choose another provider. JPay is protected from other market forces. When correctional facilities contract with JPay and offer its music players and tablet computers for sale to prisoners, they often confiscate radios that are already owned by the prisoners. There is no alternative to JPay available to prisoners within the MDOC. Because of the contract with the MDOC, prisoners must use JPay's services or do without. Thus, the Court should set aside the JPay contract as an adhesion contract.

Another key consideration is that if a prisoner has funds in their JPay account, these funds are not returnable. See ECF # 19-2: PageID 949 (¶ 2), PageID 954 (¶

2), PageID (¶ 2).  In the event that a prisoner elects not to agree to the terms of service, there is no provision for the prisoner to a) receive a refund of funds in their JPay account and b) have their player unlocked so that they may enjoy the content **already** purchased.  In other words, Prisoners have no choice but to forfeit their JPay purchases if they do not agree with terms which JPay can alter at any time.  Surely this does not provide prisoners with any choice but to accept whatever terms JPay dictates.

Plaintiff also agrees with Defendants assessment of Florida law that an agreement must be both procedurally unconscionable and substantively unconscionable.  *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259 (Fla. Dist. Ct. App. 2004).  JPay's agreement is both.  For procedural unconscionability, *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574-75 (Fla. Dist. Ct. App. 1999), cited by *Orkin,* establishes the basis:

> As for the first element, we conclude that the arbitration clause at issue is procedurally unconscionable. Although not dispositive of this point, it is significant that the arbitration clause is an adhesion contract. Generally, an adhesion contract is defined as a "standardized contract form offered to consumers of goods and services on essentially a "take it or leave it" basis without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Black's Law Dictionary, 6th Ed. (1990). *See also Pasteur Health Plan, Inc. v. Salazar*, 658 So. 2d 543, 544 (Fla. 3d DCA 1995) (stating the definition of an adhesion contract).

Powertel prepared the arbitration clause unilaterally and sent it along to its customers as an insert to their monthly telephone bill. The customers did not bargain for the arbitration clause, nor did they have the power to reject it. One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer. *See Belcher*; *Kohl*. Here, the customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had purchased from Powertel.

It is true, as Powertel argues, that customers can avoid the effect of the arbitration clause by canceling their phone service and signing an agreement with another provider. The fallacy of that argument, however, is that switching providers would result in a loss of the investment the customers have in the agreements they made with Powertel. They purchased equipment that works only with the Powertel service and they have obtained telephone numbers that cannot be transferred to a new provider.

*Powertel* is analogous to the situation here.  There is no choice among the prisoners in the MDOC.  First, according to the JPay/MDOC contract, JPay did not provide music players and content until after February 1, 2017.  ECF # 15-1, PageID 555.  At this point, JPay was the sole provider of players and music to the MDOC and there was no other option, contrary to Defendant's suggestion[3].  Therefore, if Plaintiff and the Class wanted to have music players, it was either agree to JPay's terms or do without not only music but Email communication and other JPay services for which they were the exclusive provider.  This is not a meaningful choice.

---

[3] JPay replaced Keefe Commissary Services on that date.  Prisoners could move their music over to JPay players if they wanted to continue to access purchased music.

Furthermore, as with *Powertel*, another key consideration is that if a prisoner has funds in their JPay account, these funds are not returnable.  See ECF # 19-2: PageID 949 (¶ 2), PageID 954 (¶ 2), PageID 965 (¶ 2).  In the event that a prisoner elects not to agree to the terms of service, there is no provision for the prisoner to a) receive a refund of funds in their JPay account and b) have their player unlocked so that they may enjoy the content ***already*** purchased.  In other words, Prisoners have no choice but to forfeit their Jpay purchases if they do not agree with terms which JPay can alter at any time.  Surely this does not provide prisoners with any choice but to accept whatever terms JPay dictates.  This is the very definition of an adhesion contract.

With respect to substantive unconscionability, JAMS, the arbitrator required by JPay will find that the terms of their agreement fail to meet the consumer standards and will not be arbitrated by JAMS.  See Exhibit A.   JAMS states:

> JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers ***only*** if the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness. (Emphasis added, full listing of terms in Exhibit A.

