# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL                    Case No. 2:18-cv-11086-SFC-PTM
OTHERS SIMILARLY SITUATED,

                                        Hon. Sean F. Cox

       Plaintiff,                 Mag. Judge Patricia T. Morris

   v.

JPAY INC.

     *Defendant.*

---

EXCOLO LAW PLLC                          MORGAN, LEWIS & BOCKIUS LLP
Keith L. Altman (P81702)                 Elizabeth Herrington (IL#6244547)
Solomon M. Radner (P73653)               Zachary R. Lazar (IL#6325727)
Ari Kresch (P29593)                      77 West Wacker Drive, Fifth Floor
26700 Lahser Road, Suite 401             Chicago, IL 60601
Southfield, MI 48033                     312-324-1000
516-456-5885                             beth.herrington@morganlewis.com
kaltman@lawampmmt.com

                                         HICKEY HAUCK BISHOFF & JEFFERS
                                         PLLC
*Attorneys for Plaintiff*                Benjamin W. Jeffers (P57161)
                                         One Woodward Avenue, Suite 2000
                                         Detroit, MI 48226
                                         313.964.8600
                                         bjeffers@hhbjlaw.com

                                         *Attorneys for Defendant*

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE PATRICIA T. MORRIS'S REPORT AND RECOMMENDATION ENTERED OCTOBER 22, 2018

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED...................................................................... iv

STATEMENT OF CONTROLLING AUTHORITY ..................................................... v

STATEMENT OF RELEVANT FACTS ..................................................................... 1

ARGUMENT ................................................................................................................ 3

I.    RESPONSE TO OBJECTION NO. 1: THERE IS NO BASIS TO DETERMINE
      THE ARBITRATION AGREEMENT FAILS UNDER SECTION FIVE OF THE
      FAA............................................................................................................................ 3

      A.    JAMS Will Arbitrate Kensu's Claim................................................................. 3

      B.    If JAMS Will Not Hear Kensu's Claim, Another Arbitrator May Be
            Appointed Pursuant to 9 U.S.C. § 5................................................................. 5

II.   RESPONSE TO OBJECTION NO. 2: THE MAGISTRATE CORRECTLY
      REJECTED KENSU'S CHALLENGE TO THE VALIDITY OF THE TOU................. 8

      A.    Kensu's "Take-it-or-Leave-it" Argument Concerns the Validity of the
            TOU as a Whole............................................................................................ 8

      B.    The Magistrate Appropriately Considered and Rejected Plaintiff's
            Unconscionability Argument.......................................................................... 11

III.  RESPONSE TO OBJECTION NO. 3: THE MDOC AGREEMENT DOES NOT
      EXCUSE KENSU FROM HIS CONTRACTUAL AGREEMENT TO
      ARBITRATE ............................................................................................................. 12

IV.   RESPONSE TO OBJECTION NO. 4: KENSU HAS NOT RAISED A GENUINE
      DISPUTE OF MATERIAL FACT AS TO HIS ACCEPTANCE OF THE TOU........... 15

CONCLUSION............................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adler v. Dell Inc.*,
No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009) ......................................5, 6

*Allstate Ins. Co. v. Swann*,
27 F.3d 1539 (11th Cir. 1994) ...............................................................................16

*Arnold v. Arnold Corp.*,
920 F.2d 1269 (6th Cir. 1990) .................................................................................9

*Brown v. ITT Consumer Fin. Corp.*,
211 F.3d 1217 (11th Cir. 2000) ...............................................................................7

*Doctor's Assocs. V. Casarotto*,
517 U.S. 681 (1996)..................................................................................................8

*Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc.*,
484 So. 2d 610 (Fla. Dist. Ct. App. 1986) ..............................................................13

*Ferro Corp. v. Garrison Indus., Inc.*,
142 F.3d 926 (6th Cir. 1998) ...................................................................................7

