# UNITED STATES DISTRICT COURT
# EASTERN DISTICT OF MICHIGAN
# SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

        *Plaintiffs,*

v.

JPAY INC.

        *Defendant.*

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox
Mag. Judge Patricia T. Morris

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiff and the Class*

MORGAN, LEWIS, & BROCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS
PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313-964-8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

---

# PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS AND RULE ON VALIDITY OF ARBITRATION AGREEMENT

Plaintiff Temujin Kensu and the Class, by and through their counsel, EXCOLO LAW, PLLC, file this motion to lift the stay that was entered by this Court on March 11, 2019 pending the conclusion of any arbitration.

For the reasons stated in the attached brief, Plaintiff respectfully requests that the Court lift the stay and allow this matter to proceed by ruling on the validity of the arbitration agreement.


Dated: May 13, 2019                           Respectfully Submitted,


                                              EXCOLO LAW, PLLC

                                              */s/ Keith Altman*

                                              Keith Altman (P81702)
                                              Solomon Radner (P73653)
                                              Ari Kresch (P29593)
                                              Excolo Law PLLC
                                              26700 Lahser Road, Suite 401
                                              Southfield, MI 48033
                                              (516)456-5885
                                              kaltman@excololaw.com

                                              *Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox
*Plaintiffs,*                            Mag. Judge Patricia T. Morris

v.

JPAY INC.

*Defendant.*

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiff and the Class*

MORGAN, LEWIS, & BROCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS
PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313-964-8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS AND RULE ON THE VALIDITY OF THE ARBITRATION AGREEMENT

## <u>MOST APPROPRIATE AUTHORITY</u>

1. *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014)

2. *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331 (11th Cir. 2016)

3. *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000)

# **TABLE OF CONTENTS**

MOST APPROPRIATE AUTHORITY ................................................................ i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................ iii

CONCISE STATEMENT OF THE ISSUE PRESENTED..................................... iv

LOCAL RULE CERTIFICATION ........................................................................v

STATEMENT OF RELEVANT FACTS ...............................................................1

ARGUMENT .........................................................................................................2

    I.    THIS COURT HAS JURISDICTION OVER THIS DISPUTE PURSUANT TO THE UNILATERAL UNCONSCIONABLE ADHESION CONTRACT DRAFTED BY DEFENDANTS .......................................................................2

    II.    THE ARBITRATION AGREEMENT IS INVALID AS AN UNCONSCIONABLE ADHESION CONTRACT................................................3

    III.    EVEN IF THIS COURT DECIDES THAT THE ARBITRATION AGREEMENT IS VALID, THE EXCLUSIVE ABRITRATION FORUM SELECTED BY THE DEFENDANTS IS UNAVAILABLE AND INTEGRAL TO THE ARBITRATION AGREEMENT, AND THEREFORE, NO AVAILABLE ARBITRATION FORUM EXISTS ...............................................................10

CONCLUSION ....................................................................................................14

CERTIFICATE OF SERVICE ............................................................................16

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Allen v. Michigan Bell Telephone Co.,* 18 Mich. App. 632, 171 N.W.2d 689 (1969) ...................................................................................................................4

*Andersons Inc. v. Horton Farms, Inc.*, 166 F.3d 308 (6th Cir. 1998) .....................4

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).............................. 10, 11

*Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000)............13

*Flagg v. First Premier Bank*, 644 F. App'x 893 (11th Cir. 2016)........ 11, 12, 13, 14

*Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014) .................. 11, 12, 13

*Kaspers v. Comcast Corp.*, 631 F. App'x 779 (11th Cir. 2015) ..............................10

*Morris v. Metriyakool*, 418 Mich. 423, 344 N.W.2d 736, 742 (1984).....................4

*Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259 (Fla. Dist. Ct. App. 2004) .......5

*Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331 (11th Cir. 2016) ............ 11, 12, 14

*Paulsen v. Bureau of State Lottery,* 167 Mich. App. 328, 336, 421 N.W.2d 678 (1988)...................................................................................................................4

*Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574-75 (Fla. Dist. Ct. App. 1999)... 5, 6, 7

*The Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308 (6th Cir. 1998) ..............4

*United States v. Hanna*, 153 F.3d 1286 (11th Cir. 1998) ........................................11

## Statutes

42 U.S.C. § 1983 .....................................................................................................1

9 U.S.C. § 5 ............................................................................................................11

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

1.  Whether this Court should lift the stay of proceedings entered in this case on March 11, 2019 pending the conclusion of arbitration due to the chosen arbiter declining to administer arbitration.

