# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

        Plaintiff,

   v.

JPAY INC.

     *Defendant.*

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox

Mag. Judge Patricia T. Morris

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com


*Attorneys for Plaintiff*

MORGAN, LEWIS & BOCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS
PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
# TO LIFT STAY OF PROCEEDINGS AND RULE ON VALIDITY OF
# <u>ARBITRATION AGREEMENT</u>

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF RELEVANT FACTS ...........................................................3

ARGUMENT .....................................................................................................6

I.  THERE IS NO BASIS TO OVERTURN THE COURT'S PRIOR
    ORDER .....................................................................................................6

    A.  Kensu's Motion is Procedurally Improper. ........................................6

    B.  The Court Correctly Ruled on Unconscionability. .............................8

II. THE COURT MAY APPOINT A SUBSTITUTE ARBITRATOR
    PURSUANT TO THE FAA ......................................................................12

    A.  The FAA Provides the Appropriate Path Forward ...........................12

    B.  JAMS Was Not Integral to the Agreement. .....................................13

CONCLUSION ................................................................................................18

CERTIFICATE OF SERVICE ........................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adler v. Dell Inc.*,
   No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009)............passim

*Arnold v. Arnold Corp.*,
   920 F.2d 1269 (6th Cir. 1990) ...............................................................9

*Bd. of Trustees of Sheet Metal Workers' Local Union No. 80 Ins. Tr.
   Fund v. Blue Cross & Blue Shield of Michigan*, No. 2:13-cv-
   10415,
   2013 WL 5874609 (E.D. Mich. Oct. 31, 2013)....................................7

*Brown v. ITT Consumer Fin. Corp.*,
   211 F.3d 1217 (11th Cir. 2000) ...........................................................16

*Flagg v. First Premier Bank*,
   644 F. App'x 893 (11th Cir. 2016) ..............................................17, 18

*Great Earth Companies, Inc. v. Simons*,
   288 F.3d 878 (6th Cir. 2002) ............................................................8, 9

*Inetianbor v. CashCall, Inc.*,
   768 F.3d 1346 (11th Cir. 2014) ....................................................16, 17

*Kensu v. JPay, Inc.*,
   2019 WL 1109948 (E.D. Mich. Mar. 11, 2019).........................passim

*Kensu v. JPay, Inc.*,
   No. 2:18-cv-11086 (E.D. Mich. October 22, 2018) .............................7

*Khan v. Dell Inc.*,
   669 F.3d 350 (3d Cir. 2012) ...............................................................15

*Orkin Exterminating Co. v. Petsch*,
   872 So. 2d 259 (Fla. Dist. Ct. App. 2004)..........................................11

*Parm v. Nat'l Bank of California, N.A.*,
    835 F.3d 1331 (11th Cir. 2016) ...................................................16, 17

*Powertel, Inc. v. Bexley*,
    743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ...................................10, 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)...........................................................................8

*Rory v. Cont'l Ins. Co.*,
    473 Mich. 457 (2005) .......................................................................10

*West v. Legacy Motors, Inc.*,
    No. 16-12101, 2016 WL 6476458 (E.D. Mich. Nov. 2, 2016) ..........10

*Williams Int'l Co., LLC v. New W. Mach. Tool Corp.*,
    No. 09-12516, 2010 WL 331714 (E.D. Mich. Jan. 22, 2010)............12

## STATUTES

9 U.S.C. § 4 ....................................................................................8

9 U.S.C. § 5 ..............................................................................passim

## OTHER AUTHORITIES

LR 7.1(h).................................................................................2, 6, 7

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.   Whether this Court should reject Plaintiff's belated request for reconsideration of issues previously ruled upon by this Court, absent any demonstration of defect, in accordance with E. D. Mich. LR 7.1(h)?

**Defendant answers: Yes**


2.   Whether this Court should designate a substitute arbitrator in accordance with 9 U.S.C. § 5 in furtherance of this Court's March 11, 2019 order compelling arbitration of Plaintiff's claims?

