# Exhibit B

KeyCite Yellow Flag - Negative Treatment

Disagreed With by Stewart v. GGNSC-Canonsburg, L.P., Pa.Super., November 4, 2010

2009 WL 4580739
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan.

Barry ADLER, on behalf of himself and all others similarly situated, Plaintiff,
v.
DELL INC., a corporation, Banctec, Inc., a corporation, Qualxserv, LLC, an entity, Dell Catalog Sales, L.P., an entity, Dell Products, L.P., an entity, Dell Marketing L.P., an entity, Dell USA L.P., an entity, and Does 1 through 10, Defendants.

No. 08–cv–13170.
|
Dec. 3, 2009.

**Attorneys and Law Firms**

Richard E. Segal, Segal Goldman, West Bloomfield, MI, Brian R. Strange, Gretchen A. Carpenter, Strange and Carpenter, Los Angeles, CA, for Plaintiff.

Anthony A. Agosta, Clark Hill, Detroit, MI, Paul W. Schlaud, Reeves & Brightwell, LLP, Austin, TX, for Defendants.

*OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO LIFT STAY*

GEORGE CARAM STEEH, District Judge.

**\*1** Plaintiff Barry Adler moves this court to lift the stay in this case on the grounds that the arbitration agreement between the parties is no longer enforceable. For the reasons set forth below, plaintiff's motion to lift the stay is DENIED.

**I. Factual and Procedural Background**

The case arises out of plaintiff's 2004 purchase of a Dell XPS computer. Adler asserts that Dell failed to disclose a first-year opt out option for at—home service, thereby violating various consumer protection laws. At issue is whether this dispute is covered by an arbitration agreement contained in the contract between the parties.

The Contract provides, as follows:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of this paragraph ("Dell"), arising from or relating to this Agreement, its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at www.arb-forum.com or via telephone at 1–800–474–2371). The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the

Adler v. Dell Inc., Not Reported in F.Supp.2d (2009)

parties and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF or at P.O. Box 50191, Minneapolis, MN 55405.

On December 18, 2008, the court granted Dell's motion to compel arbitration according to the terms of the Arbitration Agreement and to stay further proceedings pending the results of arbitration. On March 10, 2009, the court denied Adler's motion for certification of an immediate appeal. Based upon recent developments, in this motion, Adler explains that arbitration has become impossible because the National Arbitration Forum (the "NAF") no longer conducts consumer arbitrations. According to Adler, because the designation of NAF as arbitrator is integral to the agreement, the arbitration provision fails altogether, and he should now be permitted to litigate his claim in court. He asks the court to lift the stay and revoke the agreement to arbitrate because of impossibility of performance.

Dell acknowledges that NAF recently stopped accepting new consumer arbitrations but asserts that plaintiff caused this impossibility by deliberately failing to comply with the court's order to arbitrate after plaintiff's request for certification for immediate appeal was denied. Dell continues to seek enforcement of the arbitration agreement with the court appointment of an alternate arbitrator, pursuant to Section 5 of the Federal Arbitration Act. Alternatively, Dell requests a dismissal of the case for failure to prosecute, based upon Adler's refusal to arbitrate the case as earlier ordered by the court.

## II. Analysis

**\*2** This matter rests on interpreting the Arbitration Clause's provision that disagreements between the parties "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORM (NAF)." Adler suggests that the entire Arbitration Agreement is unenforceable because the requirement that the parties arbitrate before NAF is integral to the agreement and cannot be severed from it. This court disagrees.

Section 5 of the Federal Arbitration Act provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed ... or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein.

9 U.S.C. § 5. As a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above. *See Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1222 (11th Cir.2000).[1]

The exception to this rule occurs when "it is *clear* that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." *Id.* (quoting *McGuire, Cornwell & Blakey v. Grider,* 771 F.Supp. 319, 320 (1991) (emphasis added)). In such situations, the Court will not sever the failed term from the rest of the agreement and the entire arbitration provision fails. *Id.* "Whether the agreement to arbitrate is entire or severable turns on the parties' intent at the time of the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *Great Earth Cos. V. Simmons,* 288 F.3d 878, 890 (6th Cir.2002).

In this case, the language of the contract is ambiguous on the intent of the parties in designating NAF, to administer the arbitration. The clause, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)" may either refer to the parties' intent to arbitrate all disputes or to the intent of the parties to bring arbitration solely before NAF, or both. At every pass through these words, it is impossible to discern whether the parties intended to embrace arbitration as their exclusive and final recourse for disputes while identifying NAF as a secondary matter to administer the process, or whether they intended NAF arbitration only to be their exclusive and final recourse for

Adler v. Dell Inc., Not Reported in F.Supp.2d (2009)

disputes. Both interpretations have merit, but there is nothing in the language to indicate which is the intended interpretation.

**\*3** Two aspects of the agreement offer some support for the conclusion that the intent to arbitrate was paramount, and the designation of NAF secondary. First, the agreement requires NAF rules be used. This would appear to be mere surplusage, except in the case of a substitute arbitration forum, and Adler offered no reason to conclude that NAF rules cannot be applied by a substitute arbitrator. Second, the agreement specifically limits the arbitration process to the customer and Dell, which adds emphasis to the process agreed upon, as opposed to the designated forum.

Further, the agreement lacks any provision for a course of conduct in the event that NAF is unavailable or unwilling to arbitrate disputes between the parties. The lack of an alternative to NAF in the agreement may be taken as indicating a primary intent to arbitrate all disputes, or on the other hand, that the parties contemplated arbitration only if administered by NAF. This too can cut both ways and leaves the court guessing at the intent of the parties. In any event, the agreement falls far short of establishing the exception stated in *Brown* that arbitration will fail only if it is "clear" that the term in dispute, i.e. that the exclusive and final resolution of all disputes between the parties must be administered by NAF, is "as important a consideration as the agreement to arbitrate itself."

The surrounding circumstances are no more helpful than the language of the contract and the arbitration agreement in resolving this issue. Little can be gleaned from the surrounding circumstances as the details behind this agreement are few and far between. Although Dell drafted the agreement, apparently has employed other arbitrators in other disputes involving this contract language, and now continues to seek arbitration as the chosen process in this case, these facts fall short of settling the intent of the parties.

For his argument, Adler relies on the reasoning articulated in *Cairdeo v. Dell, Inc.,* 2009 WL 3485933 (W.D.Wash.). In that case, a Washington District Court addressed the same language at issue in this case. In contrast to this court's analysis, the *Cairdeo* court determined that the entire arbitration agreement was unenforceable because "the parties' selection of NAF as arbitrator is integral to the arbitration clause." *Id.* at \*4. The court found that several factors supported its decision, including: (1) that the language "clearly and unequivocally selects NAF as arbitrator;" (2) that the agreement requires that NAF apply its own rules; and (3) the agreement does not

provide an alternative arbitral forum. The *Cairdeo* court found that the language, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)" meant that the case would be arbitrated exclusively by the NAF. *Id.* at \*4. The *Cairdeo* court also referred to an Illinois state case where an Illinois appellate court found in a similar contract that the "selection of NAF was integral to the arbitration clause at issue and thus held that § 5 could not be used to appoint a substitute arbitrator." *Id.* At \*5 (citing *Carr v. Gateway, Inc.,* No. 5–07–0711 (Ill.App.Ct.2009).

**\*4** Dell distinguishes *Cairdeo* by pointing out that the enforceability of Dell's arbitration agreement in *Cairdeo* had not been resolved by the *Cairdeo* Court by the time that NAF stopped accepting new consumer claims, whereas the court in this case had determined that the arbitration agreement was enforceable months before the NAF stopped accepting new consumer claims. Dell also argues that the *Cairdeo* decision is factually and legally erroneous and states that it intends to appeal the decision. Dell argues that the *Cairdeo* decision improperly relies on *Carr v. Gateway,* which is distinguishable from *Cairdeo* and distinguishable from this case. Dell argues that the contract in *Cairdeo* provided for fees or penalties in the event a party brought a dispute in a forum other than NAF, which demonstrated that NAF was integral to the contract unlike in the case here. Finally, Dell responds by stating that the NAF is a red herring, because Dell has offered to arbitrate Adler's claim before the AAA or JAMS (or to litigate in small claims court).

This court disagrees with the reasoning of *Cairdeo* and its application of § 5 of the FAA. In reaching its decision, the *Cairdeo* court opined, "In general, the FAA provides that where the chosen arbitrator is unavailable, the court *may* appoint a substitute arbitrator." *Id.* at \*3 (emphasis added). That finding overlooks the actual, mandatory language of the statute in § 5. "... or in filling a vacancy, then upon the application of either party to the controversy the court *shall* designate and appoint an arbitrator ...." *Id.* (emphasis added). Further, the FAA omits any mention of parsing through the parties' intent. Congress envisioned a situation such as the one presented to this court in which the named arbitrator is no longer available. Either party may request that the court appoint a replacement, one with the "same force and effect as if he or they had been specifically named therein." The tone of the FAA certainly implies that Congress intended that arbitration remain the prevailing method of resolving disputes if one of the parties requests arbitration. Dell has done so in its arguments and briefs.

In short, this court finds more persuasive the reasoning of the 11 th Circuit in *Brown* in refusing to void the arbitration clause because the specified forum (also the NAF in that case) was unavailable. *Brown,* 211 F.3d at 1222.