First, there is no question that the JPay TOS' are consumer agreements.  Thus, the JAMS consumer standards apply.  Some of the terms in question are:

- 1(b): no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction.

The Contracts state that the exclusive remedy of the prisoners is arbitration and makes no provision for the use of small claims courts.

- 5: The consumer must have a right to an in-person hearing is his or her hometown area.

  The contracts state uniformly: "The place of arbitration shall be Miami, Florida (provisions will be made for telephonic appearances if necessary or required).  If arbitration in Miami, Florida is contrary to law, the arbitration shall be conducted in the city of your incarceration." This term does not comply with JAMS requirements and a prisoner would only be afforded an arbitration in their hometown area if state law requires that the arbitration not be limited to the location of the defendant.  In any other case, the arbitration would be required to take place in Miami and not the hometown area of the Plaintiff.

- 7:  With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services.  When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration

The contracts uniformly state: "The cost of the arbitration proceeding, including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party or, at the discretion of the arbitrators, may be prorated between the parties in such proportion as the arbitrators determine to be equitable and shall be awarded as part of the award."

This clause as written violates the JAMS requirement that a consumer only pays $250. It is likely that the costs associated with an arbitration will come to several thousand dollars given that JPay has required three arbitrators for all disputes. See ECF # 19-2: PageID 951 (¶ 5b), PageID 961 (¶ 8b), PageID 972 (¶ 8b). While JPay's clause indicates that the arbitrators can determine the allocation of costs, the clause as written would likely deter a consumer from bringing an arbitration in the first place.

Another issue arises because the affidavit of Sode is lacking the records referenced, the Court is unable to assess whether the TOS's are presented fairly to Plaintiffs. Nothing in the affidavit shows anything other than they must be agreed to. There is no evidence on how the agreements were presented, what size the fonts were, and whether the arbitration agreement was prominently displayed. Thus there is no way to determine whether the actual presentation of the agreements were

reasonable and not hidden or a surprise.  JPay should have provided actual evidence but chose not to.

Taken together, these clauses violate JAMS consumer minimum standards. On its face, these standards were developed by JAMS to ensure that an arbitration clause was not substantively unconscionable.  JAMS will not arbitrate claims under the JPAY contracts because of these violations.  Therefore, that JAMS will not arbitrate disputes over JPay's TOS's is prima facie evidence that the arbitration agreements in the TOS' are substantively unconscionable.

Therefore, Plaintiff has demonstrated both procedural and substantive unconscionability.  As such, this Court must strike the arbitration agreement. Defendant's motion to compel should be denied.

## III.   The Jpay Arbitration Agreement Fails Under Section 5 Of The Federal Arbitration Act

As discussed above, the arbitration agreements contained within the TOS's do not comply with JAMS' consumer minimum standards and therefore, JAMS will not arbitrate Plaintiff's case.  As such, even if the Court concludes that the arbitration agreement is not unconscionable, there is no forum to arbitrate Plaintiff's claims.

Section 5 of the Federal Arbitration Act provides:

> "If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed . . . or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said

> agreement with the same force and effect as if he or they had
> been specifically named therein." 9 USCS § 5

As a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above. *Adler v Dell, Inc*, ___F Supp 2d___; 2009 U.S. Dist. LEXIS 112204, at *4 (ED Mich, Dec. 3, 2009); *See also Brown v. ITT Consumer Fin. Corp*., 211 F.3d 1217, 1222 (11th Cir. 2000).

The exception to this rule occurs when "it is *clear* that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." *Id.* (quoting *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (1991) (emphasis added)). In such situations, the Court will not sever the failed term from the rest of the agreement and the entire arbitration provision fails. *Id.* "Whether the agreement to arbitrate is entire or severable turns on the parties' intent at the time of the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *Great Earth Cos. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002).

As discussed above, the failed terms in the JPay contract are anything but ancillary logistical concerns, it renders the contract unable to meet the minimum standards of fairness to even allow it to be subject to arbitration. Each version of the JPay contract contains a section titled "Dispute Resolution," which provides:

> "Any dispute, claim or controversy among the parties arising out
> of or relating to this Agreement ("Dispute") shall be finally
> resolved by and through binding arbitration administered by

> JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules")."