*Great Earth Companies, Inc. v. Simons*,
288 F.3d 878 (6th Cir. 2002) .......................................................................8, 9, 11

*Howard v. Ferrellgas Partners, L.P.*,
758 F.3d 975 (10th Cir. 20140) .............................................................................15

*Jones-Bey v. Caruso*,
2009 WL 3644801 (W.D. Mich. Oct. 30, 2009)...............................................12, 14

*Khan v. Dell Inc.*,
669 F.3d 350 (3d Cir. 2012)....................................................................................6

*Lee v. All Fla. Const. Co.*,
662 So. 2d 365 (Fla. Dist. Ct. App. 1995) ..............................................................13

*Mabin v. HSBC Mortg. Servs., Inc.*,
2015 WL 6161791 (Mich. Ct. App. Oct. 20, 2015)................................................12

*McGrew v. VCG Holding Corp., et al*,
244 F. Supp.3d 580, 592 (W.D. Ky. 2017) ..............................................................9

*McIntyre v. First Fin. Grp.*,
   2012 WL 5939931 (W.D. Mich. Nov. 27, 2012).................................................14

*O'Brien v. Ed Donnelly Enterprises, Inc.*,
   575 F.3d 567 (6th Cir. 2009) .........................................................................16

*Orkin Exterminating Co. v. Petsch*,
   872 So. 2d 259 (Fla. Dist. Ct. App. 2004) ...................................................10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)........................................................................................8

*Sanchez v. Eagle Alloy, Inc.*,
   254 Mich. App. 651 (Mich. App. 2003) .........................................................15

*Silverman v. Spitzer*,
   2014 WL 7157419 (Mich. Ct. App. Dec. 16, 2014) .........................................12

*West v. Legacy Motors, Inc.*,
   No. 16-12101, 2016 WL 6476458 (E.D. Mich. Nov. 2, 2016)..............................10

*Williams Int'l Co., LLC v. New W. Mach. Tool Corp.*,
   2010 WL 331714 (E.D. Mich. Jan. 22, 2010)....................................................10

**STATUTES**

9 U.S.C. § 4............................................................................................................8

9 U.S.C. §5.................................................................................................. passim

M.C.L. § 600.8401 ...............................................................................................4

**OTHER AUTHORITIES**

Fed. R. Evid. 1002 ...............................................................................................16

## **STATEMENT OF ISSUES PRESENTED**

1.      Whether a plaintiff may escape an arbitration provision through mere speculation that the named arbitrator might not hear the dispute, and where the court may appoint a substitute arbitrator pursuant to 9 U.S.C. §5 if the named arbitrator declines to hear the dispute?

**Defendant answers: No**
**Plaintiff answers: Yes**
**The Court should answer:  No**

2.      Whether a plaintiff may escape an arbitration provision through an unconscionability argument concerning the validity of the agreement as a whole, and where the argument additionally fails on the merits?

**Defendant answers: No**
**Plaintiff answers: Yes**
**The Court should answer:  No**

3.      Whether a plaintiff may escape an arbitration provision for claims that fall squarely within the scope of the arbitration agreement by asserting rights as a third-party to a related agreement that is silent on arbitration?

**Defendant answers: No**
**Plaintiff answers: Yes**
**The Court should answer:  No**

4.      Whether a plaintiff is entitled to a jury trial to resolve an undisputed material fact?

**Defendant answers: No**
**Plaintiff answers: Yes**
**The Court should answer:  No**

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to Local Rule 7.1(d)(2), Defendant states that the following authorities are the controlling or most appropriate authorities for the relief requested by this motion:

9 U.S.C. § 4

9 U.S.C. § 5

*Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009)

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002)

*Howard v. Ferrellgas Partners, L.P.*, 758 F.3d 975 (10th Cir. 20140)

*O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009)

*Sanchez v. Eagle Alloy, Inc.*, 254 Mich. App. 651 (Mich. App. 2003)

Plaintiff Kensu purchased media products and services from Defendant JPay pursuant to JPay's Terms of Use ("TOU"). By agreeing to the TOU, Plaintiff accepted the broad arbitration provision contained therein. In accordance with federal law favoring arbitration provisions, Magistrate Morris correctly recommended that JPay's Renewed Motion to Compel Arbitration (ECF No. 19) be granted. (ECF No. 23 (the "Magistrate's Report").) Kensu's objections to the Magistrate's Report are without merit.