2.  Whether this Court should determine that the arbitration agreement is invalid as an unconscionable adhesion contract.

## <u>LOCAL RULE CERTIFICATION</u>

The undersigned counsel certifies that pursuant to E.D. Mich. L.R. 7.1(a), Plaintiff has contacted the Defendants seeking their concurrence to the relief sought in the instant motion, however, Defendants declined any such concurrence.

The undersigned counsel further certifies that this document complies with E.D. Mich. LR 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). The undersigned further certifies that the brief is the appropriate length since it does not exceed 25 pages. E.D. Mich. LR 7.1(d)(3).

Dated: May 13, 2019                     Respectfully Submitted,

                                        */s/ Keith Altman*
                                        Keith Altman (P81702)
                                        Attorney for Plaintiffs
                                        26700 Lahser Rd., Suite 401
                                        Southfield, MI 48033
                                        (516) 456-5885
                                        kaltman@excololaw.com

## STATEMENT OF RELEVANT FACTS

Defendant JPay, Inc. ("JPay") contracted with the Michigan Department of Corrections ("MDOC") to provide services to prisoners housed in MDOC facilities, including Defendant JPay's JPay Inmate Services program ("JPay Program"). Plaintiff Temujin Kensu ("Kensu"), a prisoner currently incarcerated in the MDOC, purchased thousands of dollars' worth of money transfer services, email or "eCommunication" services, video visitation services, MP3 players, electronic tablets, content, products, and accessories from Defendant JPay through Defendant's JPay Program. Plaintiff Kensu commenced this class action lawsuit against Defendant JPay on behalf of himself and a class of individuals who similarly made purchases through Defendant's JPay Program, alleging causes of action under 42 U.S.C. § 1983 and the Michigan Consumer Protection Act, in addition to claims of breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, unjust enrichment, fraud and intentional misrepresenting, and breach of express and implied warranty.

On June 1, 2018, Defendant JPay filed their Motion to Compel Arbitration. ECF No. 12. Plaintiff filed his Response to Defendant's Motion to Compel Arbitration on June 21, 2018, ECF No. 16, followed by an amended complaint on June 26, 2018. ECF No. 18. Defendants filed their Renewed Motion to Compel Arbitration on July 10, 2018, ECF No. 19, to which Plaintiff responded on July 31,

2018. ECF No. 21.   On October 22, 2018, Magistrate Judge Patricia T. Morris entered her Report and Recommendation on Defendant's Renewed Motion to Compel Arbitration (R.19). ECF No. 23.

On March 11, 2019, this Court entered its Order Adopting Judge Morris's October 22, 2018 Report and Recommendation (ECF No. 23) and Staying This Case Pending Arbitration.  ECF No. 27.  On April 23, 2019, JAMS, the exclusive arbiter designated by Defendant JPay to administer arbitration, informed Plaintiff's counsel that JAMS is "no longer administering arbitrations between JPay and its customers." Exhibit A.

Accordingly, Plaintiff moves this Court to lift the stay and allow the matter to proceed by determining the validity of the of the arbitration agreement.

## **ARGUMENT**

I.   THIS COURT HAS JURISDICTION OVER THIS DISPUTE PURSUANT TO THE UNILATERAL UNCONSCIONABLE ADHESION CONTRACT DRAFTED BY DEFENDANTS

Pursuant to the unilateral unconscionable adhesion contract drafted by Defendants, this Court has jurisdiction to determine the validity of the arbitration agreement.  Each of the three agreements that Defendant claims Plaintiff Kensu signed contains the following provision:

> Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding

on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(Defs. Exhibit 1, D.E. 19-2, Page ID ## 951, 961, 972).