**Defendant answers: Yes**

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to Local Rule 7.1(d)(2), Defendant states that the following authorities are the controlling or most appropriate authorities for the relief requested by this motion:

9 U.S.C. § 5

E. D. Mich. LR 7.1(h)

*Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009)

*Bd. of Trustees of Sheet Metal Workers' Local Union No. 80 Ins. Tr. Fund v. Blue Cross & Blue Shield of Michigan*, No. 2:13-cv-10415, 2013 WL 5874609, at *1 (E.D. Mich. Oct. 31, 2013)

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)

*Kensu v. JPay, Inc.*, 2019 WL 1109948, at *2 (E.D. Mich. Mar. 11, 2019)

*Kensu v. JPay, Inc.,* No. 2:18-cv-11086 (E.D. Mich. October 22, 2018), *report and recommendation adopted 2019 WL 1109948* (E.D. Mich. Mar. 11, 2019)

## **PRELIMINARY STATEMENT**

On March 11, 2019, this Court granted Defendant JPay's Motion to Compel Arbitration.  (ECF No. 27.)  The Court upheld the mandatory arbitration provision contained in JPay's Terms of Use ("TOU"), and stayed Plaintiff Temujin Kensu's action.  (*Id*.)  The Order specifically noted that if the designated arbitrator—JAMS— declined to arbitrate the action, "the Federal Arbitration Act already provides the appropriate path forward.  *See* 9 U.S.C. § 5."  (*Id*. p. 2.)  The FAA provision cited by the Court provides that if an agreement provision naming an arbitrator lapses for any reason, "the court shall designate and appoint an arbitrator" to act "with the same force and effect as if he or they had been specifically named therein."  9 U.S.C. § 5.

On April 2, 2019, JAMS wrote to JPay requesting that JAMS be removed from JPay's TOU.  *See* Exhibit A.  The sole reason for JAMS' request, as expressed in the letter, was JAMS' own administrative and logistical difficulties administering arbitrations for incarcerated claimants.  *Id*.  Contrary to Kensu's salacious and unfounded speculations, JAMS' decision had nothing to do with the terms of the TOU, and JAMS in no way impugned the validity of the agreement.  On April 23, 2019, JAMS informed Kensu that it would not administer his arbitration.[1]

---

[1] Notably, JAMS' April 2 letter provides that JAMS would continue to administer any JPay cases commenced prior to April 1, 2019.  *See* Exhibit A.  Had Plaintiff acted promptly following the Court's Order, JAMS would have administered Plaintiff's arbitration.

1

As the Court correctly noted in its March 11 Order, "the Federal Arbitration Act already provides the appropriate path forward." (ECF No. 27 p. 2.) But rather than proceeding as advised by the Court, Kensu brings a belated motion for reconsideration, styled under another name, asking this Court to re-visit Kensu's previously-rejected arguments concerning the validity of the TOU. Kensu's motion should be dismissed as a time barred motion for reconsideration pursuant to E. D. Mich. LR 7.1(h), and because Kensu has failed to demonstrate a "palpable defect" with the Court's prior order, as required by the same rule. Kensu provides no justification for this Court to reconsider its prior, correct findings that Kensu's unconscionability argument goes to the validity of the agreement as a whole, and thus must be reserved for the arbitrator. (*See* ECF No. 23 p. 8; ECF No. 27 p. 3.)

JPay respectfully requests that this Court follow the course of action mandated by the FAA and appoint a substitute arbitrator to administer Kensu's claims. Kensu's contention that the selection of JAMS was "integral" to the arbitration agreement is entirely without merit. There is nothing in the agreement to suggest the specific choice of JAMS was "as important a consideration as the agreement to arbitrate itself." *Adler v. Dell Inc.*, 2009 WL 4580739, at *2 (E.D. Mich. Dec. 3, 2009) (appointing a substitute arbitrator when considering a nearly-identical selection clause). Appointment of a substitute arbitrator under 9 U.S.C. § 5, in accordance with this Court's prior guidance, is both necessary and appropriate.