As set forth below, the decision in *Brown* is more consistent with both Sixth Circuit and Supreme Court authority than the analysis in *Cairdeo.*

In *Morrison v. Circuit City,* 317 F.3d 346 (6th Cir.2003), the Sixth Circuit stated that any doubts regarding arbitrability should be resolved in favor of arbitration. *Morrison,* 317 F.3d at 675 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). It is difficult to justify the abrogation of an entire arbitration agreement, especially when Congress has provided in the Federal Arbitration Act an easy remedy for an arbitrator's unavailability. *See McMullen v. Meijer, Inc.,* 166 Fed. Appx. 164, 169 (6th Cir.2006). In *McMullen,* the Sixth Circuit affirmed the trial court's decision to require arbitration even though extensive arbitrator selection provisions were invalidated. The Sixth Circuit wrote that an additional consideration in whether to sever provisions from an arbitration agreement is the preference indicated by the courts to favor arbitration over litigation. Although *McMullen* ruled in an employment dispute, the same preference applies in situations such as these where the parties agree to take commercial disputes to arbitration. *See also Raddum v. KPMG LLP,* 457 F.3d 1054, 1060

(9th Cir.2006) (courts should be reluctant to dismiss arbitration agreements unless there is "evidence that the naming of the [arbitrator] was so central to the arbitration agreement that the unavailability of that arbitrator brought the agreement to an end."). Terminating the agreement to arbitrate could have been accomplished simply by so stating in the agreement. It was not. Consistent with this authority, the court finds that the language of the contract clearly indicates that the parties expected their disputes to be resolved by arbitration. The agreement does not allow for litigation in the event NAF is unavailable to act. The unavailability of NAF to hear the arbitration should not frustrate the overriding intent to arbitrate.

**\*5** WHEREFORE, IT IS HEREBY ORDERED that plaintiff's motion to lift the stay in this case is DENIED. The court instructs the parties to confer and agree on an alternate arbitrator who will apply the rules of NAF under its Code of Procedure, if possible. If the parties fail to come to an agreement within 30 days from the date of entry of this order, either defendants or plaintiff may submit an application to this court identifying proposed arbitrator(s) for appointment. In the event the parties fail to agree on an alternate arbitrator and no application is presented to this court for appointment by February 1, 2010, this matter shall be dismissed without prejudice.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 4580739

Footnotes

1    Michigan provides for a similar resolution. MCL § 600.5015 states "[i]f the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed .... if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint 1 or more arbitrators."

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Board of Trustees of Sheet Metal Workers' Local Union..., Not Reported in...

**H** KeyCite history available

2013 WL 5874609
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

BOARD OF TRUSTEES OF the SHEET METAL
WORKERS' LOCAL UNION NO. 80 INSURANCE
TRUST FUND, Plaintiff,
v.
BLUE CROSS AND BLUE SHIELD OF
MICHIGAN, Defendant.

Civil Case No. 2:13–cv–10415.
|
Oct. 31, 2013.

**Attorneys and Law Firms**

Ronald S. Lederman, Gerard J. Andree, Sullivan, Ward, Southfield, MI, for Plaintiff.

G. Christopher Bernard, Bodman, Ann Arbor, MI, Rebecca D. O'Reilly, Bodman, Detroit, MI, for Defendant.

*OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS AND/OR FOR RECONSIDERATION*

PATRICK J. DUGGAN, District Judge.

**\*1** On August 12, 2013, this Court issued an Opinion and Order granting a motion filed by Defendant Blue Cross and Blue Shield of Michigan ("BCBSM") seeking to stay this litigation pending the Sixth Circuit Court of Appeals' decision in a related case: *Hi–Lex Controls, Inc. v. Blue Cross & Blue Shield of Michigan,* No. 11–12557, 2013 WL 2285453 (E.D.Mich. May 23, 2013), *appeal docketed,* Nos. 13–1773 and 13–1859 (6th Cir. June 25, 2013). Presently before the Court is Plaintiff's "Motion to Lift Stay of Proceedings and/or for Reconsideration," filed pursuant to Eastern District of Michigan Local Rule 7.1(h) on August 26, 2013. In the light of Plaintiff's

framing of its motion as seeking something in addition to reconsideration, the Court issued a notice on September 24, 2013, informing the parties that it would allow BCBSM to file a response to the motion if it chose to do so. On October 8, 2013, BCBSM filed a response brief.

Rule 7 of the Local Rules for the Eastern District of Michigan advises that "[t]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). A motion for reconsideration will be granted only where the movant "demonstrate[s] a palpable defect by which the court and the parties ... have been misled" and "show[s] that correcting the defect will result in a different disposition of the case." *Id.* A defect is palpable when it is "obvious, clear, unmistakable, manifest, or plain." *Chrysler Realty Co., LLC v. Design Forum Architects, Inc.,* 544 F.Supp.2d 609, 618 (E.D.Mich.2008).

Plaintiff fails to demonstrate a palpable defect with respect to the Court's August 12 decision. Plaintiff contends that the Court did not expressly consider the factors relevant to determining whether a stay should be entered. The Court, however, did consider those factors even if it did not discuss them at length. Plaintiff further contends that the Sixth Circuit's recent decision in *Pipefitters 636 Insurance Fund v. Blue Cross & Blue Shield of Michigan,* 722 F.3d 861, 2013 WL 3746217 (6th Cir. July 18, 2013), governs the *Hi–Lex* appeal and the current action. This is an argument, however, that Plaintiff raised in the initial motion to stay which this Court rejected.

Alternatively, Plaintiff asks the Court to allow this litigation to at least proceed with the discovery phase pending the *Hi–Lex* appeal. Plaintiff contends that the Honorable David M. Lawson recently issued a decision in a related case "recogniz[ing] the appropriateness of allowing discovery prior to the completion of the [*Hi–Lex* ] appeal ..., and directed the parties to submit a Discovery Plan for the court's consideration." (Pl.'s Br. in Supp. of Mot. at 6–7.) Judge Lawson did direct the parties to submit a discovery plan in the case before him: Minute Entry, *Dykema Excavators, Inc. v. Dykema Excavators, Inc. et al. v. Blue Cross & Blue Shield of Michigan,* No. 13–12151 (E.D.Mich. Aug. 1, 2013). However, this was several months *before* he granted BCBSM's motion to stay the matter pending the *Hi–Lex* appeal and administratively closed the case. Order Granting Mot. for Stay, *Dykema Excavators, Inc.,* 13–12151 (E.D.Mich. Oct. 29, 2013) (ECF No. 15). This is consistent with what every judge has done in response to BCBSM's motions to

stay pending the *Hi–Lex* appeal in the more than twenty related cases filed in this District.

**\*2** For the above reasons, the Court finds no palpable defect with respect to its August 12, 2013 decision and no reason to lift the stay to allow the parties to engage in discovery.

Accordingly,

**IT IS ORDERED,** that Plaintiff's Motion to Lift Stay of Proceedings and/or for Reconsideration is **DENIED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5874609

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

     *Plaintiff*,

                         CASE NO. 2:18-CV-11086

                         DISTRICT JUDGE SEAN F. COX

v.                       MAGISTRATE JUDGE PATRICIA T. MORRIS

JPAY, INC.,

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION (R.19)

### I. INTRODUCTION

Before the Court is Defendant's motion to compel arbitration. (R.19.) Plaintiff's suit is based on a contractual relationship between Plaintiff, as a prisoner, and Defendant, as the exclusive provider of e-communication for prisoners, including money transfers, e-mail, e-books, video content, games, video visitation services, MP3 players, electronic tablets, content, products, accessories, and other services. Plaintiff's amended complaint (R.18) avers the following claims: (1) declaratory relief under 28 U.S.C. § 2201; (2) breach of contract; (3) violation of the Michigan Consumer Protection Act, MCL § 445.901 *et seq.*; (4) violation of the Fourth and Fourteenth Amendment right to be free from unreasonable seizure under 42 U.S.C. § 1983; (5) breach of duty of good faith and fair dealing; (6) negligent misrepresentation; (7) unjust enrichment; (8) fraud/intentional misrepresentation; (9) breach of express warranty; (10) breach of implied warranty. Plaintiff prays for relief including the court finding that this action satisfies the prerequisites for maintenance as a class action, and seeking restitution, injunctive

1

relief, costs and attorney fees, and any other relief the court deems appropriate. (R.18 at Page ID.768.)

On July 10, 2018, Defendant filed the instant motion to compel arbitration (R.19), Plaintiff responded (R.21), and Defendant replied. (R.21.) The motions have been fully briefed and are ready for Report & Recommendation without oral argument. I recommend GRANTING Defendant's motion, compelling arbitration, and dismissing the case without prejudice.

## II. **ANALYSIS**

### A. **Arguments of the Parties**

Defendant contends that the arbitration agreement contained in the terms of use agreement (TOU) with Plaintiff covers the disputes raised in the instant complaint and compels dismissal in favor of arbitration. (R.19.) Plaintiff argues that he is a third-party beneficiary of the contract between the Michigan Department of Corrections (MDOC) and Defendant, that this contract does not have an arbitration clause, and thus, Plaintiff is not bound by the arbitration clause in the TOU. (R.21.) Plaintiff further argues that even if the TOU agreement is the governing document, the arbitration agreement contained therein is an unconscionable adhesion contract, and that Defendant has failed to come forward with any evidence that Plaintiff Kensu agreed to the terms of the arbitration agreement such that a question of fact exists as to whether there is a valid arbitration agreement in the TOU. (*Id.*) Defendant replies that Plaintiff's claims are subject to arbitration, that the TOU is not unconscionable, and that there is sufficient evidence that Plaintiff accepted the arbitration agreement. (R.22.)