Not only does JPay's TOS's specifically designate JAMS as the sole arbitrator, it designates that the JAMS rules as the only rules that could be followed. JPay could have written the clause as to not limit the arbitrator to JAMS, yet it failed to do so.  Not only did JPay insist on JAMS as the arbitrator, it insisted on very specific rules of JAMS – the Expedited procedures.  Thus, choosing JAMS as the forum for arbitration is not just some logistical issue, but is integral to the agreement. Therefore, if JAMS refuses to arbitrate the agreement as discussed above, then the claim may not be arbitrated at all.  "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" will the failure of the chosen forum preclude arbitration."  *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)

The court should not allow Defendants to have their cake and eat it too. Defendants cannot force Plaintiffs into an oppressive adhesion contract and then not even meet the minimum standards to resolve disputes in a manner that complies with its own terms. Not only does JPAY's rules specifically designate JAMS as the sole arbitrator, it designates that the JAMS rules as the only rules that could be followed. JPay was very precise in its wording and should not be allowed to backtrack on the contract it drafted. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 597 (6 Cir. 2001)("ambiguities in contracts should be construed against the drafter.")

Furthermore, there is no severability clause in the arbitration agreement.  At page 17 of the brief, JPay argues that the arbitration agreement is to be considered a separate agreement.  Following through on JPay's logic, the 2016 TOS does not contain a severability clause at all.  The 2017 TOS and 2018 TOS do contain a severability clause at ¶ 11, but since the arbitration agreement is separate from the overall agreement, those severability clauses do not apply to the individual components of the arbitration agreement- only the arbitration agreement as a whole. Thus, this Court should require that if Plaintiff must arbitrate his claims, they must be arbitrated under the exact terms set forth by JPay.

Defendant, the sole drafter of their TOS's, very specifically chose JAMS and its specialized rules.  Given that JPay's own contractual provisions fail to meet JAMS Minimum Standards of Procedural Fairness, and JAMS as the required forum for arbitration will not arbitrate the claim, the entire arbitration agreement is rendered unenforceable and Plaintiff may bring his claim before this Court.

## IV.    JPay Has Failed to Produce Admissible Evidence That Kensu Agreed to The Terms of the Arbitration Agreement and Thus Plaintiff Is Entitled to A Jury Trial On Whether There Is a Valid Arbitration Agreement

The US Supreme Court has found that the Federal Arbitration Act "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with a restricted inquiry into factual issues*." Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22, 103 S. Ct. 927, 940 (1983).

With respect to how the validity of an arbitration agreement should be evaluated,

district courts in the Sixth Circuit have held:

> But "[i]n order to show that the validity of the agreement is 'in
> issue' [under 9 U.S.C. § 4], the party opposing arbitration must
> show a genuine issue of material fact as to the validity of the
> agreement to arbitrate." Mazera v. Varsity Ford Mgmt. Servs.,
> LLC, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting Great Earth
> Cos., 288 F.3d at 889). If "a reasonable finder of fact could
> conclude that no valid agreement to arbitrate exists," the issue is
> subject to resolution by a jury. Id. (quoting Great Earth Cos., 288
> F.3d at 889). "The required showing mirrors that required to
> withstand summary judgment in a civil suit." Winn, 2011 U.S.
> Dist. LEXIS 8085, 2011 WL 294407, at *2 (quoting Great Earth
> Cos., 288 F.3d at 889) (citations omitted)); see also L & R Farm
> P'ship v. Cargill Inc., 963 F. Supp. 2d 798, 803 (W.D. Tenn.
> 2013) (same); Kovac v. Superior Dairy, Inc., 930 F. Supp. 2d
> 857, 864 (N.D. Ohio 2013) ("In evaluating motions or petitions
> to compel arbitration, courts treat the facts as they would in
> ruling on a summary judgment.")
>
> *Sellers v. Macy's Retail Holdings, Inc.*, No. 12-cv-02496-SHL-
> tmp, 2014 U.S. Dist. LEXIS 85879, at *18 (W.D. Tenn. June 5,
> 2014)

Other courts have detailed the process to challenge an arbitration agreement.  In