## STATEMENT OF RELEVANT FACTS

A full account of relevant facts is stated in the Magistrate's Report, and in JPay's opening memorandum. (ECF No. 19.) In brief, Kensu is an inmate in the custody of the Michigan Department of Corrections ("MDOC"). (Compl. ¶ 12.) As a legal consequence of Kensu's incarceration, Kensu has limited access to commerce, and may purchase products and services only from MDOC and vendors who contract with MDOC for such purposes. (Compl. ¶ 31.) JPay is one such vendor, providing electronic communication services, tablets, media content, and accessories to inmates in the custody of MDOC. (Compl. ¶ 33.)

Inmates purchase JPay's products and services through electronic kiosks and tablets, which require users to accept JPay's TOU prior to making a purchase. The TOU contains a broad, binding arbitration provision:

> Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and

1

> through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules"). . . . Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).)[1]  The 2017 and 2018 TOU added clarifying language to this provision, in bolded typeface, stating that "**You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration**." (2017 TOU § 8(a); 2018 TOU § 8(a).)

Kensu brought this action on April 4, 2018, asserting various claims arising from Kensu's core allegation that JPay's products and services are of deficient quality.  (ECF No. 1.)  JPay moved to compel arbitration pursuant to the TOU.  (ECF No. 12.)  In an attempt to circumvent the arbitration provision of the TOU, Kensu filed an Amended Complaint asserting the very same claims, with the additional theory that Kensu could assert these claims as a third-party beneficiary of the agreement between JPay and MDOC.  (ECF No. 18.)  JPay filed a Renewed Motion to Compel Arbitration directed at the Amended Complaint, and Magistrate Morris issued a Report recommending JPay's motion be granted.  (ECF No. 19; 23.)

---

[1]    Kensu first accepted the TOU in 2016, and accepted updated terms in 2017 and 2018.

2

## ARGUMENT

**I.    RESPONSE TO OBJECTION NO. 1: THERE IS NO BASIS TO DETERMINE THE ARBITRATION AGREEMENT FAILS UNDER SECTION FIVE OF THE FAA**

Kensu asserts that JAMS will not arbitrate his claims, and that the agreement therefore fails under 9 U.S.C. § 5 because—according to Kensu—there is no forum available to arbitrate the dispute.  But JAMS explicitly reserves the right to determine the applicability of its rules, and has good reason to find the TOU in compliance with its rules.  Kensu's argument is speculative and premature because he has made no attempt to have his case heard by an arbitrator.  Additionally, in the unlikely event that JAMS will not hear the arbitration, arbitration may proceed with another arbitrator, appointed by the court, in accordance with 9 U.S.C. § 5.

### A.    JAMS Will Arbitrate Kensu's Claim.

As addressed in JPay's Reply brief to the Magistrate (ECF No. 22, p. 5), JAMS reserves the right to determine the applicability of its rules.  *See* JAMS COMPREHENSIVE ARBITRATION RULES & PROCEDURES, July 1, 2014, Rule 11.  Kensu has made no attempt to have his claim heard by JAMS, and thus has no basis for his unfounded claim that JAMS will not hear the dispute.  Kensu's request that this Court speculate as to what JAMS may do is premature.