Here, pursuant to each of the three agreements, this Court maintains jurisdiction over resolving this dispute, and this Court, not the arbiter, has jurisdiction in determining the arbitration agreement's validity based upon the contractual provisions cited above.

Defendant also has previously argued that the arbitration agreement in this case is a separate agreement in itself. (Defs.' Motion to Compel Arbitration, D.E. 19, Page ID 932) ("Under Supreme Court precedent, 'the arbitration agreement is effectively considered as a separate agreement which can be valid despite being contained in a fraudulently induced contract.'").  By Defendant's own reasoning, this arbitration agreement is separate and apart from the entire agreement, and can be assessed by this Court in determining its validity.

Pursuant to language of the agreement, the agreement itself provides that this Court has jurisdiction to resolve any disputes and rule on the validity of the arbitration agreement, rather that compel another arbiter to decide this issue.

## II.  THE ARBITRATION AGREEMENT IS INVALID AS AN UNCONSCIONABLE ADHESION CONTRACT

This Court should set aside the JPay contract as an adhesion contract because Plaintiffs had no ability to negotiate the terms, there is no alternative to JPay

available to prisoners within the MDOC, and the arbitration terms are procedurally and substantively unconscionable.

"Contracts of adhesion are characterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the second party cannot obtain the desired product or service except by acquiescing in the form agreement." *Morris v. Metriyakool*, 418 Mich. 423, 440, 344 N.W.2d 736, 742 (1984). Under Michigan law, the party seeking to set aside a contract as an adhesion contract must show that the contractual provision in question left no realistic choices or options after considering the parties' relative bargaining power and economic strengths, and alternative sources of supply, if any. *See The Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 322 (6th Cir. 1998); *Allen v. Michigan Bell Telephone Co.,* 18 Mich. App. 632, 637, 171 N.W.2d 689, 692 (1969). However, "even if a contract is one of adhesion . . . a challenged provision remains enforceable if it is substantially reasonable and not oppressive or unconscionable." *Paulsen v. Bureau of State Lottery,* 167 Mich. App. 328, 336, 421 N.W.2d 678 (1988). The court considered two factors when considering whether the contract was oppressive: "(1) whether the relatively weaker party had an alternative source with which it could contract, and (2) whether the contract term in question was in fact negotiable." *Andersons Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 324 (6th Cir. 1998).

The JPay contract is the definition of an oppressive adhesion contract. Not only are Plaintiffs unable to negotiate the terms of the agreement, they have no freedom of choice to choose another provider. JPay is protected from other market

forces. When correctional facilities contract with JPay and offer its music players and tablet computers for sale to prisoners, they often confiscate radios that are already owned by the prisoners.  There is no alternative to JPay available to prisoners within the MDOC.  Because of the contract with the MDOC, prisoners must use JPay's services or do without.  Thus, the Court should set aside the JPay contract as an adhesion contract.

Another key consideration is that if a prisoner has funds in their JPay account, these funds are not returnable.  *See* ECF # 19-2:  PageID 949 ¶ 2, PageID 954 ¶ 2. In the event that a prisoner elects not to agree to the terms of service, there is no provision for the prisoner to a) receive a refund of funds in their JPay account and b) have their player unlocked so that they may enjoy the content ***already*** purchased. In other words, Prisoners have no choice but to forfeit their JPay purchases if they do not agree with terms which JPay can alter at any time.  Surely this does not provide prisoners with any choice but to accept whatever terms JPay dictates.

Plaintiff also agrees with Defendant's assessment of Florida law that an agreement must be both procedurally unconscionable and substantively unconscionable. *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259 (Fla. Dist. Ct. App. 2004).  JPay's agreement is both.  For procedural unconscionability, *Powertel, Inc. v. Bexley*, 743 So. 2d 570(Fla. Dist. Ct. App. 1999), cited by *Orkin,* establishes the basis:

> As for the first element, we conclude that the arbitration clause at issue is procedurally unconscionable. Although not dispositive of this point, it is significant that the arbitration clause is an adhesion contract. Generally, an adhesion contract is defined as

a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Black's Law Dictionary, 6th Ed. (1990). *See also Pasteur Health Plan, Inc. v. Salazar*, 658 So. 2d 543, 544 (Fla. 3d DCA 1995) (stating the definition of an adhesion contract).