In sum, the Court should not re-consider its prior ruling, or Plaintiff's various arguments opposing arbitration.  The Court was correct when issuing its prior order, and remains correct today.  As a housekeeping matter, JPay requests that the Court identify a replacement for JAMs given JAMs' recent business decision and Plaintiff's unwillingness to resolve this logistical consideration without judicial intervention.   Defendant recommends the American Arbitration Association ("AAA"), but defers to the Court on the selection and will participate in any reasonable process that is consistent with the core terms of the TOU.

## STATEMENT OF RELEVANT FACTS

A full account of relevant facts is stated in the Magistrate's Report, and in JPay's opening memorandum on its Renewed Motion to Compel Arbitration.  (ECF No. 19, 23.)  In brief, Kensu is an inmate in the custody of the Michigan Department of Corrections ("MDOC").  (Compl. ¶ 12.)  As a legal consequence of Kensu's incarceration, Kensu has limited access to commerce, and may purchase products and services only from MDOC and vendors who contract with MDOC for such purposes.  (Compl. ¶ 31.)   JPay is one such vendor, providing electronic communication services, tablets, media content, and accessories to inmates in the custody of MDOC.  (Compl. ¶ 33.)

Inmates purchase JPay's products and services through electronic kiosks and tablets, which require users to accept JPay's TOU prior to making a purchase. The TOU contains a broad, binding arbitration provision:

> Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules"). . . . Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).)[2] The 2017 and 2018 TOU added clarifying language to this provision, in bolded typeface, stating that "**You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration**," as well as additional text at the beginning of the section stating "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.**" (2017 TOU § 8; 2018 TOU § 8.)

Kensu brought this action on April 4, 2018, asserting various claims arising from Kensu's core allegation that JPay's products and services are of deficient

---

[2] Kensu first accepted the TOU in 2016, and accepted updated terms in 2017 and 2018. All three versions are included in ECF No. 19-2.

quality.  (ECF No. 1.)  JPay moved to compel arbitration pursuant to the TOU.  (ECF No. 12.)  Kensu then filed an Amended Complaint in an attempt to circumvent the arbitration provision.  (ECF No. 18.)  JPay filed a Motion to Compel Arbitration directed at the Amended Complaint.  (ECF No. 19.)  Kensu responded by arguing, in part, that the TOU was unconscionable, and that JAMS might decline to hear the arbitration. (ECF No. 21.)  Magistrate Morris issued a Report recommending JPay's motion be granted.  (ECF No. 23.)  Kensu objected to the report, again raising his unconscionability argument, and argument that JAMS might decline to hear the arbitration.  (ECF No. 24.)  On March 11, 2019, the Court granted JPay's Motion to Compel Arbitration and stayed the action.  (ECF No. 27.)

In April of 2019, the Parties were informed that JAMS would no longer hear arbitrations brought against JPay.  In a letter to JPay, JAMS explained that this decision resulted from JAMS' own administrative and logistical difficulties arbitrating inmate actions.  Exhibit A.  JAMS did not, in any way, criticize JPay or JPay's arbitration practices.  *Id*.  JPay has since revised its TOU to select AAA as its designated arbitrator on a go-forward basis.[3]

---

[3]   Recognizing that the Court's Order applies to a prior version of the TOU, JPay would accept appointment of a non-AAA arbitrator for purposes of this dispute.

# ARGUMENT

## I.   THERE IS NO BASIS TO OVERTURN THE COURT'S PRIOR ORDER

### A.   Kensu's Motion is Procedurally Improper.

Kensu's motion asks the Court to reconsider the same issue already ruled upon in the March 11 Order:  whether this Court should set aside the arbitration provision as unconscionable.   Although Kensu styles his motion as a "Motion to Lift Stay of Proceedings and Rule on Validity of Arbitration Agreement," Kensu's motion never articulates a legal basis to justify lifting the stay.  Instead, Kensu uses his brief as an opportunity to ask the court to reconsider its prior order.  In substance, if not in name, Kensu has filed a motion for reconsideration.