### B. **Relevant Portions of the TOUs**

In the instant case, the arbitration clause in the TOUs for 2016, 2017, and 2018 provided, in paragraph 5(a) for 2016 and paragraph 8(a) for 2017 and 2018:

Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules") . . . . Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(R.19, Ex. 2, at PageID.951, PageID.960-961, and PageID.971-972.) The 2017 and 2018 versions both added a sentence stating, "**You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration.**" (R.19 at PageID.961 and Page ID.972) (emphasis in original).

All three agreements also contain waivers of the right to participate in a class action lawsuit or class arbitration. The 2016 language stated as follows:

ALL DISPUTES, REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT . . . YOU AND JPAY AGREE THAT THE ARBITRATORS HAVE NO AUTHORITY TO ORDER CONSOLIDATION OR CLASS ARBITRATION OR TO CONDUCT CLASS-WIDE ARBITRATION PROCEEDINGS, AND ARE ONLY AUTHORIZED TO RESOLVE THE INDIVIDUAL DISPUTES BETWEEN YOU AND JPAY ALONE. FURTHER, YOU WILL NOT HAVE THE RIGHT TO CONSOLIDATION OR JOINDER OR INDIVIDUAL DISPUTES OR ARBITRATIONS, TO HAVE ANY DISPUTE ARBITRATED ON A CLASS ACTION BASIS, OR TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.

THE VALIDITY, EFFECT, AND ENFORCEABILITY OF THE FOREGOING WAIVER OF CLASS ACTION LAWSUIT AND CLASS-WIDE ARBITRATION, IF CHALLENGED, ARE TO BE DETERMINED SOLELY AND EXCLUSIVELY BY FEDERAL DISTRICT COURT LOCATED IN THE SOUTHERN DISTRICT OF FLORIDA OR FLORIDA STATE COURT IN MIAMI-DADE COUNTY AND NOT BY JAMS OR ANY ARBITRATOR.

(R.19 at PageID.951-952.)

3

The 2017 and 2018 language differed slightly:

> ALL DISPUTES, REGARDLESS OF THE DATE OF ACCRUAL OF SUCH
> DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU
> ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION
> LAWSUIT . . . . FURTHER, YOU ARE WAIVING, AND WILL NOT HAVE,
> THE RIGHT TO CONSOLIDATION OR JOINDER OF INDIVIDUAL
> DISPUTES OR ARBITRATIONS, TO HAVE ANY DISPUTE ARBITRATED
> ON A CLASS ACTION BASIS, OR TO PARTICIPATE IN A
> REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS
> PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. FURTHER,
> YOU AND JPAY AGREE THAT THE ARBITRATORS HAVE NO
> AUTHORITY TO ORDER CONSOLIDATION OR CLASS ARBITRATION
> OR TO CONDUCT ANY FORM OF REPRESENTATIVE OR CLASS-WIDE
> ARBITRATION PROCEEDINGS, AND ARE ONLY AUTHORIZED TO
> RESOLVE THE INDIVIDUAL DISPUTES BETWEEN YOU AND JPAY
> ALONE.

> THE SCOPE, VALIDITY, EFFECT, AND ENFORCEABILITY OF THE
> FOREGOING WAIVER OF CLASS ACTION LAWSUIT AND
> REPRESENTATIVE OR CLASS-WIDE ARBITRATION ARE TO BE
> DETERMINED SOLELY AND EXCLUSIVELY BY THE FEDERAL
> DISTRICT COURT LOCATED IN THE SOUTHERN DISTRICT OF FLORIDA
> OR FLORIDA STATE COURT IN MIAMI-DADE COUNTY AND NOT BY
> JAMS OR ANY ARBITRATOR. IF A LAWSUIT IS FILED TO ENFORCE
> THESE WAIVERS THE PARTIES AGREE THAT THE ARBITRATION
> SHALL BE IMMEDIATELY STAYED, BY AGREEMENT OR COURT
> ORDER, UNTIL THE COURT CASE IS RESOLVED AND ALL APPELLATE
> REVIEW IS EXHAUSTED, THE COST OF PROCEEDINGS UNDER THIS
> SECTION, INCLUDING, WITHOUT LIMITATION, EACH PARTY'S
> ATTORNEY FEES AND COSTS, SHALL BE BORNE BY THE
> UNSUCCESSFUL PARTY.

(R.19 at PageID.961-962, PageID.972-973.)

### C. Applicable standards

"The Federal Arbitration Act codifies a national policy in favor of arbitrating claims when parties contract to settle disputes by arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 370 (6th Cir. 2014). The pertinent question is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the

agreement. *Id*. at 371. Any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Stated another way, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alalbama v. Randolph*, 531 U.S. 79, 91 (2000). "[A]n enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012). The burden is on the party opposing arbitration to show that the agreement is not enforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Since arbitration agreements are contracts, federal courts generally apply state law when determining whether the contract was properly formed and the enforceability of the arbitration agreement. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). Once those thresholds are crossed, substantive federal arbitration law applies. In addition, here, the arbitration agreements state that "[t]he arbitration provisions set forth herein, and any arbitration conducted thereunder, shall be governed exclusively by the Federal Arbitration Act, Title 9 United States Code, to the exclusion of any state or municipal law of arbitration." (R.19 at PageID.950, PageID.961, Page ID.972.)

The Sixth Circuit uses a four factored test to determine if a case should be dismissed and arbitration compelled: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended for those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

### 1. Whether the parties agreed to arbitrate

As shown above, the relevant TOUs each contained a paragraph requiring that "[a]ny dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and through binding arbitration . . . . Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties…" (R.19, Ex. 2 at PageID.951, PageID.960-961, and PageID.971-972.)

In Michigan, "a valid contract requires five elements: (1) parties competent to enter into a contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Bank of America, NA v. First America Title Ins. Co.*, 499 Mich. 74, 101 (Mich. 2016). Mutuality of agreement means that there is mutual assent, i.e., a meeting of the minds, as to all of the essential terms of the contract. *Sanchez v. Eagle Alloy, Inc.*, 254 Mich. App. 651, 665 (Mich. App. 2003). "A meeting of the minds can be found from performance and acquiescence in that performance." *Id*. at 666.

Plaintiff does not contest that the TOUs are valid contracts, but instead argues that there is at least a genuine issue of material fact as to whether Plaintiff agreed to the arbitration portion of the TOU. (R. 21 at PageID.1080-1082.) Plaintiff contends that Defendant's proffered affidavit by its paralegal, Ms. Sode—which discussed JPay's system and Plaintiff's account (R.19, ex. 1)—is not admissible because she does not "state that she has personal knowledge concerning Kensu" and that "Defendant has provided no factual records to support the affiant's contentions regarding Plaintiff's supposed agreement." (R.21 at PageID.1081.) Plaintiff does not dispute that he made multiple purchases of electronic communications services at JPay kiosks under the TOUs. I therefore find that mutuality of agreement is established by his performance and

6

acquiescence in that performance. *Sanchez*, 254 Mich. App. at 665-666; *see also, Carey v. Uber Technologies, Inc.,* No. 1:16-cv-1058, 2017 WL 1133936, at *4 (N.D. Ohio March 27, 2017) (clicking through screens to sign up to use a product, even where terms are contained in a hyperlink, is an acceptable method to manifest assent to the terms of an agreement even if the user failed to actually review the terms).[1]

In *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002), the Sixth Circuit declared that "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole." "[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Therefore, "the party opposing . . . arbitration must state a 'well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement,* that would provide grounds for the revocation of the agreement to arbitrate.'" *Great Earth*, 288 F.3d at 890, quoting *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1278 (6th Cir. 1990) (emphasis in original).

Here, Plaintiff contends that the TOUs are unenforceable adhesion contracts because "[t]here is no alternative to JPay available to prisoners within the MDOC . . . prisoners must use JPay's services or do without." (R.21 at PageID.1070.) Plaintiff does not contend that there was any fraud in the inducement to enter into the TOUs. Plaintiff's claims regarding the TOUs focus on the monopolistic control over the market/prices and subsequent breaches of contract and

---

[1] In addition, since both parties were bound to do something under the agreement, Defendant to provide services and Plaintiff to pay for such services, I further find that consideration and mutuality of obligation existed. There is no allegation that either of the parties was incompetent or that the contract concerns anything but proper subject matter. Accordingly, even if the validity of the contract was fully challenged, I suggest the TOUs are valid contracts.

warranties along with failure of customer service on the products sold rather than any actual fraud in the inducement to enter into the TOUs. (R.18.)[2]

This unconscionability argument based on the take it or go without e-communication in prison aspect of the TOUs "unquestionably go[es] to the validity of the [] agreement as a whole, rather than the arbitration provisions specifically." *McGrew v. VCG Holding Corp., et al*, 244 F. Supp.3d 580, 592 (W.D. Ky. 2017). Accordingly, this claim should be addressed by the arbitrator rather than the court. *Id.*; *accord Ewell v. Heath*, No. 17-cv-11876, 2018 WL 460073, at *2-3 (E.D. Mich. Jan. 18, 2018) (finding arbitration agreement valid where the plaintiff had not argued fraud in the inducement to enter into the arbitration provision of the contract, leaving "arguments as to the validity of the contract [as a whole] to be considered by the arbitrator"); *Doss v. Nordstrom, Inc.*, No. 3:15-CV-00904, 2016 WL 4272334, at *4 (M.D. Tenn. Aug. 15, 2016) (argument that agreement is an "unconscionable contract of adhesion, thereby rendering it unenforceable" that did not include an argument that there was any fraud in the inducement to enter into the arbitration provision of the contract left "any question of a breach of contract . . . for arbitration").