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014), the court

noted that "[w]hen it's apparent from a quick look at the case that no material

disputes of fact exist it may be permissible and efficient for a district court to decide

the arbitration question as a matter of law through motions practice and viewing the

facts in the light most favorable to the party opposing arbitration. *See, e.g., Hancock

v. Am. Tel. & Tel. Co*., 701 F.3d 1248, 1261 (10th Cir. 2012). In these circumstances,

the Act's summary trial can look a lot like summary judgment. But when, as in this case, a quick look at the case suggests material disputes of fact *do* exist on the question whether the parties agreed to arbitrate, round after round of discovery and motions practice isn't the answer." (emphasis in original). "[W]hen parties dispute the making of an agreement to arbitrate, the district court should hold a trial on the subject unless there are no genuine issues of material fact regarding the parties' agreement." *Id.* at 980.

In Michigan, when determining a motion for summary judgment, an analogous motion to FAA's summary hearing, courts require the movant to establish the absence of a genuine issue of material fact and must refute the affirmative defenses or establish that they are legally insufficient.

In this case, there is a genuine of material fact to whether Plaintiff agreed to the arbitration clause of Defendant's TOS's. Defendant provides an affidavit of Defendant's paralegal where the affiant states she has "reviewed Plaintiff Temujin Kensu's customer records. The following information is based on my review of those records." (Ex. 1, ECF No. 19-2, PageId.945, para 3.) Sode does not state that she has personal knowledge concerning Kensu. Defendant has provided no factual records to support the affiant's contentions regarding Plaintiff's supposed agreement. In *Tolliver v. Fed. Republic of Nig.*, 265 F. Supp. 2d 873, 879 (W.D. Mich. 2003) the Court wrote:

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir. 1995) (quoting Federal Rule of Civil Procedure 56(c)).

Moreover, affidavits must meet certain requirements:

Affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. Fed. R. Civ. P. 56(e)

Similar to Fed. R. Civ. P. 56, the same evidence standards are applicable under the FAA.  Sode's affidavit is not sufficient to overcome the material dispute of fact because it does not set forth facts that would be admissible in a trial.  It is not properly authenticated, and a factual foundation is not set force by reference to a copy of the records. Affiant merely states that records exist and that affiant viewed the records before making the affidavit. Thus, there is a genuine issue of material fact regarding Plaintiffs agreement to arbitrate.

The Sode affidavit also fails because it violates the best evidence rule.  *See* Fed. R. Evid. 1002: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." *See also Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994). "Rule 1002 requires production of an original document only when the proponent of the evidence seeks to prove the content of the writing."  Here Sode, without personal knowledge as to Kensu's specific circumstances, is testifying based upon

her review of the records and seeks to prove the contents of the records.  This is a clear violation of Fed. R. Evid. 1002 and this Court cannot admit Sode's affidavit to prove that Kensu agreed to the terms of JPay's TOS'.

Thus for purposes of determining whether there is a valid arbitration agreement under the FAA, JPay has failed to produce admissible evidence that Kensu agreed to any of the arbitration agreements.  As such, this Court must dismiss Defendant's motion to compel arbitration on its face.  In the event that the Court does not deny JPay's motion on its face, Plaintiff has certainly raised a question of fact concerning whether Kensu agreed to these terms and is thus entitled to a jury trial.

## CONCLUSION

Defendant's motion to compel arbitration is due to be denied because 1) there is an independent agreement which does not require arbitration; 2) JPay's TOS's are unconscionable adhesion contracts; and 3) JAMS, as the sole forum for arbitration, will not arbitrate the claims and thus there is no available forum under the contract. Lastly, Plaintiffs have requested and are entitled to a jury trial on the question of arbitration in the event that the Court does not deny Defendant's motion on its face.


Dated: July 31, 2018                    Respectfully Submitted,

                                        EXCOLO LAW, PLLC

                                        */s/ Keith Altman*

                                        Keith Altman (P81702)
                                        Solomon Radner (P73653)
                                        Ari Kresch (P29593)

Excolo Law PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
(516)456-5885
kaltman@excololaw.com

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 31, 2018, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein.

                     */s/Keith Altman*
                     Keith Altman (P81702)