Moreover, JAMS has ample basis to determine that the arbitration provision at issue is acceptable.  Kensu's three arguments are unpersuasive.  First, Kensu argues that JAMS' CONSUMER MINIMUM STANDARDS ("JAMS Standards")

3

require "no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction." JAMS Standards, ¶ 1(b). But Kensu has not attempted to bring an action in small claims court. Instead, Kensu has brought a class action alleging "millions of dollars" worth of damages. (Compl. ¶¶ 3, 11.) Michigan's small claims court will not hear disputes in excess of $6,000. M.C.L. § 600.8401. Therefore, Kensu has not been precluded from seeking remedies within the scope of a small claims court's jurisdiction.

Second, Kensu asserts there is a "conflict" concerning the arbitration location. But while the TOU names Miami, Florida as the default location of arbitration, it expressly reserves that the arbitration may be conducted in the city of Kensu's incarceration if so required. (2016 TOU § 4(c); 2017 TOU § 8(c); 2018 TOU § 8(c).) Therefore, the TOU complies with rule 5 of the JAMS Standards.

Finally, Kensu asserts that the cost-allocation is inconsistent with JAMS Standards. However, the TOU provides that the costs of arbitration "may be prorated between the parties in such proportion as the arbitrators determine to be equitable…." (2017 TOU § 8(d); 2016 TOU § 8(d).) The TOU therefore complies with the JAMS Standards' cost provision.[2] There is no reason for the Court to preemptively foreclose JAMS' opportunity to hear Kensu's claim.

---

[2] Kensu's Objections also reference "the issue of whether the TOS's were presented fairly to the Plaintiffs." JPay does not understand what Kensu refers to, as Kensu made no such argument in prior briefing, and there is no associated rule in the JAMS Standards.

4

**B.** **If JAMS Will Not Hear Kensu's Claim, Another Arbitrator May Be Appointed Pursuant to 9 U.S.C. § 5.**

If for any reason there is a lapse in the parties' ability to name an arbitrator as provided in an arbitration agreement, upon application of a party the court may designate or appoint a substitute arbitrator.  9 U.S.C. § 5.  Accordingly, "[a]s a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above." *Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739, at *2 (E.D. Mich. Dec. 3, 2009).  Therefore, *even if* JAMS declines to arbitrate Kensu's claims, the arbitration provision remains valid under 9 U.S.C. § 5.

Kensu notes that an exception to this rule is merited where "it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself."  *Adler*, at *2 (quoting McGuire, *Cornwell & Blakey v. Grider*, 771 F.Supp. 319, 320 (1991) (emphasis in *Adler*)). But Kensu's reliance on this selective quotation ignores the actual findings of *Adler*.

The *Adler* court found that, where the arbitrator named in the agreement would not accept a consumer arbitration, the arbitration provision remained enforceable.  *Id.*  at *1, *5.  The *Adler* arbitration provision provided that disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION

FORUM (NAF)". *Id.* at *2. This language is functionally equivalent to the language of the TOU, stating that disputes "shall be finally resolved by and through binding arbitration administered by JAMS…." (2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).) The court held that such language could ***not*** support a "clear" finding that the named arbitrator was more than a logistical consideration. *Adler*, at * 2.

Moreover, the *Adler* court found a provision requiring the application of NAF rules supported finding that the intent to arbitrate was paramount, while the designation of the arbitrator was secondary, as such language would be "mere surplusage, except in the case of a substitute arbitration forum." *Id.* at *3. Likewise, the TOU's application of the JAMS Rules would be surplusage in the absence of a potentially substituted forum. Additionally, the *Adler* court found that language restricting the arbitration to proceed on an individual basis—as is present in the TOU—further supported a finding that the decision to arbitrate was more important to the parties than the arbitration forum. *Id.* Accordingly, under a functionally identical agreement, the *Adler* court could not conclude the selection of an arbitrator was "as important a consideration as the agreement to arbitrate itself." *Id.* at *2.[3] *See also Khan v. Dell Inc.*, 669 F.3d 350, 356 (3d Cir. 2012) (finding the clause

---

[3]   Where ambiguous, the selection of an arbitrator should be treated as a logistical consideration, and the arbitration provision upheld, consistent with federal policy favoring arbitration. *See Adler*, 2009 WL 4580739, at *4 ("[A]ny doubts regarding arbitrability should be resolved in favor of arbitration").

"shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum" was ambiguous as to whether the choice of arbitrator is ancillary, and upholding arbitration clause); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("The unavailability of the [named arbitrator] does not destroy the arbitration clause").

Kensu's argument that "there is no severability clause in the arbitration agreement" is perplexing and irrelevant.  (ECF No. 24, p. 8.)  Kensu offers no explanation for how the existence or absence of a severability clause should impact the application of 9 U.S.C. § 5.  Moreover, the 2017 and 2018 TOUs do contain severability clauses.  (2017 TOU § 11; 2018 TOU § 11.)  Kensu contends that these severability clauses do not apply to the arbitration provision, because the arbitration provision represents a "separate agreement" from the TOU, alluding to *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933 (6th Cir. 1998).  But the legal principle of *Ferro Corp.* concerns the relationship between the arbitration provision and entire agreement *solely* for the evaluation of fraud or unconscionability.  *Id.* at 932-33. Kensu's broader application has no basis in law or reason.

Magistrate Morris was correct to omit consideration of 9 U.S.C. § 5, as the inquiry is premature.  Kensu has not presented his claim to JAMS, and JAMS has made no determinations regarding the applicability of its rules to the TOU.  If, and only if, JAMS determines it will not arbitrate the dispute, Kensu may petition a court

pursuant to 9 U.S.C. § 5 for the selection of an alternative arbitrator. In no event does the arbitration provision at issue fail.

## II. RESPONSE TO OBJECTION NO. 2: THE MAGISTRATE CORRECTLY REJECTED KENSU'S CHALLENGE TO THE VALIDITY OF THE TOU

The validity of an arbitration agreement may be challenged on the basis of fraud, duress, or unconscionability. *Doctor's Assocs. V. Casarotto,* 517 U.S. 681 (1996). In briefing before the Magistrate, Kensu challenged the TOU as procedurally unconscionable, arguing the TOU was offered on a "take-it-or-leave-it" basis without a meaningful alternative. (ECF No. 21, pp. 7-9.) In his objections, Kensu re-casts the same argument as sounding in both duress and unconscionability. The Magistrate appropriately considered and rejected Kensu's challenge.

### A. Kensu's "Take-it-or-Leave-it" Argument Concerns the Validity of the TOU as a Whole.

Pursuant to 9 U.S.C. § 4, and under clear Supreme Court precedent, "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Where a plaintiff's challenge goes to the validity of the entire agreement, such challenge is itself subject to arbitration. *Id.* To avoid arbitration, Kensu must argue that the making of the

agreement to arbitrate—standing alone—is invalid due to the existence of duress, fraud, or unconscionability that is not otherwise applicable to the agreement as a whole. *See Great Earth*, 288 F.3d at 890; *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1278 (6th Cir. 1990).

Kensu challenged the validity of the TOU by arguing the agreement is procedurally unconscionable because Kensu did not have a meaningful alternative to accepting JPay's TOU.  Magistrate Morris correctly rejected this argument because it "unquestionably go[es] to the validity of the [] agreement as a whole, rather than the arbitration provisions specifically."  (Magistrate's Report, p. 8 *quoting McGrew v. VCG Holding Corp., et al*, 244 F. Supp.3d 580, 592 (W.D. Ky. 2017) (alterations in the Magistrate's Report).)

Kensu contends the Magistrate erred because "the bulk" of his argument, as framed in his brief, "focuses on the validity of the arbitration provision itself…." (ECF No. 24, p. 9.)  But that is an improper application of doctrine:  as a matter of law and fact, Kensu's "take-it-or-leave-it" argument is equally applicable to the TOU as a whole and to the arbitration provision.  Kensu cannot ask the court to simply ignore the broader implications of the argument to suit his purpose.  *See McGrew*, 244 F. Supp.3d at 580 (where plaintiffs alleged an arbitration provision was procedurally unconscionable due to intoxication, argument applied to the

agreement as a whole, absent allegations that plaintiffs were intoxicated *only* when reviewing the arbitration provision).