Powertel prepared the arbitration clause unilaterally and sent it along to its customers as an insert to their monthly telephone bill. The customers did not bargain for the arbitration clause, nor did they have the power to reject it. One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer. *See Belcher*; *Kohl*. Here, the customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had purchased from Powertel.

It is true, as Powertel argues, that customers can avoid the effect of the arbitration clause by canceling their phone service and signing an agreement with another provider. The fallacy of that argument, however, is that switching providers would result in a loss of the investment the customers have in the agreements they made with Powertel. They purchased equipment that works only with the Powertel service and they have obtained telephone numbers that cannot be transferred to a new provider.

*Powertel,* 743 So. 2d at 574-75.

*Powertel* is analogous to the situation here. There is no choice among the prisoners in the MDOC. First, according to the JPay/MDOC contract, JPay did not provide music players and content until after February 1, 2017. ECF # 15-1, PageID 555. At this point, JPay was the sole provider of players and music to the MDOC

and there was no other option, contrary to Defendant's suggestion.[1]   Therefore, if Plaintiff and the Class wanted to have music players, it was either agree to JPay's terms or do without not only music but e-mail communication and other JPay services for which they were the exclusive provider.  This is not a meaningful choice.

Furthermore, as with *Powertel*, another key consideration is that if a prisoner has funds in their JPay account, these funds are not returnable.  See ECF # 19-2: PageID 949 (¶ 2), PageID 954 (¶ 2), PageID 965 (¶ 2).  In the event that a prisoner elects not to agree to the terms of service, there is no provision for the prisoner to a) receive a refund of funds in their JPay account and b) have their player unlocked so that they may enjoy the content **already** purchased.  In other words, prisoners have no choice but to forfeit their Jpay purchases if they do not agree with terms which JPay can alter at any time.  Surely this does not provide prisoners with any choice but to accept whatever terms JPay dictates.  This is the very definition of an adhesion contract.

With respect to substantive unconscionability, JAMS, the arbitrator required by JPay, will not be arbitrate the claims, as the terms of their agreement fail to meet the consumer standards.  *See* Defs. Exhibit 1, D.E. 19-2.  JAMS states:

> JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers

---

[1] JPay replaced Keefe Commissary Services on that date.  Prisoners could move their music over to JPay players if they wanted to continue to access purchased music.

> ***only*** if the contract arbitration clause and specified applicable
> rules comply with the following minimum standards of fairness.

(Emphasis added, full listing of terms in Defs. Exhibit 1, D.E. 19-2).

First, there is no question that the JPay TOS are consumer agreements.  Thus,

the JAMS consumer standards apply.  Some of the terms in question are:

- 1(b): no party shall be precluded from seeking remedies in small
  claims court for disputes or claims within the scope of its
  jurisdiction.

This term creates an issue in that the contracts state that the exclusive remedy of the

prisoners is arbitration, and makes no provision for the use of small claims courts.

- 5: The consumer must have a right to an in-person hearing is his
  or her hometown area.

The contracts state uniformly: "The place of arbitration shall be Miami,

Florida (provisions will be made for telephonic appearances if necessary or

required.  If arbitration in Miami, Florida is contrary to law, the arbitration shall be

conducted in the city of your incarceration."  This term does not comply with JAMS

requirements and a prisoner would only be afforded an arbitration in their hometown

area if state law requires that the arbitration not be limited to the location of the

defendant.  In any other case, the arbitration would be required to take place in

Miami and not the hometown area of the Plaintiff.

- 7:  With respect to the cost of the arbitration, when a consumer
  initiates arbitration against the company, the only fee required to
  be paid by the consumer is $250, which is approximately
  equivalent to current Court filing fees. All other costs must be

> borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration

The contracts uniformly state: "The cost of the arbitration proceeding, including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party or, at the discretion of the arbitrators, may be prorated between the parties in such proportion as the arbitrators determine to be equitable and shall be awarded as part of the award."