Pursuant to E. D. Mich. LR 7.1(h)(1), a motion for reconsideration must be filed within 14 days after entry of a judgment or order.  Kensu filed this motion 63 days after entry of the Court's Order.  (ECF No. 27.)  On that basis alone, Kensu's motion is time barred to the extent it seeks reconsideration.

Additionally, the Local Rules provide that a court will generally not grant a motion for reconsideration "that merely present the same issues ruled upon by the court, either expressly or by reasonable implication."  E. D. Mich. LR 7.1(h)(3).  Because Kensu asks the court to find the TOU unconscionable—the same issue Kensu raised on briefing to the Magistrate, and in Kensu's Objections to the Magistrate's report—his motion should be barred.  *See Kensu v. JPay, Inc.*, 2019

6

WL 1109948, at *2 (E.D. Mich. Mar. 11, 2019) (ruling "Kensu's unconscionability argument should be considered by the arbitrator, not the Court"); *see also Kensu v. JPay, Inc.,* No. 2:18-cv-11086 (E.D. Mich. October 22, 2018), *report and recommendation adopted 2019 WL 1109948* (E.D. Mich. Mar. 11, 2019) (Magistrate's Report, noting that even if the Court could consider the unconscionability argument, *Kensu* had not sufficiently alleged unconscionability.)

To succeed on a motion for reconsideration, the movant must "demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled [and] also show that correcting the defect will result in a different disposition of the case." E. D. Mich. LR 7.1(h)(3). "A defect is palpable when it is 'obvious, clear, unmistakable, manifest, or plain.'" *Bd. of Trustees of Sheet Metal Workers' Local Union No. 80 Ins. Tr. Fund v. Blue Cross & Blue Shield of Michigan*, No. 2:13-cv-10415, 2013 WL 5874609, at *1 (E.D. Mich. Oct. 31, 2013) (internal citation omitted) (rejecting a "motion to lift stay" for failure to identify a "palpable defect" with the court's prior order, as required on reconsideration.) Where a plaintiff merely re-argues the same issues previously considered by the court, it cannot demonstrate a palpable defect. *Id*.

Accordingly, Kensu's motion should be dismissed as an improper motion for reconsideration because it is time barred, because it presents the same issues

previously ruled on by the court, and because it fails to identify a palpable defect with the Court's prior ruling.

### B.     The Court Correctly Ruled on Unconscionability.

The Court reached the correct conclusion concerning unconscionability in its March 11, 2019 Order.  Because Kensu's unconscionability argument goes to the validity of the entire agreement, it must be decided by an arbitrator.  *See Kensu*, 2019 WL 1109948, at \*2.  Kensu's assertion that the language of the TOU provides otherwise is baseless, and relies on an absurd reading of the TOU.  Moreover, on the merits, Kensu fails to allege procedural or substantive unconscionability.

Pursuant to 9 U.S.C. § 4, and under clear Supreme Court precedent, "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole."  *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  Where a plaintiff's challenge goes to the validity of the entire agreement, such challenge is itself subject to arbitration.  *Id.*  To avoid arbitration, Kensu must argue that the making of the agreement to arbitrate—standing alone—is invalid due to the existence of duress, fraud, or unconscionability that is not otherwise applicable to the agreement as a

whole.  *See Great Earth*, 288 F.3d at 890; *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1278 (6th Cir. 1990).

Kensu repeats his prior argument that the TOU is procedurally unconscionable because Kensu did not have a meaningful alternative to accepting JPay's TOU.  Magistrate Morris correctly rejected this argument because it "unquestionably go[es] to the validity of the [] agreement as a whole, rather than the arbitration provisions specifically."  (Magistrate's Report, p. 8 *quoting McGrew v. VCG Holding Corp., et al*, 244 F. Supp.3d 580, 592 (W.D. Ky. 2017) (alterations in the Magistrate's Report).)  The March 11 order expressly affirmed this finding. *Kensu*, 2019 WL 1109948, at *2.