Even if Plaintiff confined his unconscionability argument to the arbitration clause alone, the result would be the same. *Big City Small World Bakery Café, LLC v. Francis David Corp.*, 265 F. Supp. 3d 750, 762-64 (E.D. Mich. 2017) (rejecting claim that agreement was adhesive because defendant was in a superior bargaining position and offered the contract on a 'take it or leave it basis" under Ohio law); *see also Stevens Bratton v. Trugreen, Inc.*, 675 F. App'x 563,

---

[2] Plaintiff refers to the contract between Defendant and the MDOC in the misrepresentation counts and complains that the products, content, and services offered by Defendant were falsely advertised and that Plaintiff, as third-party SSbeneficiary to that contract, was damaged. (R. 18 at PageID.759-762.) However, these arguments do not pertain to the TOUs and their arbitration clauses which are the subject here.

571 (2017) (arbitration provision is not overbroad where it applies to any claim, dispute or controversy); *West v. Legacy Motors, Inc.*, No. 16-12101, 2016 WL 6476458, at *2 (E.D. Mich. Nov. 2, 2016) (arbitration clause is not substantively unconscionable simply because the plaintiff got a bad deal).

Finally, Plaintiff also contends that the TOUs should not be the governing documents and that the contract between MDOC and JPay should govern because Plaintiff is a third-party beneficiary to that contract and that contract does not have an arbitration clause. However, Plaintiff has cited no case law, and the court is aware of none, that would favor granting governance to a contract based on a third-part beneficiary theory over a contract between the actual parties to the cause of action which forms the basis of Plaintiff's claim for breach of contract.[3] Accordingly, this argument does not undermine the court's analysis above.[4]

---

[3] The court is aware of case law concluding that third-party beneficiaries may be compelled to arbitrate claims within the scope of the arbitration provision in the contract that benefits them even though they are non-signatories. *See., e.g.*, *Tolbert v. Coast to Coast Dealer Services, Inc.*, 789 F. Supp. 2d 811, 817 (N.D. Ohio 2011) ("Courts have held that third party beneficiaries of contracts agreed upon by other parties are bound to the arbitration clauses in those contracts, especially when the third party beneficiary is suing for breach of contract."); *Van Pamel v. TRW Vehicle Safety Systems, Inc.*, No. 12-cv-10453, 2012 WL 3134224, at *3-4 (E.D. Mich. Aug. 1, 2012) (when non-signatory seeks a direct benefit from a contract, he cannot disavow the arbitration provision in that contract); *American Family Life Assur. Co. of Columbus v. Biles*, No. 3:10CV667, 2011 WL 4014463, at *10 (S.D. Miss. Sept. 8, 2011). However, research has not revealed a successful attempt of a signatory to an arbitration agreement to avoid arbitration by diverting focus to a contract wherein the party is a third-party beneficiary.

[4] I also note that as to Plaintiff's reference to representing other similarly situated individuals, *i.e.*, a purported yet uncertified class, the TOUs also contain three agreements with waivers of the right to participate in a class action lawsuit or class arbitration. (R.19 at PageID.951-952, PageID.961-962, PageID.972-973.) Such waivers are enforceable despite arguments that such waivers are unconscionable under Michigan law or that "waiver of class arbitration fundamentally results in the exculpation of defendants since individual claimants will not pursue small dollar claims." *Law Offices of David Flint, P.C. v. Bank of America, N.A.*, No. 15-13006, 2016 WL 144505, at * 8 (E.D. Mich. Apr. 13, 2016), *citing AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 348-51 (2011), and *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013); *accord Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018).

9

## 2. Scope of the agreement to arbitrate

The scope of the arbitration agreements are vast, covering "[a]ny dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute")[.]" (R.19, Ex. 2 at PageID.951, PageID.960, and PageID.971.) Accordingly, Plaintiff's claims for declaratory relief under 28 U.S.C. § 2201, breach of contract, violation of the Michigan Consumer Protection Act, MCL § 445.901 *et seq.*, violation of the Fourth and Fourteenth Amendment right to be free from unreasonable seizure under 42 U.S.C. § 1983, breach of duty of good faith and fair dealing, negligent misrepresentation, unjust enrichment, fraud/intentional misrepresentation, breach of express warranty, and breach of implied warranty, would all be included under the broad scope of the arbitration agreement.

### 3. If federal statutory claims are involved, whether Congress intended for those claims to be arbitrable

Since there are no federal statutory claims involved, this factor cannot weigh against arbitration.

### 4. If only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration

As to the fourth and final factor, I suggest that all the claims are subject to arbitration such that a stay would be inappropriate. Under the FAA, courts may stay proceedings until arbitration has been held, 9 U.S.C. §3; nonetheless, where all of a party's claims are subject to arbitration, courts may properly dismiss the complaint rather than stay proceedings. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Morrissette v. Pinnacle Asset Group, LLC*, No. 14-10259, 2014 WL 7792548, at *3 (E.D. Mich. Nov. 5, 2014).

I therefore suggest that since all of Plaintiff's claims are within the scope of the arbitration agreement, their resolution should be in the arbitration forum rather than this court.

10

### III. **CONCLUSION**

For the reasons above, I recommend that Defendant's renewed motion to compel arbitration (R.19) be granted and that the case be dismissed without prejudice.

### IV. **REVIEW**

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule

without awaiting the response.

Date: October 22, 2018          **S/ PATRICIA T. MORRIS**
                                       Patricia T. Morris
                                       United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: October 22, 2018          By s/Kristen Castaneda
                                       Case Manager

2019 WL 1109948
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan,
Southern Division.

Temujin KENSU, Plaintiff,
v.
JPAY, INC., Defendant.

Case No. 18-11086
|
Signed 03/11/2019

**Attorneys and Law Firms**

Keith L. Altman, Excolo Law PLLC, Southfield, MI, for Plaintiff.

Benjamin W. Jeffers, Hickey Hauck Bishoff & Jeffers PLLC, Detroit, MI, Elizabeth B. Herrington, Tedd M. Warden, Zachary R. Lazar, Morgan Lewis & Bockius, LLP, Chicago, IL, for Defendant.

**ORDER ADOPTING JUDGE MORRIS'S OCTOBER 22, 2018 REPORT AND RECOMMENDATION (ECF No. 23) AND STAYING THIS CASE PENDING ARBITRATION**

Sean F. Cox, United States District Judge

**\*1** On June 26, 2018, Plaintiff Temujin Kensu filed his amended complaint in this putative class action against JPay, Inc., the exclusive provider of e-communications and e-entertainment for the Michigan Department of Corrections ("MDOC"). Kensu, a prisoner, seeks to represent all similarly situated prisoners who have "purchased products, contents, and services from [JPay], represented by [JPay] to be of a different kind, quality, and fundamental model than the product content or service actually was." (ECF No. 18, PageID 697).

Kensu's amended complaint includes ten counts: (1) declaratory relief under 28 U.S.C. § 2201; (2) breach of contract; (3) violation of the Michigan Consumer Protection Act, MCL § 445.901 *et seq.*; (4) violation of the Fourth and Fourteenth Amendment right to be free from unreasonable seizure under 42 U.S.C. § 1983; (5)

breach of the duty of good faith and fair dealing; (6) negligent misrepresentation; (7) unjust enrichment; (8) fraud/intentional misrepresentation; (9) breach of express warranty; (10) breach of implied warranty. Kensu seeks restitution, injunctive relief, costs and attorney fees, and any other relief the court deems appropriate.

The Court referred all pre-trial matters to Magistrate Judge Patricia T. Morris. (ECF No. 7). On July 10, 2018, JPay filed a motion to compel arbitration. (ECF No. 19). On October 22, 2018, Judge Morris issued a Report and Recommendation ("R&R"), wherein she recommended that the Court grant JPay's motion to compel arbitration. (ECF No. 23).

Kensu filed timely objections to Judge Morris's R&R. (ECF No. 24). JPay responded. (ECF No. 25). The Court will review Kensu's objections *de novo.* Fed. R. Civ. P. 72(b)(3).

First, Kensu objects to Judge Morris's R&R because she failed to consider that this case cannot be arbitrated by JAMS, the arbitrator specified in the agreement. Kensu argues that, because "JAMS ... will find that the [agreement's] terms fail to meet [its] minimum consumer standards," JAMS will refuse to arbitrate this case. Kensu further contends that, because JAMS's participation is "an integral part" of the agreement, its absence precludes enforcement. (ECF No. 24, PageID 1124-1128).

Kensu is correct that Judge Morris did not address this argument. But this omission was likely for good reason: the Court should not—and will not—speculate on how a private entity *might* interpret and apply its own internal standards. Further, if JAMS does decline to arbitrate this case, the Federal Arbitration Act already provides for the appropriate path forward. *See* 9 U.S.C. § 5.[1] At that time, Kensu's argument that JAMS's participation is necessary might be appropriate. Until then, it is not. The Court overrules this objection.

**\*2** In Kensu's second objection, he argues that Judge Morris incorrectly concluded that (1) his claims attacked the validity of JPay's Terms of Use ("TOU") as a whole rather than only the arbitration agreement, and (2) he was required to plead fraud in the inducement.