Moreover, the Magistrate's Report found the "result would be the same" even if Kensu's challenge was constrained to the arbitration clause, because a "take-it-or-leave-it" contract is not unconscionable. (Magistrate's Report pp. 8-9, *citing Big City Small World Bakery Café, LLC v. Francis Favid Corp.*, 265 F. Supp. 3d 750, 762-64 (E.D. Mich. 2017); *West v. Legacy Motors, Inc.*, No. 16-12101, 2016 WL 6476458 , at *2 (E.D. Mich. Nov. 2, 2016).) Additionally, even if the Magistrate could find procedural unconscionability, Kensu has not adequately pled substantive unconscionability, and so cannot defeat the arbitration agreement.[4]  *See Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 264 (Fla. Dist. Ct. App. 2004) (an agreement must be both procedurally and substantively unconscionable to be unenforceable). Accordingly, there is no basis to find the Magistrate erred in the outcome.[5]

---

[4]   Because Kensu's procedural unconscionability argument fails, the Magistrate's Report had no need to consider Kensu's substantive unconscionability argument. Kensu contends the TOU is substantively unconscionable because it does not satisfy JAMS' Standards. This argument has no merit, because JAMS' Standards are not the requirement for substantive unconscionability. Substantive unconscionability is found only "where the inequity of the term is so extreme as to shock the conscience." *Williams Int'l Co., LLC v. New W. Mach. Tool Corp.*, 2010 WL 331714, at *9 (E.D. Mich. Jan. 22, 2010). Kensu makes no such argument.

[5]   Kensu attempts to bolster his unconscionability argument with a hypothetical scenario in which a consumer forfeits prior purchases by rejecting the TOU. As addressed in prior briefing (ECF No. 22, p. 4), Kensu cannot assert unconscionability based on events that he does not allege occurred.

**B.     The Magistrate Appropriately Considered and Rejected Plaintiff's Unconscionability Argument.**

Kensu presented one argument to the Magistrate as a basis to invalidate the arbitration provision: that the agreement was unconsionable because it was offered on a "take-it-or-leave-it" basis without a meaningful alternative. (ECF No. 21, § II.) In his objections, Kensu claims this argument also "sounds" in duress—but, even now, Kensu has not attempted to make a case for duress under Michigan law.

Instead, Kensu cherry-picks and misconstrues the Magistrate's Report to suggest the Magistrate **only** considered "fraud in the inducement" valid grounds to challenge an arbitration provision.   This is blatantly false.   The Magistrate considered Kensu's unconscionability argument and rejected the argument because it challenges the validity of the agreement as a whole and because Kensu did not sufficiently allege an unconscionable procedure. (Magistrate's Report pp. 7-8.)

Kensu misleadingly points to the Magistrate's direct quotation of *Great Earth* to suggest she believed he **must** state a claim for "fraud in the inducement" to succeed in his challenge. (ECF No. 24, p. 11.) The Magistrate's quotation of *Great Earth* was illustrative of Plaintiff's need to challenge the validity of the arbitration clause itself; it was not intended to limit Plaintiff's viable arguments to only fraud-in-the-inducement.   This is made obvious by the Magistrate's application of Great Earth's holding to Kensu's unconscionability argument. (Magistrate's Report, pp. 7-8.)