This clause as written violates the JAMS requirement that a consumer only pays $250. It is likely that the costs associated with an arbitration will come to several thousand dollars given that JPay has required three arbitrators for all disputes. *See* ECF # 19-2: PageID 951 ¶ 5b, PageID 961 ¶ 8b, PageID 972 ¶ 8b. While JPay's clause indicates that the arbitrators can determine the allocation of costs, the clause as written would likely deter a consumer from bringing an arbitration in the first place.

Another issue arises because the affidavit of Sode is lacking the records referenced, the Court is unable to assess whether the TOS's are presented fairly to Plaintiffs. Nothing in the affidavit shows anything other than they must be agreed to. There is no evidence on how the agreements were presented, what size the fonts were, and whether the arbitration agreement was prominently displayed. Thus, there

is no way to determine whether the actual presentation of the agreements were reasonable and not hidden or a surprise. JPay should have provided actual evidence but chose not to.

Taken together, these clauses violate JAMS consumer minimum standards. On its face, these standards were developed by JAMS to ensure that an arbitration clause was not substantively unconscionable. JAMS will not arbitrate claims under the JPAY contracts because of these violations. Therefore, that JAMS will not arbitrate disputes over JPay's TOS's is prima facie evidence that the arbitration agreements in the TOS' are substantively unconscionable. Plaintiff has demonstrated both procedural and substantive unconscionability, and as such, this Court should hold the arbitration agreements to invalid.

III. EVEN IF THIS COURT DECIDES THAT THE ARBITRATION AGREEMENT IS VALID, THE EXCLUSIVE ABRITRATION FORUM SELECTED BY THE DEFEDANTS IS UNAVAILABLE AND INTEGRAL TO THE ARBITRATION AGREEMENT, AND THEREFORE, NO AVAILABLE ARBITRATION FORUM EXISTS

"The principal purpose of the [Federal Arbitration Act (FAA)] is to ensure private arbitration agreements are enforced according to their terms." *Kaspers v. Comcast Corp.*, 631 F. App'x 779, 781-82 (11th Cir. 2015) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted).[2]

---

[2] If this Court determines that the JPay TOS arbitration agreements are valid, Florida Law applies as to the effect of the independent JPay/MDOC contract because JPay has selected Florida Law in the TOS.

Through arbitration agreements, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its dispute." *AT&T Mobility LLC*, 563 U.S. at 344 (citations omitted).

Section 5 of the FAA permits a court to appoint a substitute arbiter in the event there is a lapse or failure of the named forum. *See* 9 U.S.C. § 5. However, "the failure of the chosen forum preclude[s] arbitration whenever the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1337 (11th Cir. 2016) (citing *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349-50 (11th Cir. 2014). "The integral provision rule remains the law of our Circuit under our strong prior panel precedent rule." *Inetianbor,* 768 F.3d at 1350 (citing *United States v. Hanna*, 153 F.3d 1286, 1288 (11th Cir. 1998) (per curiam) ("In this circuit, only the court of appeals sitting en banc, an overriding United States Supreme Court decision, or a change in the statutory law can overrule a previous panel decision.").

"To determine whether the forum selection clause is integral, we must consider how important the term was to one or both of the parties at the time they entered into the agreement." *Inetianbor,* 768 F.3d at 1350. The text of the arbitration provision determines the parties' intent. *Flagg v. First Premier Bank*, 644 F. App'x 893, 896 (11th Cir. 2016).

Here, as in *Inetianbor*, it is "clear that the parties here intended the forum selection clause to be a central part of the agreement to arbitrate, rather than an ancillary logistical provision." *Inetianbor,* 768 F.3d at 1350.  The arbitration provision at issue expressly provides:

> "Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ('Dispute') shall be finally resolved by and through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules")."

(Defs. Exhibit 1, D.E. 19-2, Page ID ## 951, 961, 971).  Moreover, the agreement expressly references JAMS's Comprehensive Arbitration Rules and Procedures and the Expedited Procedures.  Accordingly, the designation of JAMS "pervades the arbitration agreement" and "is strong evidence" that the parties "considered arbitration conducted by" JAMS "to be an integral aspect of the arbitration agreement." *Inetianbor,* 768 F.3d at 1351; *see also Parm,* 835 F.3d at 1338 ("These pervasive references to the tribal forum and its rules provide evidence that the forum selection clause was not simply an ancillary concern but an integral aspect of the parties' agreement to arbitrate.").