Kensu seeks to displace this well-established legal principle by claiming that a provision in the TOU provides the Court jurisdiction to determine whether the arbitration agreement is unconscionable.  But the provision at issue states "***the agreement of the parties to arbitrate*** any and all Disputes . . . shall be final and binding on the parties and ***may be specifically enforced*** by legal proceedings in any court of competent jurisdiction."  (2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a)) (emphasis added).  This provision allows any court to grant a motion to compel arbitration—it does not follow that the provision subverts the legal principle articulated in *Great Earth* and permits the court to seize the arbitrator's jurisdiction to rule on enforceability of the TOU as a whole.  *See* 288 F.3d at 890.  The provision,

9

by its own terms, is specifically limited to the enforcement of the arbitration provision, not the enforceability of the TOU as a whole.[4]  Moreover, the provision provides that a court may *enforce* the binding nature of the arbitration provision, while Kensu asks the Court to do the opposite.

The Magistrate also rejected Kensu's argument on the merits, noting that the "result would be the same" even if Kensu's challenge was constrained to the arbitration clause, because a "take-it-or-leave-it" contract is not procedurally unconscionable.  (Magistrate's Report pp. 8-9, *citing Big City Small World Bakery Café, LLC v. Francis Favid Corp.*, 265 F. Supp. 3d 750, 762-64 (E.D. Mich. 2017); *West v. Legacy Motors, Inc.*, No. 16-12101, 2016 WL 6476458 , at *2 (E.D. Mich. Nov. 2, 2016).)  Kensu errs in claiming that the TOU is unenforceable as an adhesion contract.  The Michigan Supreme Court has squarely held that adhesion contracts are valid and enforceable, and this label "may not be used as a justification for creating any adverse presumptions or for failing to enforce a contract as written." *See Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 490 (2005).

Kensu's citation to *Powertel* is misleading.  *See Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. Dist. Ct. App. 1999).  In *Powertel*, plaintiffs agreed to a contract

---

[4]    Additionally, the provision is contained within the arbitration agreement. Therefore, if Kensu is correct in his interpretation of the provision, and the Court also agrees with Kensu that the arbitration provision is unconscionable, this provision would be invalid.

that did not contain an arbitration provision, purchased products from Powertel, and Powertel later added an arbitration provision to the agreement. Procedural unconscionability was found because the arbitration provision was unilaterally added to an existing agreement, and customers had no opportunity to reject it. *Id*. at 574-75. That's not what happened here; the TOU contained an arbitration provision from day one.

Kensu also argues procedural unconscionability based on a *hypothetical* situation: an inmate *might* have funds in their JPay account before signing the TOU. But that is not what happened. Kensu does not allege he had funds in his account, or owned a JPay device, when he accepted the TOU in June of 2016. Kensu cannot assert unconscionability based on events that did not occur.

Even if the Court could find procedural unconscionability, Kensu has not adequately pled substantive unconscionability, and so cannot defeat the arbitration agreement. *See Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 264 (Fla. Dist. Ct. App. 2004) (an agreement must be both procedurally and substantively unconscionable to be unenforceable). Kensu contends the TOU is substantively unconscionable because it allegedly does not satisfy JAMS' Consumer Standards. This argument has no merit, because JAMS' Consumer Standards are not the

requirement for substantive unconscionability.[5]  Substantive unconscionability is found only "where the inequity of the term is so extreme as to shock the conscience." *Williams Int'l Co., LLC v. New W. Mach. Tool Corp.*, 09-12516, 2010 WL 331714, at *9 (E.D. Mich. Jan. 22, 2010).  Kensu makes no such argument.  Accordingly, there is no basis to find this Court erred in its prior order.