"[I]n deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole," *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002) ("*Great Earth*"), because

Kensu v. JPay, Inc., Slip Copy (2019)

"attacks on an entire contract's validity, as distinct from attacks on the arbitration clause alone, are within the arbitrator's ken." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Arbitration agreements need not be enforced when "grounds ... exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "agreements to arbitrate [may] be invalidated by 'generally applicable contract defenses, such as ... unconscionability.' " *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) )

Here, Kensu argues that "[t]he JPay Contract is the definition of an oppressive adhesion contract" because it is procedurally and substantively unconscionable. Judge Morris concluded that Kensu's "unconscionability argument based on the take it or go without e-communication in prison aspect of the TOUs 'unquestionably go[es] to the validity of the [ ] agreement as a whole, rather than the arbitration provisions specifically.' " (ECF No. 23, PageID 1107) (citing *McGrew v. VCG Holding Corp.*, *et al.*, 244 F.Supp.3d 580, 592 (W.D. Ky. 2017) ).

Although Kensu attempts to limit his unconscionability argument to the arbitration agreement, the Court agrees with Judge Morris that this argument goes to the validity of the contract as a whole. If Kensu's acceptance of the arbitration agreement is unconscionable, then so is his acceptance of the TOUs, and vice versa. Kensu's unconscionability argument should be considered by the arbitrator, not the Court.

Further, Kensu mischaracterizes the R&R by arguing that Judge Morris concluded that the Sixth Circuit's decision in *Great Earth* required him to plead fraud in the inducement. Although Judge Morris cited language in *Great Earth* that references fraud in the inducement, and noted that Kensu "does not contend that there was any fraud in the inducement to enter into the TOU," she then addressed his unconscionability argument.[2] (ECF No. 23, PageID 1106-1107). This suggests that Judge Morris did not conclude that Kensu *must* plead fraud in the inducement. Rather, by addressing Kensu's argument, Judge Morris apparently concluded that—under the right circumstances—unconscionability could invalidate an arbitration agreement. The Court agrees. *See Casarotto*, 517 U.S. at 687. For these reasons, the Court overrules Kensu's second objection.

In his third objection, Kensu attempts to sidestep the arbitration agreement by arguing that his suit can proceed because he is a third-party beneficiary of the contract between the MDOC and JPay, which does not have an

arbitration agreement. Kensu argues that "there are two parrallel contracts governing Defendant's relationship with the MDOC. One contract between the MDOC and Defendant to provide services to the prison population, and contract(s) Plaintiff(s) entered into with Defendant in order to access said services." (ECF No. 24, PageID 1138).

**\*3** This argument misstates the relationships between Kensu, JPay, and the MDOC. The contracts are not parallel; one is parasitic of the other. The first creates a relationship between JPay and MDOC, and the second creates a relationship between JPAY and the prisoners who use its services.[3] The second cannot exist without the first and Kensu's access to either flows through the TOUs. Further, all of Kensu's claims arise out of or relate to his use of JPay and, therefore, fall within the TOUs's arbitration agreements. The Court overrules this objection.

In this fourth objection, Kensu argues that, under 9 U.S.C. § 4, he is entitled to a jury trial on the issue of whether he entered into a valid arbitration agreement. "[I]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009).

JPay provided an affidavit from its paralegal, Atinuke Sode, who reviewed Kensu's records.[4] Sode swears that Kensu made purchases through JPay after the implementation of each new TOU, and that he was required to accept the TOUs before making such purchases. Kensu does not deny that he accepted the TOUs or provide any competent evidence in response to Sode's affidavit. Thus, the Court concludes that Kensu has failed to show that there is a genuine issue of material fact as to whether he entered a valid arbitration agreement.

For these reasons, the Court **OVERRULES** Plaintiff Temujin Kensu's objections and **ADOPTS** Judge Morris's October 22, 2018 Report and Recommendation. (ECF No. 23).

**IT IS ORDERED** that Defendant JPay, Inc.'s motion to compel arbitration (ECF No. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **STAYED** until the conclusion of any arbitration.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction for the purposes of the Federal Arbitration

Kensu v. JPay, Inc., Slip Copy (2019)

Act, 9 U.S.C. §§ 1-16.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2019 WL 1109948

Footnotes

1    "If in the agreement provision be made for a method of naming or appointing an arbitrator" and "if for any ... reason there shall be a lapse in the naming of an arbitrator ... then upon application of either party ... the court shall designate and appoint an arbitrator ... who shall act under said agreement with the same force and effect as if he or they had been specifically named therein."

2    In his objections, Kensu appears to claim that Judge Morris's application of *Great Earth* also ignored his defense of duress. However, Kensu did not articulate an independent duress argument in his response to JPay's motion.

3    This structure distinguishes this case from those cited by Kensu. *See Collins v. Citrus Nat'l Bank*, 641 So.2d 458, 459 (Fla. Dist. Ct. App. 1994) ("where two or more documents are executed by the *same parties* ... and concern the *same subject matter* ... they will be read and construed together.") (emphasis added); *Lee v. All Florida Const. Co.*, 662 So.2d 365 (Fla. Dist. Ct. App. 1995) (concerning two contracts, made by the same parties, for two separate construction projects)

4    Kensu seeks to invalidate Sode's affidavit because she does not state that she has personal knowledge concerning Kensu. Instead, Sode states, "I have reviewed Plaintiff Temujin Kensu's customer records. The following information is based on my review of these records." Sode also states that this information is correct to the "best of [her] knowledge." Despite the lack of a specific statement saying so, the Court is satisfied that the information in the affidavit is based on Sode's personal knowledge. Kensu also challenges the affidavit under Fed. R. Evid. 1002 because JPay did not attach the reviewed records. However, Rule 1002 does not "require production of a document simply because the document contains facts that are also testified to by a witness." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994).

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

West v. Legacy Motors, Inc., Not Reported in F.Supp.3d (2016)

H KeyCite history available

2016 WL 6476458
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

Andre D. West, Plaintiff,
v.
Legacy Motors, Inc., et. al., Defendants.

Case No. 16-12101
|
Signed 11/02/2016

**Attorneys and Law Firms**

Andre D. West, Redford, MI, pro se.

Amer S. Hakim, Hakim and Toma, P.C., Warren, MI, Stephen W. King, King & Murray PLLC, Birmingham, MI, for Defendants.

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND DISMISS**

ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE

**\*1** This matter arises from the circumstances surrounding the sale of a vehicle by Defendant Legacy Motors Inc. to pro se Plaintiff Andre West, with financing provided by Defendant Credit Acceptance Corp. (Dkt. # 1.) Plaintiff alleges violations of the Truth in Lending Act, 15 U.S.C. § 1638(b), the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, and common-law fraud. (*Id.*) Each Defendant has filed a Motion to Compel Arbitration and Dismiss under the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., citing the written arbitration agreement signed by Plaintiff. (Dkt. ## 11, 12.) Plaintiff argues that the arbitration clause is unconscionable. (Dkt. ## 1, 14.) After reviewing the motions and Plaintiff's Response, filed October 20, 2016 (Dkt. # 14), the court concludes that further briefing and a hearing are unnecessary. *See* E.D. LR 7.1(f)(2). For the reasons that follow, the court will

grant Defendants' motions.

**I. BACKGROUND**

The following facts are undisputed unless otherwise noted. Plaintiff entered into a "retail installment contract" with Legacy Motors to purchase a 2006 Cadillac in June of 2015. (Dkt. # 12-1, Pg. ID 113.) Legacy immediately assigned its interests in the contract to Credit Acceptance. (*Id.* at Pg. ID 116.) The written contract contained a page-long arbitration clause. (*Id.* at Pg. ID 117.) On the first page, two provisions refer to the arbitration clause, reading:

> **Arbitration Notice:** PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMAITON REGARDING THE **AGREEMENT TO ARBITRATE** CONTAINED IN THIS CONTRACT.

> **ADDITIONAL TERMS AND CONDITIONS:** THE CONDITIONAL TERMS AND CONDITIONS, INCLUDING THE AGREEMENT TO ARBITRATE SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

(*Id.* at Pg. ID 113 (emphasis in original).) The arbitration clause, on the fourth page of the contract, provides:

> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under the contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on [sic] tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies....

> If You or We elect to arbitrate a Dispute, neither You

West v. Legacy Motors, Inc., Not Reported in F.Supp.3d (2016)

nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute....

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

**\*2** (*Id.* at Pg. ID 117.) Plaintiff also had the right to reject the arbitration clause without affecting the balance of the agreement, which he did not do. (*Id.*)

## II. DISCUSSION

The FAA states that every written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The act requires federal courts to stay an action when the issue in the proceeding is referable to arbitration and to compel arbitration when one party fails or refuses to comply with the provisions of an enforceable agreement. *See* 9 U.S.C. §§ 3, 4; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003).

The Supreme Court has described the FAA as manifesting "a liberal federal policy favoring arbitration agreements" which "requires [the courts] to rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (citations omitted). In the Sixth Circuit:

> when considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings

pending arbitration.

*Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

First, the court concludes that the parties agreed to arbitrate. *Id.* Plaintiff and Legacy Motors signed the retail installment contract containing the full-page arbitration clause. (Dkt. # 12-1, Pg. ID 117.) Plaintiff did not exercise his right to reject under the contract, which would not have affected the balance of the agreement. (*Id.*)

While Plaintiff argues that the arbitration clause is unconscionable, other courts have upheld highly similar clauses. *See, e.g.*, *Credit Acceptance Corp. v. Davisson*, 644 F. Supp.2d 948, 958-59 (N.D. Ohio 2009); *Anderson v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 70149 (W.D. Mich. June 1, 2015). Plaintiff's argument that the arbitration clause is substantively unconscionable is, effectively, that Plaintiff got a bad deal. (Dkt. # 14, Pg. ID 127-28.) But a contract is not unconscionable "simply because it is foolish for one party and advantageous to the other." *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp.3d 1000, 1005-06 (E.D. Mich. 2015) (Ludington, J.) ("Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.") (citation omitted). Here, there is no apparent inequity of any kind, far from any so "extreme as to shock the conscience." The contract, in plain and prominent language, simply called for what amounted to an option to arbitrate, which would be held in the Purchaser's own home jurisdiction. (Dkt. # 12-1, Pg. ID 117.) The power to arbitrate or sue is held entirely in the hands of the purchaser. The court finds nothing unfair or inequitable about such a clause, and concludes that the instant arbitration clause is enforceable.