And Kensu cannot resuscitate his argument by re-labeling it as "duress"—especially absent any attempt to apply his theory to applicable case law.  Under Michigan law, a party asserting duress "must establish that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes."  *Mabin v. HSBC Mortg. Servs., Inc.*, 2015 WL 6161791, at *7 (Mich. Ct. App. Oct. 20, 2015).  And "[a] claim of duress or coercion will not prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation, and reflection."  *Silverman v. Spitzer*, 2014 WL 7157419, at *5 (Mich. Ct. App. Dec. 16, 2014) (internal quotation omitted).  Kensu has not asserted that he was illegally compelled or coerced to act by fear of serious injury, and cannot do so now.  *See Jones-Bey v. Caruso*, 2009 WL 3644801, at *2 (W.D. Mich. Oct. 30, 2009) (a party may not raise new arguments in objecting to a Magistrate's recommendation).  Kensu presented a singular challenge, attacking the TOU as unconscionable, based on the alleged lack of a reasonable alternative.  (ECF No. 21, § II.)  The Magistrate considered and rejected Kensu's challenge on the merits.

## III.   RESPONSE TO OBJECTION NO. 3: THE MDOC AGREEMENT DOES NOT EXCUSE KENSU FROM HIS CONTRACTUAL AGREEMENT TO ARBITRATE

After JPay filed its first Motion to Compel Arbitration, Kensu amended his Complaint to assert rights as third-party beneficiary of the agreement between JPay

and MDOC in an attempt to circumvent his contractual obligation to arbitrate. Tellingly, apart from the existence of the third-party agreement, Kensu did not assert any new facts or claims—he merely alleged that all claims subject to the TOU could *also* be brought under the third-party agreement. In so doing, he admits by implication that every claim asserted as a third-party beneficiary arises from or relates to the TOU.

Kensu agreed that disputes in connection with his purchases of products, content and services would be governed by the TOU, and subject to the arbitration provision contained therein. (2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).) Every single claim Kensu brings arises from or relates to purchases he made pursuant to the TOU, and is therefore bound by the direct contractual agreement between the parties to arbitrate "[a]ny dispute, claim or controversy among the parties arising out of or relating to [the TOU]". *Id.* Kensu's attempt to circumvent the TOU agreement based on the *absence* of a dispute resolution term in a third-party agreement has no precedent, and should not be permitted.

Kensu's authorities are inapplicable. In *Lee v. All Fla. Const. Co.*, 662 So. 2d 365 (Fla. Dist. Ct. App. 1995) two contracts between the same parties governed two distinct and severable construction projects. The court correctly found that the arbitration provision from one contract could not be applied to claims arising solely under the other. Likewise, *Eugene W. Kelsey & Son, Inc. v. Architectural Openings,*

*Inc.*, 484 So. 2d 610 (Fla. Dist. Ct. App. 1986) concerned two separate subcontracting agreements between the same parties, and claims arising uniquely from one contract were not subject to the arbitration provision of the other.

This case does not concern—as in Kensu's authorities—two completely unrelated contractual obligations between the parties. Instead, these two agreements operate in tandem: the MDOC agreement grants JPay the status of service provider, while the TOU governs the terms of service between the service provider and customers. To the extent Kensu is a third-party beneficiary of the MDOC agreement, it is only *because he accepted* the TOU. The TOU directly controls the rights of the service provider and the customer with respect to dispute resolution.

It is irrelevant to Kensu's claims that the third-party agreement has an allegedly different "scope." Kensu's claims narrowly arise from purchases made under the TOU, and are not factually severable from the TOU. Kensu cannot escape arbitration by asserting a parallel claim on the very transactions he agreed to arbitrate. *See McIntyre v. First Fin. Grp.*, 2012 WL 5939931, at *3 (W.D. Mich. Nov. 27, 2012) (statutory claim was subject to arbitration because it was factually "arising out of or relating to" an agreement to arbitrate.)

An absent term in the agreement between JPay and MDOC cannot negate the parties' direct agreement concerning the transactions at issue. Such an evasion has no support in law, and would undermine the contractual intent of the TOU.