Similarly, in *Flagg*, the 11th Circuit Court of Appeals affirmed a district court decision that determined the choice of forum in the arbitration clause was an integral part of the agreement.  Scrutinizing the arbitration provision, the court found the "provision specifies that disputes 'shall' be resolved by the NAF under its Code in

effect at the time of the claim, and does not appear to contemplate arbitration before any other forum." *Flagg*, 644 F. App'x at 896. "Despite the fact" that the chosen arbiter "had stopped accepting consumer arbitration cases more than three years," the defendant "continued to use arbitration agreements designating the NAF and made no provision for the appointment of an alternate arbitrator." *Id.* The court held this "chronology suggests that the designation of the NAF was integral to First Int'l and counsels against a court stepping in to appoint a different arbitral forum." *Id.*

Moreover, while defendants in *Flagg* relied upon *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000) in arguing for arbitration with a substitute arbitral forum, the *Flagg* court held that such "reliance is misplaced." *Flagg*, 644 F. App'x at 896.  "The arbitration provision in *Brown* provided only that claims were to be 'resolved by binding arbitration under the Code of Procedure of the National Arbitration  Forum,' but did not explicitly designate an arbitral forum." *Id.* The court went on to explain that in *Flagg*, "the arbitration agreement specifically designates the NAF as the arbitral forum and mentions the chosen forum throughout the agreement." *Id*. (citing *Inetianbor*, 768 F.3d at 1351) ("Unlike in *Brown*, the arbitration agreements we consider here select not just the rules of procedure, but also the arbitral forum. Beyond that, unlike in *Brown*, here the chosen arbitral forum is referenced throughout the arbitration agreement. As a result, *Brown* in no way compels us to reach the same outcome here.").

Here, as in *Inetianbor*, *Parm*, and *Flagg*, JAMS "pervaded the arbitration provision." *Flagg*, 644 F. App'x at 896.  The Defendant determined that JAMS, "as designated as the exclusive forum and its" Comprehensive Arbitration Rules and Procedures and Expedited Procedures in those rules "was selected to govern all claims." *Id*.  Given these decisions, the choice of JAMS "as the arbitral forum was an integral part of the agreement to arbitrate." *Id*. Accordingly, just as the *Parm* court "is bound by our prior panel precedent to conclude that the tribal forum is integral to the parties' agreement to arbitrate, and we may not provide a substitute under § 5 of the FAA," *Parm,* 835 F.3d at 1338, this Court should decline to appoint a substitute for JAMS.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court lift the stay and allow this matter to proceed by ruling on the validity of the arbitration agreement.

Dated: May 13, 2019                     Respectfully Submitted,

                                        EXCOLO LAW, PLLC

                                        */s/ Keith Altman*

                                        Keith Altman (P81702)
                                        Solomon Radner (P73653)
                                        Ari Kresch (P29593)
                                        Excolo Law PLLC
                                        26700 Lahser Road, Suite 401
                                        Southfield, MI 48033

(516)456-5885
kaltman@excololaw.com

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2019, I served the foregoing document on

Defendants *via* electronic filing:

Dated: May 13, 2019                    Respectfully Submitted,


                                       EXCOLO LAW, PLLC

                                       */s/ Keith Altman*

                                       Keith Altman (P81702)
                                       Solomon Radner (P73653)
                                       Ari Kresch (P29593)
                                       Excolo Law PLLC
                                       26700 Lahser Road, Suite 401
                                       Southfield, MI 48033
                                       (516)456-5885
                                       kaltman@excololaw.com

# EXHIBIT A



April 23, 2019

Keith Altman Esq.
Excolo Law PLLC
26700 Lahser Rd.
Suite 401
Southfield, MI 48033

Re:   JPay Arbitration Request

Dear Mr. Altman

Please be advised that as of April 8, 2019 JAMS is no longer administering arbitrations between JPay and its customers.  Please call JPay at 1-800-574-5729 for information regarding resolving disputes with JPay.

Sincerely,

Sarah Nevins
Business Manager
313-209-8851
snevins@jamsadr.com