## II.   THE COURT MAY APPOINT A SUBSTITUTE ARBITRATOR PURSUANT TO THE FAA

### A.   The FAA Provides the Appropriate Path Forward.

If for any reason there is a lapse in the parties' ability to name an arbitrator as provided in an arbitration agreement, upon application of a party the court shall designate or appoint a substitute arbitrator.  9 U.S.C. § 5.  Accordingly, "[a]s a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above." *Adler*, 2009 WL 4580739, at *2 (upholding arbitration agreement where contractually-selected arbitrator would no longer hear the relevant category of arbitration).  Therefore, the arbitration provision remains valid under 9 U.S.C. § 5, and JPay requests that this Court name a substitute arbitrator.

---

[5]   Despite Kensu's baseless speculation, JAMS has never found the TOU to be improper.  *See* Exhibit A.

## B.    JAMS Was Not Integral to the Agreement.

An exception to 9 U.S.C. § 5 applies where "it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." *Adler*, at *2.  If the agreement is ambiguous on this point, the selection of an arbitrator should be treated as a logistical consideration, and the arbitration provision upheld, consistent with federal policy favoring arbitration.  *See Adler*, 2009 WL 4580739, at *4.[6]

JPay's TOU makes clear that the agreement to arbitrate is of the highest importance to JPay.  The dispute resolution provision begins with the all-capital, bolded statement:   "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.**"  (2017 TOU § 8; 2018 TOU § 8.)  The provision goes on to explain  "In the event JPay is unable to resolve a complaint you may have to your satisfaction (or if JPay has not been able to resolve a dispute it has with you after attempting to do so), we each agree to resolve those disputes through binding arbitration instead of in court."  *Id*.  It further states, in bolded type face, "**[a]ny arbitration under this Agreement will take**

---

[6]    Kensu errs in asserting that Florida law applies to this issue under the TOU.  The TOU provides that Florida law governs the rights of the parties, but states "[t]he arbitration provisions set forth herein . . . shall be governed exclusively by the Federal Arbitration Act, Title 9 United States Code, to the exclusion of any state or municipal law of arbitration."  (2018 TOU § 8(e).)

place on an individual basis; class arbitrations and in court class actions are not permitted.**" *Id*.  And then, to remove any lingering doubt that JPay strongly intends all disputes be arbitrated, the arbitration provision further states, "**[y]ou agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration.**" *Id*.

To the extent the agreement discusses JAMS, it does so no more than necessary as an ancillary logistical consideration, naming JAMS as the arbitrator, and JAMS Rules and Procedures as the applicable rules.  *Id*.  To JPay, the utility of including an arbitrator selection provision is that any disputes brought by consumers against JPay could be efficiently administered by a single body without the need to resolve logistical considerations on a case-by-case basis.  That JPay has already revised its TOU to replace JAMS with AAA underscores the logistical, rather than substantive importance of the selection provision.  And Kensu cannot meaningfully allege that the arbitrator selection provision is of any importance to him, given his zealous attempts to avoid arbitration altogether.

*Adler* is illustrative.  The *Adler* court found that, where the arbitrator named in the agreement would not accept a consumer arbitration, the arbitration provision remained enforceable.  *Id.* at *1, *5.  The *Adler* arbitration provision provided that disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL

14

ARBITRATION FORUM (NAF)". *Id.* at *2. This language is functionally equivalent to the language of the TOU, stating that disputes "shall be finally resolved by and through binding arbitration administered by JAMS…." (2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).) The court held that such language could not support a "clear" finding that the named arbitrator was anything more than a logistical consideration. *Adler*, at * 2.

Moreover, the *Adler* court found a provision requiring the application of NAF rules supported finding that the intent to arbitrate was paramount, while the designation of the arbitrator was secondary, as such language would be "mere surplusage, except in the case of a substitute arbitration forum." *Id.* at *3. Likewise, the TOU's application of the JAMS Rules would be surplusage in the absence of a potentially substituted forum. Additionally, the *Adler* court found that language restricting the arbitration to proceed on an individual basis—as is present in the TOU—further supported a finding that the decision to arbitrate was more important to the parties than the arbitration forum. *Id.* Accordingly, under a functionally identical agreement, the *Adler* court could not conclude the selection of an arbitrator was "as important a consideration as the agreement to arbitrate itself." *Id.* at *2. *See also Khan v. Dell Inc.*, 669 F.3d 350, 356 (3d Cir. 2012) (finding the clause "shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum" was ambiguous as to whether the choice of arbitrator

is ancillary, and upholding the arbitration clause); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("The unavailability of the [named arbitrator] does not destroy the arbitration clause").