**\*3** Second, the scope of the agreement is broad. The arbitration clause provides for arbitration of "any Dispute," and provides that " 'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on [sic] tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." (*Id.*) The contractual language clearly calls for a broad scope.

Third, nothing suggests that Congress intended to exempt Plaintiff's claims from arbitration. "The burden is on the party opposing arbitration...to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Plaintiff does not

address the issue, and the court necessarily concludes that Congress has not precluded arbitration of Plaintiff's claims. *Id.*

Finally, because all of Plaintiff's claims are subject to arbitration, there is no reason to stay this proceeding rather than dismiss without prejudice. *Glazer*, 394 F.3d at 451.

### III. CONCLUSION

Accordingly, IT IS ORDERED that Defendants' Motions

to Compel Arbitration and Dismiss (Dkt. ## 11, 12) are GRANTED. This case is DISMISSED WITHOUT PREJUDICE to the parties' right to move to re-open this case for entry of an arbitration award or for any other relief to which the parties may be entitled.

IT IS FURTHER ORDERED that the parties are directed to proceed with arbitration of Plaintiff's claims pursuant to the terms of the agreement to arbitrate.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6476458

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite history available

2010 WL 331714
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

WILLIAMS INTERNATIONAL CO., LLC, Plaintiff,
v.
NEW WEST MACHINE TOOL CORP., Defendant.

No. 09-12516.
|
Jan. 22, 2010.

**Attorneys and Law Firms**

Douglas C. Salzenstein, Norman C. Ankers, Honigman, Miller, Detroit, MI, for Plaintiff.

James S. Lowrie, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, for Defendant.

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION [3]**

NANCY G. EDMUNDS, District Judge.

**\*1** This matter comes before the Court on Plaintiff Williams International Co., LLC ("Williams")'s motion to compel arbitration. For the reasons stated more

**I. Facts**

**A. The Parties**

Plaintiff Williams is a Michigan limited liability company that manufactures engines and propulsion units for the aviation and aerospace industries.

Defendant New West is a Utah corporation that is in the business of ordering the manufacture, sale, delivery, and service of precision milling and mill/turn machines for use in the aerospace industry.

**B. Utah Lawsuit**

On May 8, 2009, Defendant New West initiated a lawsuit against Plaintiff Williams in the United States District Court for the District of Utah, Case No. 2:09cv00425, assigned to Judge Dale A. Kimball ("the Utah Litigation"). Defendant New West filed an Amended Complaint on May 14, 2009, alleging that Plaintiff Williams breached two separate purchase orders: the "2007 Purchase Order" and the "2008 Revised Purchase Order." Specifically, as to the 2007 Purchase Order, New West alleges that Williams's failure to commission scheduled maintenance on three machines purchased under the 2007 Purchase Order constitutes a substantial and material breach of that contract thus voiding New West's special warranty as to the three identified machines. (Utah Am. Compl. ¶¶ 49-51, Prayer for Relief ¶ 1.) As to the 2008 Revised Purchase Order, New West alleges that Williams's cancellation and termination of this Order constitutes a substantial and material breach of contract that caused it to suffer over $3 million in damages and also constitutes tortious interference with its business relationship with Mori Seike USA, its manufacturer supplier. (*Id.* at ¶¶ 52-67; K. Roestenburg Decl. ¶ 7.)

**C. The Parties' Contractual Relationship**

Williams and New West have had a business relationship for about a decade. ionship for about a decade.Williams has, from time-to-time, purchased milling machines from New West, using a purchase order executed by both parties. (J. Shephard Decl. ¶¶ 5-6.) Each purchase order attached and incorporated by reference a set of Williams's standard commercial terms and conditions, including a clause requiring that any dispute related to the purchase order be arbitrated in Oakland County, Michigan, where Williams is headquartered and operates. (*Id.* at ¶¶ 3, 7-10.)

**D. Contracts At Issue-2007 Purchase Order and 2008 Revised Purchase Order**

**1. 2007 Purchase Order**

On the first line of its first page, the 2007 Purchase Order incorporates by reference Williams's POP3206 terms and conditions: "This order is subject to the terms and conditions per attachment herein: POP3206 ...." (Pl.'s Ex. D, 2007 Purchase Order No. 374391 at 1 of 11.) This

information is repeated on page seven, under the title "Additional Provisions," and provides in relevant part that:

> The equipment ordered herein is subject to the terms and conditions set forth in this order. If/Where a conflict of terms takes place, the following order of precedence shall apply:

> **\*2** A. The Purchase Order.

> \* \* \*

> C. Purchase Order Provisions (POP) 3206 attached hereto and made a part hereof.
> (*Id.* at 7 of 11.)

Attachment POP3206 begins with the all capital heading: "THIS ORDER IS SUBJECT TO THE FOLLOWING PROVISIONS." (Pl.'s Ex. E, POP3206 at 1.) Paragraph 30 contains the arbitration clause that is at issue in this lawsuit and the Utah Litigation:

> (3)DISPUTES: Any claim, controversy or dispute arising out of or relating to the performance of this purchase order which is not disposed of by agreement shall be settled by arbitration. The procedure for which will follow the rules of the American Arbitration Association. The award rendered by the arbitrator(s) shall be final and binding and the judgment may be entered thereon in any court having jurisdiction thereof. Pending final decision of a dispute, controversy, or claim hereunder, the seller shall proceed with the performance of this order. The arbitration provided for herein shall be held in Oakland County, Michigan.

(*Id.* at 2 ¶ 30.) Paragraph 33 provides that "Michigan law shall apply to this order and its construction, except for Michigan's conflict of laws provision which shall not apply." (*Id.* at ¶ 33.)

New West does not deny that it received these terms and conditions nor does it dispute that they contain the above-quoted provisions. Rather, New West claims that it did not read the terms and conditions (at least paragraph 30) and that "no Williams' representative brought to the attention of any New West representative the existence of any provision of the document dealing with arbitration in Oakland County, Michigan." (Def.'s Combined Br. at 2; K. Roestenburg Decl. ¶¶ 17-19.)

#### 2. 2008 Revised Purchase Order

In September 2008, representatives of Williams and New West executed the 2008 Revised Purchase Order, No. 376432B, where New West agreed to sell and Williams agreed to purchase five highly specialized milling machines. (Pl.'s Ex. B.) New West's President and COO, Kelly Roestenburg, personally reviewed and signed the 2008 Revised Purchase Order. (*Id.* at 16; Roestenburg Decl. ¶ 22.)

The 2008 Revised Purchase Order, similar to the 2007 Purchase Order, attached and incorporated by reference "Williams International Purchase Order Terms and Conditions," Form CT100-Williams's standard commercial terms and conditions. (Pl.'s Ex. C.) On the first two lines of its first page, the 2008 Revised Purchase Order provides that:

> This order is subject to the terms and conditions per attachment herein: Attachment 1: CT100

(Pl.'s Ex. B, 2008 Revised Pur. Order at 1 of 16.) This information is repeated on page eleven, under the title "Additional Provisions," and provides in relevant part that:

> The equipment ordered herein is subject to the terms and conditions set forth in this order. If/Where a conflict of terms takes place, the following order of precedence shall apply:

> A. The Purchase Order.

> \* \* \*

**\*3** D. Standard Commercial Terms (CT) 100 attached hereto and made a part hereof.
(*Id.* at 11 of 16.)

Immediately following this provision, the 2008 Revised Purchase Order sets forth an integration clause that expressly notifies New West, as Seller, that it "shall notify the buyer [Williams] immediately and specifically of anything herein which the seller does not assent to as a term and condition governing transaction covered herein." (*Id.*) New West did, in fact, rely on this language to suggest several modifications to the purchase order during negotiations.[1] (Pl.'s Stay Resp. Br. Ex. H, 8/4/08 email.) New West did not, however, object to the incorporation of the CT100 terms and conditions and did not inform Williams that they were not included with the purchase order documents under consideration or ask for a copy.

Williams's standard commercial terms contained on Form CT100 and incorporated by reference in the 2008 Revised Purchase Order include an arbitration clause similar to that in the 2007 Purchase Order:

> 23. DISPUTES: Buyer and Seller shall strive to settle amicably and in good faith any dispute arising in connection with this Purchase Order. If they are unable to do so, the dispute shall be resolved by binding arbitration conducted under the rules of the American Arbitration Association, as presently in force, by three arbitrators appointed in accordance with said rules. The place of arbitration shall be Oakland County, Michigan. Pending resolution of any dispute hereunder, Seller shall proceed diligently with the performance of work, including the delivery of goods in accordance with Buyer's direction. Upon resolution of the dispute, this Order shall be equitably adjusted, if necessary, to reflect such resolution.

(Pl.'s Ex. C, Form CT100 at 5 ¶ 23.) Paragraph 18 provides that "This Order shall be deemed to be a contract entered into in the State of Michigan, U.S.A., and shall be construed and governed in all respects, and the legal relationships between the parties shall be determined in accordance with applicable commercial law of the State of Michigan, U.S.A., including but not limited to, the Uniform Commercial Code, as the same may be enacted and in force from time to time in that jurisdiction." (*Id.* at ¶ 18.)