14

IV.   **RESPONSE TO OBJECTION NO. 4: KENSU HAS NOT RAISED A GENUINE DISPUTE OF MATERIAL FACT AS TO HIS ACCEPTANCE OF THE TOU**

Kensu ***has never denied*** that he accepted the TOU—yet seeks a jury trial on that very issue.  The Magistrate correctly found there is no genuine dispute of material fact as to whether Kensu agreed to the arbitration provision.  (Magistrate Report, p. 6 ("Plaintiff does not dispute that he made multiple purchases of electronic communications services at JPay kiosks under the TOUs")).  And Kensu's objections to the enforceability of the arbitration provision are invalid as a matter of law.  *See* Section II, *supra*; *see also Howard v. Ferrellgas Partners, L.P.*, 758 F.3d 975, 978 (10th Cir. 20140) ("[w]hen it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law….")

As the Magistrate found, Kensu does not dispute that he made purchases through JPay's kiosks pursuant to the TOU; mutuality of agreement is established through Kensu's performance and acquiescence.  *Sanchez v. Eagle Alloy, Inc.*, 254 Mich. App. 651, 665-66 (Mich. App. 2003) (holding a contract may be established through performance and acquiescence).  Kensu's demand for a jury trial on whether he accepted the TOU is therefore completely unwarranted.  The Magistrate had no need to entertain Kensu's demand in the absence of a disputed fact.

Because Kensu cannot truthfully assert that he did not accept the TOU, he instead obfuscates the issue by arguing JPay has not produced sufficient evidence of his acceptance. Kensu's argument is meritless. The Sode Declaration[6] sets forth personal knowledge regarding JPay's TOU, the processes for distributing and accepting the TOU, and the technological impossibility of using JPay's services without first accepting JPay's TOU. (Sode Decl. ¶¶ 2, 11-12.) These facts conclusively establish that Kensu was required to accept the TOU to make the purchases alleged in his Complaint. Plaintiff does not dispute these facts.

Kensu seeks refuge under the "best evidence rule." Fed. R. Evid. 1002. But JPay has provided the relevant writing required by the rule—the TOU. The rule does not require that JPay produce any additional records, because JPay has not sought to prove the content of such records. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 598 (6th Cir. 2009) (Fed. R. Evid. 1002 did not require production of timekeeping records referenced in an affidavit). The rule does not "require production of a document simply because the document contains facts that are also testified to by a witness." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994). It is sufficient that the Declaration sets forth personal knowledge that it would be factually impossible for Kensu to purchase JPay products without

---

[6] Declaration of Atinuke Sode in Support of Defendants' Motion to Compel Arbitration ("Sode Declaration") (ECF No. 19-2).

accepting the TOU.  Further inquiry would waste the resources of the parties and the

Court.[7]

## CONCLUSION

For the above reasons, Defendant respectfully requests that their Motion to

Compel Arbitration be granted.

 Dated:  November 19, 2018                Respectfully submitted,

                                          JPAY INC.

                                          By:    */s/ Elizabeth Herrington*
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          Elizabeth Herrington (IL#6244547)
                                          Zachary R. Lazar (IL#6325727)
                                          77 West Wacker Drive, Fifth Floor
                                          Chicago, IL 60601
                                          312-324-1000
                                          beth.herrington@morganlewis.com

                                          HICKEY HAUCK BISHOFF &
                                          JEFFERS PLLC
                                          Benjamin W. Jeffers (P57161)
                                          One Woodward Avenue, Suite 2000
                                          Detroit, MI 48226
                                          313.964.8600
                                          bjeffers@hhbjlaw.com

                                          *Attorneys for Defendant*

---

[7]     As expressed in briefing before the Magistrate, if it pleases the Court, Defendant can produce
electronic records documenting Plaintiff's repeated acceptance of the TOU.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the foregoing Response to Plaintiff's Objections to Magistrate Morris's Report and Recommendation Entered October 22, 2018 was filed on November 19, 2018 with the Clerk of Court using the CM/ECF system.

*/s/ Elizabeth Herrington*
Elizabeth Herrington (IL#6244547)
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

*Attorney for Defendant*