Kensu's authorities are inapplicable. In both *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331 (11th Cir. 2016) and *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014), the defendant was affiliated with the Cheyenne River Sioux Tribe ("CRST"), a Native American tribe. In both cases, the arbitration provision required arbitration by the CRST. *See Parm*, 835 F.3d at 1333; *Inetianbor*, 768 F.3d at 1348. There is an obvious, substantive difference between selecting arbitration with a specialized, semi-autonomous legal entity that is affiliated with the transaction, and selecting arbitration with one of several national, general consumer arbitration organizations. As discussed by the court in *Inetianbor*, the critical inquiry was "how important the term was to one or both of the parties at the time they entered into the agreement." *Inetianbor*, 768 F.3d at 1350. In analyzing the agreement, the court noted:

> "We can think of no other reasonable interpretation of the provision for arbitration 'by' the Tribe before an 'authorized representative' of the Tribe than one requiring some direct participation by the Tribe itself. This interpretation of the agreement is bolstered by a number of other references that clarify that Mr. Inetianbor and Western Sky envisioned that the Tribe would be involved in any dispute that arose under the contract. For example, the first paragraph of the agreement says that 'This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe,' and that Mr.

16

Inetianbor 'consent[s] to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court.'"

*Inetianbor*, 768 F.3d at 1353.

The court in *Parm* likewise found that references to CRST Nation were "pervasive" throughout the entire agreement, not just the arbitration provision. 835 F.3d at 1338. The courts correctly concluded that the selection of tribal authority was integral to the agreement, given the nature of the selected arbitration forum and the transactions' relation to that forum. No such analogous facts arise in JPay's selection of JAMS.

Kensu's reliance on *Flagg v. First Premier Bank*, 644 F. App'x 893 (11th Cir. 2016) is likewise misplaced. As discussed by Kensu, the decision in Flagg turned on the court's finding that "despite the fact that the NAF had stopped accepting consumer arbitration cases more than three years before Ms. Flagg applied for her payday loan, First Int'l continued to use arbitration agreements designating the NAF and made no provision for the appointment of an alternate arbitrator. This chronology suggests that the designation of the NAF was integral to First Int'l and counsels against a court stepping in to appoint a different arbitral forum." *Id*. at 896. Here, JPay first moved to enforce the arbitration provision in June of 2018, and the Court granted JPay's motion in March of 2019. (ECF Nos. 12, 27.) One month after the motion was granted, JAMS announced that it would no longer take new JPay arbitrations, but that it would continue to administer existing JPay arbitrations. *See*

17

Exhibit A.  In response, JPay has already amended the TOU to substitute AAA for JAMS.  The facts of *Flagg* have no relation to the facts before this court.

For the foregoing reasons, Kensu cannot establish that the selection of JAMS was anything more than an ancillary logistical concern, secondary to the paramount agreement to arbitrate.  Accordingly, the arbitration provision remains valid under 9 U.S.C. § 5, and JPay requests that this Court name a substitute arbitrator.

## **CONCLUSION**

For the above reasons, Defendant respectfully requests that Plaintiff's motion be dismissed, and the court appoint an arbitrator pursuant to 9 U.S.C. § 5.

Dated:  May 28, 2019

Respectfully submitted,

JPAY INC.

By:  */s/ Elizabeth Herrington*
MORGAN, LEWIS & BOCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF &
JEFFERS PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the foregoing Opposition to Plaintiff's Motion to Lift Stay of Proceedings and Rule on Validity of Arbitration Agreement was filed on May 28, 2019 with the Clerk of Court using the CM/ECF system.

*/s/ Elizabeth Herrington*

Elizabeth Herrington (IL#6244547)
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

*Attorney for Defendant*