In its Utah Amended Complaint, New West alleges that the 2008 Revised Purchase Order "was also subject to the 'Williams International Purchase Order Terms and Conditions' (a standardized form apparently applicable to Williams' purchase orders generally)." (Utah Am.Compl.¶ 27.) In his Declaration, Kelly Roestenburg, New West's President and COO, proclaims that he "read the allegations in the Amended Complaint ..., and state the same to be true to the best of my knowledge, information and belief." (Roestenburg Decl. ¶ 4.)

Despite the above, Mr. Roestenburg also declares that, although the 2008 Revised Purchase Order makes reference to the CT100 Terms and Conditions, it was not included with the 2008 Revised Purchase Order "at the time" he reviewed, accepted and signed that purchase order, it is not currently included with the 2008 Revised Purchase Order that is in New West's possession, and he does not "recall" seeing it "in connection with" his "review and execution" of the 2008 Revised Purchase Order. (*Id.* at ¶¶ 23-25.) Nonetheless, his conduct reveals not only knowledge but reliance on the CT100 Terms and Conditions. (Pl.'s Stay Resp. Br. Ex. I, 11 /13/08 letter at 5; Ex. J, 11 /28/08 letter at 2.) The specific language Mr. Roestenburg quoted in his November 13, 2008 letter and relied upon in his November 28, 2008 letter comes from Paragraph 23 of CT100. Paragraph 23 also contains the arbitration clause that is at issue in this lawsuit. Thus, in the Utah Litigation, New West relies on the CT100 Terms and Conditions to establish its claims against Williams with regard to the 2008 Revised Purchase Order. In contrast, in this action, New West argues that it was unaware of these same terms and conditions at the time it entered into the 2008 Revised Purchase Order and further argues that it would not have accepted the Purchase Order if it had been aware of Paragraph 23 and the arbitration clause.

### E. This Lawsuit

**\*4** Plaintiff Williams filed this action on September 25, 2009, based on diversity jurisdiction, seeking a judgment declaring that Defendant New West must arbitrate the claims it raised against Williams in the Utah Litigation. An Amended Complaint was subsequently filed on August 5, 2009, also seeking a judgment declaring that New West must arbitrate the claims asserted in the Utah Litigation.

In the Utah Litigation, Williams filed a motion to dismiss or, in the alternative, to stay that litigation pending resolution of this action. On September 29, 2009, the Utah District Court issued an order staying the Utah Litigation pending this Court's decision on Williams's motion to compel arbitration, relying on a Tenth Circuit decision observing that "[a] district court lacks authority to compel arbitration in other districts, or in its own district, if another has been specified for arbitration." *New West Machine Tool Corp. v. Williams Int'l Co., LLC,* Case No. 2:09CV00425DAK, Mem. Decision & Order [14] at 2 (C.D.Utah Sept. 29, 2009) (quoting *Ansari v. Qwest Comm. Corp.,* 414 F.3d 1214, 1219-20 (10th Cir.2005)).

This matter is now before the Court on Williams's motion to compel arbitration of the claims asserted against it in the Utah Litigation.

## II. Compel Arbitration Standard

In seeking dismissal of Plaintiffs' claims, Defendant relies on the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.,* which provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged ... refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* But a party "cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." *Bratt Enterprises, Inc. v. Noble Int'l Ltd.,* 338 F.3d 609, 612 (6th Cir.2003); *see also Albert M. Higley Co. v. N/S Corp.,* 445 F.3d 861, 863 (6th Cir.2006) (internal citations omitted) (noting that "arbitration under the Federal Arbitration Act is a matter of consent, not coercion").

**\*5** "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir.2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

When determining "whether the arbitration clause itself was validly obtained," state contract law is applied, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 393 (6th Cir.2003). State law inconsistent with the FAA's "broad principle of enforceability" of arbitration agreements, however, is pre-empted by federal arbitration law. *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 661, 688 (1996); *Stout,* 228 F.3d at 716.

If a court determines that the cause of action is covered by an arbitration clause, Section 3 of the FAA provides that "it must stay the proceedings until the arbitration process is complete." *Fazio,* 340 F.3d at 392 (citing 9 U.S.C. § 3). Courts have held, however, that when the court determines that all the claims in a cause of action are to be submitted to arbitration, it may dismiss, rather than stay the action because "staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992). *See Hensel v. Cargill, Inc.,* No. 99-3199, 1999 WL 993775, \*4 (6th Cir. Oct.19, 1999) (rejecting an argument that dismissal was improper, citing *Alford* with approval, and holding that dismissal is proper when all claims in a suit are submitted to arbitration).

## III. Analysis

New West argues that (1) Michigan's arbitration law governs rather than the FAA and the arbitration clauses at issue here do not satisfy Michigan law; (2) the CT100 Terms and Conditions were not attached to the executed 2008 Revised Purchase Order and thus were not properly incorporated by reference; and (3) the parties' arbitration agreements are procedurally and substantively unconscionable because they are in fine print, were not subject to negotiation, and unreasonably force New West to arbitrate in a remote location. Williams argues the

opposite. The Court begins its analysis by determining whether the FAA or Michigan's arbitration laws govern here.

### A. The FAA, Not Michigan's Arbitration Laws, Apply Here

New West does not dispute that the purchase orders at issue here involve interstate commerce. The FAA applies to commercial transactions governed by written agreements that provide for arbitration of disputes arising out of that transaction. *Southland Corp. v. Keating,* 465 U.S. 1, 10-11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, the arbitration clauses fall within the scope of the FAA. *See Mechanical Power Conversion, L.L.C. v. Cobasys, L.L.C.,* 500 F.Supp.2d 716, 719 (E.D.Mich.2007) (observing that, despite diversity jurisdiction, "the FAA created substantive law regarding arbitration clauses that must be enforced both in state and federal courts."). Nonetheless, New West argues that Michigan's arbitration laws should apply here. This Court disagrees.

**\*6** Relying on the Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), New West argues that, because Williams's incorporated terms and conditions include choice-of-law provisions stating that Michigan law governs interpretation of the purchase orders, Michigan's arbitrability rules rather than those of the FAA must also govern the standards applied to the parties' arbitration agreements. This argument has been firmly rejected by the federal courts.

A decision New West relies upon for support refutes rather than supports its argument. In *Volk v. X-Rite, Inc.,* 599 F.Supp.2d 1118 (S.D.Iowa 2009), the court was similarly presented with the threshold issue "whether federal or Michigan law applies" when the contract at issue contains a choice-of-law provision but the arbitration clause does not. *Id.* at 1123. After examining relevant Supreme Court and Eighth Circuit Court of Appeal decisions, the district court in *Volk* concluded that "the FAA will govern federal courts' interpretation of arbitration clauses unless the parties make 'abundantly clear' their preference for state arbitration law," and "[a] generic choice-of-law clause that is silent on whether state arbitration rules will govern the agreement, as a matter of law, does not make the parties' intent to have federal courts apply state arbitration law 'abundantly clear.' " *Id.* at 1124-25 (citations omitted). The Sixth Circuit is in agreement.

In *Ferro Corporation v. Garrison Industries, Inc.,* 142 F.3d 926 (6th Cir.1998), the Sixth Circuit recognized that the Supreme Court's holding in *Volk* had been substantially limited by its subsequent decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In *Ferro,* the Sixth Circuit applied *Mastrobuono* and concluded that the choice-of-law provision in the parties' contract was "no indication that the parties intended to incorporate Ohio law, or to invoke the power of courts" into their arbitration agreement and thus displace application of the FAA. *Id.* at 937. Similarly, in a 2005 decision, the Sixth Circuit concluded that a choice-of-law provision providing that "this agreement shall be governed by the laws of the State of Michigan" did not displace the rules of the FAA. *See Jacada (Europe), Ltd. v. International Marketing Strategies, Inc.,* 401 F.3d 701, 710-12 (6th Cir.2005), *abrogated on other grounds, Hall Street Assocs., LLC v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). The *Jacada* court observed that, "[j]ust as in *Mastrobuono,* the choice-of-law clause [in *Jacada*] could be read as only specifying what state contract law the parties wished to use;" the parties had "entered into an agreement in which, without the choice-of-law provision, the FAA rule would apply;" and "the clause does not unequivocally suggest an intent to displace the default federal standard." *Jacada,* 401 F.3d at 711. Thus, "[c]onsidering the federal policy in favor of arbitration" and relevant Supreme Court and Circuit Court of Appeal decisions, the Sixth Circuit determined that the FAA would not be displaced "when the only evidence of such intent is a generic choice-of-law provision." *Id.* at 712. Following these decisions, the United States District Court for the Eastern District of Michigan recently rejected the argument New West makes here. *See Mechanical Power,* 500 F.Supp.2d at 720-21 (rejecting an argument that Michigan law applies to the parties' arbitration agreement because there was "no clear indication in the agreement that the arbitration procedures are governed by Michigan law" and thus "the strong presumption in the federal courts toward compelling arbitration applies.").

**\*7** Like the decisions discussed above, although there is a choice-of-law provision providing that the parties' 2007 Purchase Order and 2008 Revised Purchase Order are to be interpreted by applying Michigan law, there is no clear indication that Michigan law should displace federal law on arbitration.[2] Accordingly, the FAA rules govern whether the claims asserted against Williams in the Utah Litigation should be compelled to arbitration.

### B. The Arbitration Agreement Was Properly

Williams Intern. Co., LLC v. New West Mach. Tool Corp., Not Reported in F.Supp.2d...

**Incorporated By Reference in the 2008 Revised Purchase Agreement**

This Court acknowledges that before it "can send a case to arbitration, it must first determine that a valid agreement to arbitrate exists." *Fazio,* 340 F.3d at 393 (citing 9 U.S.C. § 2; *Stout,* 228 F.3d at 714). This "gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (internal quotation marks and citations omitted).

New West does not dispute that the arbitration agreement in POP3206 Terms and Conditions was properly incorporated by reference in the 2007 Purchase Order but argues that it should not be bound by that agreement because Williams did not highlight its presence. New West also disputes that the CT100 Terms and Conditions were properly incorporated by reference in the 2008 Revised Purchase Order because the terms were not attached to that Purchase Order when it was executed. The relevant case law does not support New West's arguments. Michigan law allows parties to incorporate terms and conditions by reference, and the courts have consistently rejected arguments similar to those of New West.

"It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding a contract on the ground that the party was ignorant of the contract provisions." *Scholz v. Montgomery Ward & Co.,* 437 Mich. 83, 468 N.W.2d 845, 848 (Mich.1991). Applying Michigan law, the Sixth Circuit recently addressed arguments similar to those New West presents here:

> ASC argues that the "Terms & Conditions Of Sale" Bosch cites were never sent to it, and therefore, because ASC had no notice of them they never became a part of the contract. However, Bosch sent seven quotations, each stating that "Bosch standard terms and conditions apply unless otherwise specified." Michigan law permits a party to incorporate terms or documents from other writings. A party may not plead ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated. To the extent ASC contends that the term was not capitalized or otherwise point to a specific document, the argument fails. In *Forge [v. Smith,* 458 Mich. 198, 580 N.W.2d 876, 882 (1998) ], the Michigan Supreme Court held that a contract provision incorporating "architectural specifications" was sufficiently specific to conclude that it clearly refers for some of its terms to an

extraneous document. Notably, those terms were not capitalized either, nor did they cite the title of the outside document. Thus, *we find that the language clearly and unambiguously evinced an intent to incorporate Bosch's standard terms and conditions.* ASC's proffered alternate construction is both unreasonable and irrelevant because *the issue is notice,* and ASC fails to explain why no one bothered to pick up the phone to seek clarification.

**\*8** *Robert Bosch Corp. v. ASC, Inc.,* 195 F. App'x 503, 505 (6th Cir.2006) (internal quotation marks and citations omitted) (emphasis added). *Accord, Constr. Fasteners, Inc. v. Digital Equip. Co.,* No. 185679, 1996 WL 33348735, \*2 (Mich.Ct.App. Oct.22, 1996) (rejecting the same "no attachment" argument raised here, observing that "[w]here additional documents or terms are made part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them, and concluding that "[a]lthough the standard terms and conditions were not attached to the letter of authorization, plaintiff was put on notice that they were incorporated by reference" and "will not be heard to claim that those terms were not applicable.").

New West's reliance on *Manasher v. NECC Telecom,* No. 06-10749, 2007 WL 2713845 (E.D.Mich. Sept.18, 2007), is misplaced. In *Manasher,* the issue was whether a statement on the plaintiffs' invoice for phone services was sufficient to incorporate a document that included an arbitration agreement found only on the defendant's website. *Id.* at ----3-6 The court found that the language on the invoice did "not betray a clear intent" that the referenced document was to "be considered part of the contract between the parties." *Id.* at \*6. The facts in *Manasher* are vastly different than those presented here. Williams's CT100 Purchase Order Terms and Conditions are expressly and unambiguously incorporated by reference on both the first and eleventh pages of the 2008 Revised Purchase Order.

**C. The Arbitration Agreements Are Not Unconscionable**

The Court now considers New West's argument that the arbitration agreements are unconscionable and thus unenforceable. New West argues that the parties' arbitration agreements are procedurally and substantively unconscionable because (a) they are buried in fine print in referenced terms and conditions and were not subject to negotiation, and (b) they force New West to arbitrate in a remote location.

Under the FAA, courts look to state contract law to

determine whether a contract is unconscionable. *Andersons, Inc. v. Horton Farms,* 166 F.3d 308, 322 (6th Cir.1998). Whether an arbitration agreement is unconscionable presents a matter of law for the court to decide. *Id.* at 323. "Michigan applies a two-prong test of 'procedural' and 'substantive' unconscionability." *Id.* at 322. It involves two types of inquiries: "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?;" and "(2) Is the challenged term substantively reasonable." *Id.* (internal quotation marks and citations omitted). The first inquiry addresses procedural unconscionability whereas the second addresses substantive unconscionability. Both must be found to exist for an agreement to be considered unconscionable. *Id.*

### 1. Procedural Unconscionability

**\*9** New West argues that the arbitration agreements are procedurally unconscionable because they are buried in fine print in referenced terms and conditions that were not subject to negotiation. This Court rejects New West's arguments of procedural unconscionability.

"Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the contested term." *Clark v. DaimlerChrysler Corp.,* 268 Mich.App. 138, 706 N.W.2d 471, 474 (Mich.Ct.App.2005). Applying Michigan law, the Sixth Circuit has observed that "the most important factors in determining procedural unconscionability are (1) whether the relatively weaker party had an alternative source with which it could contract, and (2) whether the contract term in question was in fact negotiable." *Andersons, Inc.,* 166 F.3d at 324.

New West cannot establish procedural unconscionability. Both New West and Williams are sophisticated parties with equal bargaining power. In fact, in the business transactions at issue here, New West was the Seller; this is not a scenario where a buyer is complaining that it had no alternative source and was thus forced to accept a challenged term. As the Seller, New West was in a position to reject Williams's offer to buy. Moreover, as to the 2008 Revised Purchase Order, Williams presents evidence showing New West was able to negotiate. Finally, that Purchase Order expressly provides that "[t]he seller shall notify the buyer immediately and specifically of anything herein which the seller does not assent to as a term and condition governing transaction covered herein." (2008 Revised Purchase Order at 11 of 16.) New West failed to take advantage of this clause and thus cannot now be heard that it had no opportunity to negotiate the arbitration clause.

### 2. Substantive Unconscionability

New West likewise cannot establish substantive unconscionability. A term is not substantively unconscionable "simply because it is foolish for one party and very advantageous to the other." *Clark,* 706 N.W.2d at 475. "Instead, a term is substantially unreasonable where the inequity of the term is so extreme as to shock the conscience." *Id.* There is nothing here about the challenged arbitration agreements that shocks the conscience. Both parties agreed to arbitrate any disputes arising in connection with the 2007 Purchase Order and the 2008 Revised Purchase Order. That New West must travel to Oakland County, Michigan does not shock the conscience. Unlike the plaintiff in *Vegter v. Forecast Financial Corporation,* No. 1:07-CV-279, 2007 WL 4178947, \*4 (W.D.Mich. Nov.20, 2007), New West is not a financially destitute consumer forced to travel to a remote location to arbitrate claims brought against a far more lucrative and sophisticated party. Unlike *Vegter,* requiring New West to arbitrate its claims against Williams in Oakland County, Michigan, where Williams is headquartered, would not effectively deter New West or other similarly situated sellers from pursuing arbitration. *Id.*

### D. The Parties Agreed to Arbitrate The Claims Asserted in the Utah Litigation

**\*10** Here, there can be no doubt that the parties agreed to arbitrate the claims asserted by New West against Williams in the Utah Litigation. New West's Amended Complaint is based on the alleged breach of express and/or implied terms of the 2007 Purchase Order and 2008 Revised Purchase Order. Moreover, the arbitration agreements at issue here broadly require New West and Williams to arbitrate "any dispute arising in connection with" the 2008 Revised Purchase Order and "any claim, controversy, or dispute arising out of or relating to the performance of" the 2007 Purchase Order. (CT100 Terms & Conditions at ¶ 23; POP3206 Terms & Conditions at ¶ 30.) The federal courts have routinely found that similar broad language requires arbitration of virtually any claim arising between the contracting parties. *See, e.g., Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.,* 706 F.2d 155, 160 (6th Cir.1983) (observing that "[w]here a commercial contract contains a broad arbitration provision covering all controversies arising under the agreement, arbitration is ordered unless the party seeking to avoid it can show that the particular dispute is expressly excluded"); *First Union Real Estate Equity and*

*Mortg. Inv. v. Crown Am.,* No. 93-3459, 1994 WL 151338, *3 (6th Cir. Apr.26, 1994) (observing that "[a]n arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.' A claim, regardless of the legal label assigned to it, falls within the scope of [an] extremely broad arbitration clause if the allegations underlying the claim or its defenses involve matters covered by the agreement."). Because the claims asserted by New West against Williams in the Utah Litigation involve a dispute within the broad scope of the parties' arbitration agreements, they must be arbitrated consistent with the well-established federal policy favoring the enforcement of arbitration agreements.

**IV. Conclusion**

For the above-stated reasons, Defendant's motion to compel arbitration is GRANTED. It is FURTHER ORDERED that this matter is STAYED pending arbitration.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 331714

Footnotes

1    The 2008 Revised Purchase Order followed months of negotiations between Williams and New West. (Utah Am. Compl. ¶¶ 33-37; Shephard Decl. ¶¶ 11-13.)

2    Moreover, as discussed at oral argument and in Plaintiff's briefs, even if Michigan arbitration laws did apply, the arbitration clauses at issue here provide that disputes are to be resolved by binding arbitration and that the rules of the American Arbitration Association apply thus making them statutory rather than common law arbitration agreements.

**End of Document**                                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.