## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

            *Plaintiffs,*

v.

JPAY INC.

            *Defendant.*

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox
Mag. Judge Patricia T. Morris

---

| EXCOLO LAW PLLC | MORGAN, LEWIS, & BROCKIUS LLP |
|---|---|
| Keith L. Altman (P81702) | Elizabeth Herrington (IL#6244547) |
| Solomon M. Radner (P73653) | Zachary R. Lazar (IL#6325727) |
| Ari Kresch (P29593) | 77 West Wacker Drive, Fifth Floor |
| 26700 Lahser Road, Suite 401 | Chicago, IL 60601 |
| Southfield, MI 48033 | 312-324-1000 |
| 516-456-5885 | beth.herrington@morganlewis.com |
| kaltman@lawampmmt.com | |
| | HICKEY HAUCK BISHOFF & JEFFERS |
| *Attorneys for Plaintiff and the Class* | PLLC |
| | Benjamin W. Jeffers (P57161) |
| | One Woodward Avenue, Suite 2000 |
| | Detroit, MI 48226 |
| | 313-964-8600 |
| | bjeffers@hhbjlaw.com |
| | |
| | *Attorneys for Defendant* |

---

## PLAINTIFF'S MOTION FOR CORRECTIVE ACTION AND TO COMPEL ARBITRATION

Plaintiff Temujin Kensu and the Class, by and through their counsel, EXCOLO LAW, PLLC, file this motion for corrective action and to compel arbitration.

For the reasons stated in the attached brief, Plaintiff respectfully requests that the Court grant Plaintiff's motion.

Dated: December 10, 2019                Respectfully Submitted,

                                        EXCOLO LAW, PLLC

                                        */s/ Keith Altman*

                                        Keith Altman (P81702)
                                        Solomon Radner (P73653)
                                        Ari Kresch (P29593)
                                        Excolo Law PLLC
                                        26700 Lahser Road, Suite 401
                                        Southfield, MI 48033
                                        (516)456-5885
                                        kaltman@excololaw.com

                                        *Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox
Mag. Judge Patricia T. Morris

       *Plaintiffs,*

v.

JPAY INC.

       *Defendant.*

---

EXCOLO LAW PLLC
Keith L. Altman (P81702)
Solomon M. Radner (P73653)
Ari Kresch (P29593)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiff and the Class*

MORGAN, LEWIS, & BROCKIUS LLP
Elizabeth Herrington (IL#6244547)
Zachary R. Lazar (IL#6325727)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

HICKEY HAUCK BISHOFF & JEFFERS
PLLC
Benjamin W. Jeffers (P57161)
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313-964-8600
bjeffers@hhbjlaw.com

*Attorneys for Defendant*

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR CORRECTIVE ACTION AND TO COMPEL ARBITRATION

## <u>MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 23(d)

*Tolmasoff v. GM, LLC*, No. 16-11747, 2016 U.S. Dist. LEXIS 85101 (E.D. Mich. June 30, 2016)

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)

*Doe v. Mich. Dep't of Corr.*, No. 13-14356, 2014 U.S. Dist. LEXIS 105222 (E.D. Mich. Aug. 1, 2014)

*McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2018 U.S. Dist. LEXIS 179978 (C.D. Cal. Apr. 6, 2018)

*Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010)

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)

## <u>TABLE OF CONTENTS</u>

MOST APPROPRIATE AUTHORITY ................................................................ i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iii

CONCISE STATEMENT OF THE ISSUE PRESENTED......................................v

LOCAL RULE CERTIFICATION ................................................................... vi

STATEMENT OF RELEVANT FACTS ..............................................................1

LEGAL STANDARD.....................................................................................5

ARGUMENT ..............................................................................................5

    I.    THIS COURT SHOULD ENJOIN DEFENDANT FROM INAPPROPRIATE CONTACT WITH THE PUTATIVE CLASS AND TAKE CORRECTIVE ACTION TO REESTABLISH THE PUTATIVE CLASS'S RIGHTS ...............................................................................................6

    II.    THIS COURT SHOULD COMPEL ARBITRATION PURSUANT TO THE STIPULATED AGREEMENT OF THE PARTIES ...................................16

    III.    THIS COURT SHOULD COMPEL ARBITRATION FOR FUTURE LITIGATIONS .......................................................................................19

CONCLUSION..........................................................................................21

CERTIFICATE OF SERVICE .......................................................................23

# TABLE OF AUTHORITIES

## Cases

*Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009) ................................................................................................20

*Balasanyan v. Nordstrom, Inc.*, No. 11-CV-2609-JM-WMC, 2012 U.S. Dist. LEXIS 30809, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012)..................................14

*Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545 (S.D. Iowa 2000) ..........7

*Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239 (E.D. Tex. 1997)....................11

*Carnegie v. H&R Block, Inc*., 180 Misc. 2d 67, 687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999) ...................................................................................................10

*Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696 (S.D. Ala. 2003) .................................................................................................9, 10

*Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) ....................................................................................13

*Doe v. Mich. Dep't of Corr.*, No. 13-14356, 2014 U.S. Dist. LEXIS 105222 (E.D. Mich. Aug. 1, 2014).....................................................................................10

*Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010) .............. 8, 10, 11

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) ...8, 11, 15

*Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994) .........7

*In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006 (5th Cir. 1977) .........13

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) .................................................................................................9, 14

*In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1106 (7th Cir.1979).............................................................................................13

*In re Southeastern Milk Antitrust Litig.*, No. MDL 1899, 2009 U.S. Dist. LEXIS 102635, 2009 WL 3747130 (E.D. Tenn. Nov. 3, 2009)........................................7

*Jenifer v. Del. Solid Waste Auth*., 1999 U.S. Dist. LEXIS 2542, 1999 WL 117762 (D. Del.) ...................................................................................................10

*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554 (S.D. Fla. 2008).........................................9

*Jpay, Inc v Salim*, ___F Supp 3d___; 2016 U.S. Dist. LEXIS 165631 (SD Fla, May 21, 2016) .................................................................................................12

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)........ 8, 13, 15

*McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2018 U.S. Dist. LEXIS 179978 (C.D. Cal. Apr. 6, 2018) ............................................................................. 14, 15

*Motisola Malikha Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672 (N.D. Ga. 1999)..11

*National Audubon Society, Inc. v. Watt*, 219 U.S. App. D.C. 435, 678 F.2d 299
    (D.C.Cir. 1982) ...............................................................................17
*O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS
    172477 (N.D. Cal. Dec. 6, 2013) ........................................................14
*Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601 (E.D. Mich. 2017) ...............17
*Sorrentino v. ASN Roosevelt Ctr*. LLC, 584 F. Supp. 2d 529 (E.D.N.Y. 2008) .8, 11
*Tolmasoff v. GM, LLC*, No. 16-11747, 2016 U.S. Dist. LEXIS 85101 (E.D. Mich.
    June 30, 2016 .................................................................. 6, 8, 11, 15
*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012).................7, 8
*Van Dorn Plastic Machinery Co v NLRB*, 881 F2d 302 (CA 6, 1989) ...................17
*Westerfield v. Quizno's Franchise Co*., 527 F. Supp. 2d 840, 2007 WL 1062200
    (E.D. Wis.) .....................................................................................10
*Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 U.S. Dist. LEXIS
    75502, 2011 WL 2713818 (E.D. Pa. July 13, 2011) ...........................................14
*Williams v. United States Dist. Court*, 658 F.2d 430 (6th Cir. 1981).......... 9, 10, 11
*Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 U.S.
    Dist. LEXIS 83505, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ....................7

## Statutes

42 U.S.C. § 1983 .................................................................................1
9 U.S.C. § 5 ...................................................................................20

## Other Authorities

Federal Practice and Procedure § 1794 (3d ed.) ....................................7
Manual for Complex Litigation (Fourth)............................................7, 9

## Rules

Fed. R. Civ. P. 23 ........................................................ 5, 6, 8

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

I.    Whether this Court should institute corrective action based upon Defendant's inappropriate contact with the putative class?

II.   Whether this Court should compel Defendant to engage in the stipulated arbitration pursuant to the original terms as outlined in the contract?

## <u>LOCAL RULE CERTIFICATION</u>

The undersigned counsel certifies that pursuant to E.D. Mich. L.R. 7.1(a), Plaintiff has contacted the Defendants seeking their concurrence to the relief sought in the instant motion, however, Defendants declined any such concurrence.

The undersigned counsel further certifies that this document complies with E.D. Mich. LR 5.1(a), including double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). The undersigned further certifies that the brief is the appropriate length since it does not exceed 25 pages. E.D. Mich. LR 7.1(d)(3).

Dated: December 10, 2019                    Respectfully Submitted,

                                            */s/ Keith Altman*
                                            Keith Altman (P81702)
                                            Attorney for Plaintiffs
                                            26700 Lahser Rd., Suite 401
                                            Southfield, MI 48033
                                            (516) 456-5885
                                            kaltman@excololaw.com

## **STATEMENT OF RELEVANT FACTS**

Defendant JPay, Inc. ("JPay") contracted with the Michigan Department of Corrections ("MDOC") to provide services to prisoners housed in MDOC facilities, including Defendant JPay's JPay Inmate Services program ("JPay Program"). Plaintiff Temujin Kensu ("Kensu"), a prisoner currently incarcerated in the MDOC, purchased thousands of dollars' worth of money transfer services, email or "eCommunication" services, video visitation services, MP3 players, electronic tablets, content, products, and accessories from Defendant JPay through Defendant's JPay Program. Plaintiff Kensu commenced this class action lawsuit against Defendant JPay on behalf of himself and a class of individuals who similarly made purchases through Defendant's JPay Program, alleging causes of action under 42 U.S.C. § 1983 and the Michigan Consumer Protection Act, in addition to claims of breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, unjust enrichment, fraud and intentional misrepresenting, and breach of express and implied warranty.

On June 1, 2018, Defendant JPay filed their Motion to Compel Arbitration. ECF No. 12. Plaintiff filed his Response to Defendant's Motion to Compel Arbitration on June 21, 2018, ECF No. 16, followed by an amended complaint on June 26, 2018. ECF No. 18. Defendants filed their Renewed Motion to Compel Arbitration on July 10, 2018, ECF No. 19, to which Plaintiff responded on July 31,

2018. ECF No. 21.  On October 22, 2018, Magistrate Judge Patricia T. Morris entered her Report and Recommendation on Defendant's Renewed Motion to Compel Arbitration (R.19). ECF No. 23.

On March 11, 2019, this Court entered its Order Adopting Judge Morris's October 22, 2018 Report and Recommendation (ECF No. 23) and Staying This Case Pending Arbitration.  ECF No. 27.  On April 23, 2019, JAMS, the arbiter designated by Defendant JPay to administer the arbitration, informed Plaintiff's counsel that JAMS is "no longer administering arbitrations between JPay and its customers." ECF No. 29-1.  Following JAMS' conclusion that they would not administer the arbitration, Plaintiff moved this Court to lift the stay and allow the matter to proceed by determining the validity of the arbitration agreement. ECF No. 29. A telephonic hearing took place on June 26, 2019, and a stipulated order to resolve Plaintiff's Motion to Lift the Stay was entered into on July 18, 2019. ECF No. 34.  Pursuant to the Order, the parties agreed to submit this dispute to arbitration before the American Arbitration Association ("AAA"), which was to be conducted pursuant to AAA's Consumer Arbitration Rules before a panel of three arbitrators. *Id*.

On August 26, 2019, Plaintiff provided Defendant JPay with eight (8) claimants seeking arbitration of their claims pursuant to the July 18, 2019 Order, under the same arbitration terms agreed upon for Plaintiff Kensu's claims ("the Kensu Terms"). Exhibit A.  The Kensu Terms include resolving the dispute before

the American Arbitration Association ("AAA") pursuant to AAA's Consumer Arbitration rules, as well as conducting the arbitration before a panel of three arbitrators. ECF No. 34.  Plaintiff also informed Defendant that an additional letter would follow containing a request to arbitrate several additional cases under the same terms. Exhibit B, p. 2. Defendant JPay consented to arbitrate each of the initial eight claimants' cases individually pursuant to the Kensu Terms and as outlined in the July 18, 2019 Order. *Id*. at p. 1.  On September 20, 2019, Plaintiff sought concurrence to resolve claims under the Kensu Terms pursuant the above order for an additional nineteen (19) claimants. Exhibit C.

On October 31, 2019, Defendant's counsel notified Plaintiff that JPay would not arbitrate the claims of the nineteen additional claimants pursuant to the above terms. Exhibit D.  Defendant JPay reasoned that:

> "[i]f the nineteen prospective claimants identified in your September 20, 2019 letter wish to bring claims against JPay Inc., they must do so in accordance with the most recent Terms of Service and Warranty Policy ("Terms") to which each prospective claimant has agreed. I have enclosed the operative terms for your reference.
>
> Please note that pursuant to section 9(b) of the Terms, prospective claimants are required to seek informal dispute resolution in accordance with the Terms prior to initiating an arbitration. JPay is not currently aware of any of the nineteen claimants having satisfied this requirement. Additionally, please note that the Terms provide for arbitration by the American Arbitration Association pursuant to its Consumer Arbitration Rules, but do not provide for a three-arbitrator panel.

*Id*. Thus, at some point following the filing of Plaintiff's lawsuit, and most likely after the agreement to arbitrate the eight individuals from Exhibits A and B, Defendant JPay has contacted the putative class to alter their terms under the agreement, substituting the previously agreed upon Kensu Terms with JPay's new Terms of Service and Warranty Policy. These new terms require claimants to seek "informal dispute resolution" prior to arbitration, as well as remove the obligation of a three-arbitrator panel. Exhibit D.

On November 27, 2019, Defendant JPay accused Plaintiff of "clear bad faith gamesmanship tactics," claiming the agreement Plaintiff reached on the arbitration of the first eight claimants "is no longer applicable, and JPay will no longer extend the courtesy of arbitrating with the eight claimants 'under the Kensu terms.'" Exhibit E. Defendant's accusations focused on Plaintiff's additional prospective claimants, whose "costs of proceeding before a three-arbitrator panel" allegedly "greatly exceeds the value of any individual claim you have presented." *Id*. Defendant further accused Plaintiff's counsel of "simply pursuing a strategy or tactic designed purely to harass JPay with the prospect of exorbitant arbitration-related costs in connection with frivolous or *de minimis* claims." *Id*. Defendant's letter again referenced JPay's new Terms of Service and Warranty Policy, alleging that "each and every claimant" is bound by and "must seek resolution" pursuant to JPay's new terms.

Accordingly, as fully reasoned below, Plaintiff moves this Court to enter an Order forbidding JPay from communicating with the putative class in any way that affects their rights, instructing JPay that changes to the terms in the agreements are null and void, and allowing all putative members of the class to arbitrate their claims under the terms that were in effect that the time Defendant substituted AAA (the Kensu Terms).

## LEGAL STANDARD

In general, Fed. R. Civ. P. 23 provides that the Court may issue orders that:

  A. determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;
  B. require—to protect class members and fairly conduct the action— giving appropriate notice to some or all class members of:
    i. any step in the action;
    ii. the proposed extent of the judgment; or
    iii. the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;
  C. impose conditions on the representative parties or on intervenors;
  D. require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or
  E. deal with similar procedural matters.

Fed. R. Civ. P. 23.

## ARGUMENT

In this case, Defendant JPay uses contractual provisions compelling arbitration to deter individuals from filing claims and further hinders claimants from pursuing arbitration through the use of expensive and intimidating arbitration

provisions, such as a three-arbitrator panel.  The record demonstrates that following

Defendant's motion to compel arbitration, and Plaintiff bringing forth claimants

pursuant to such arbitration that Defendant so emphatically argued for, Defendant

communicated with putative class members to alter terms of their agreements, thus

effecting their status and rights under the current litigation, and also obstructing any

resolution for claims under the previously agreed upon arbitration provisions.

As outlined and explained below, Plaintiff moves this Court to enjoin

Defendant from communicating with the putative class, effecting or altering their

rights, and to take corrective action to reestablish any rights of the putative class that

may have been altered due to this improper communication.  Additionally, Plaintiff

respectfully requests this Court compel Defendant to arbitrate claimants' claims

pursuant to the Kensu Terms, as well as this Court's July 18, 2019 stipulated Order.

I.   THIS COURT SHOULD ENJOIN DEFENDANT FROM INAPPROPRIATE CONTACT WITH THE PUTATIVE CLASS AND TAKE CORRECTIVE ACTION TO REESTABLISH THE PUTATIVE CLASS'S RIGHTS

"It is well established that Federal Rule of Civil Procedure 23(d) authorizes a

court to enjoin a named party from communicating with unnamed potential class

members." *Tolmasoff v. GM, LLC*, No. 16-11747, 2016 U.S. Dist. LEXIS 85101, at

*28 (E.D. Mich. June 30, 2016) (citing Fed. R. Civ. P. 23(d)(1) ("In conducting an

action under this rule, the court may issue orders that: . . . (C) impose conditions on

the representative parties or on intervenors . . . ."); *see also Urtubia v. B.A. Victory*

*Corp.*, 857 F. Supp. 2d 476, 484 (S.D.N.Y. 2012) ("Rule 23 . . . provides that, in the context of a class action, a district court may impose conditions on the representative parties, which includes limiting communications between representative parties and potential class members."); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 U.S. Dist. LEXIS 83505, 2012 WL 2239797, at *4 (N.D. Cal. June 15, 2012) (unpublished); *In re Southeastern Milk Antitrust Litig.*, No. MDL 1899, 2009 U.S. Dist. LEXIS 102635, 2009 WL 3747130, at *2 (E.D. Tenn. Nov. 3, 2009) (unpublished) ("[T]he court's authority to limit communication is quite clearly established by the weight of applicable authority, subject only to restrictions mandated by the First Amendment."); *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000)*; Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994); Manual for Complex Litigation (Fourth) § 21 ("Once class allegations are made, decisions such as whether to settle and on what terms are no longer wholly within the litigants' control. . . . *The court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative powers to do so, reflecting the equity origins of class actions*." (emphasis added)); 7B Charles A. Wright *et al.*, Federal Practice and Procedure § 1794 (3d ed.) ("[A] gag order in a particular case may be a permissible exercise of the court's power to manage the class suit under Rule 23(d)."). This authority under Rule 23(d) to enjoin or control communications exists even prior to class

certification. *See Urtubia*, 857 F. Supp. 2d at 484 ("A court possesses such supervisory authority even before a class is certified."); *accord Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 768 n.2 (N.D. Ohio 2010)*; Sorrentino v. ASN Roosevelt Ctr*. LLC, 584 F. Supp. 2d 529, 532 (E.D.N.Y. 2008).

As the source of this Court's authority to enjoin abusive communications is Rule 23(d) rather than Rule 65 (governing preliminary injunctions and restraining orders), a party does not have to establish the four preliminary-injunction factors to obtain such an injunction. *Tolmasoff,* 2016 U.S. Dist. at *30-31 (citing *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1201 (11th Cir. 1985) (An order enjoining abusive communications is a "directive[] to counsel in their capacity as officers of the court, pursuant to the court's inherent power to manage its cases. . . . The more relaxed prerequisites of Rule 23[] therefore appl[y] . . . ."). Nonetheless, a court's discretion to enter such an order "is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules," as well as by the First Amendment. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

To satisfy the requirements of Rule 23(d), "an order limiting communications between parties should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties" that would occur if such an order is not granted. *Tolmasoff,* 2016 U.S. Dist. at *31 (citing *Gulf Oil*, 452 U.S. at 101). The moving party must demonstrate

that the actual or anticipated communications are or will be "abusive in that '[they] threaten[] the proper functioning of the litigation.'" *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554. 561 (S.D. Fla. 2008) (quoting *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003)); *see also Williams v. United States Dist. Court*, 658 F.2d 430, 435 (6th Cir. 1981) ("[T]here must be a specific showing by the moving party on the record of abuses or potential abuses."). Examples of abusive communications are those that are false or misleading, contain material omissions, or are coercive or intimidating. *See Jeld-Wen*, 250 F.R.D. at 561; *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005); *Cox Nuclear Med. v. Gold Cup Coffee Servs.*, Inc., 214 F.R.D. 696, 698 (S.D. Ala. 2003); Manual for Complex Litigation (Fourth) § 21.12 (explaining that a party may not "give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class").

Among the potential abuses associated with intra-class communications are: "(1) the susceptibility of nonparty class members to solicitation amounting to barratry, (2) the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding, and (3) unapproved communications to class members that misrepresent the status or effect of the pending action." *Doe v. Mich.*

*Dep't of Corr.*, No. 13-14356, 2014 U.S. Dist. LEXIS 105222, at *13 (E.D. Mich. Aug. 1, 2014) (citing *Williams*, 658 F.2d at 436).

Here, Defendant's conduct amounts to an unapproved communication to the class that misrepresents the status of and effects the pending litigation.  Pursuant to the above-referenced communication between Defendant and Plaintiff's counsel, Defendant JPay contacted the putative class, and in an unknown way, had them agree to JPay's "most recent Terms of Service and Warranty Policy." Exhibit D. Defendant now seeks to bind the putative class to these new terms, rather than the previously agreed upon Kensu Terms.  It is unknown how Defendant sought to have the putative class agree to these terms, but what is certain is that an agreement to these new terms affects the rights of each putative class member.

Courts in the Sixth Circuit have found that a "defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may be 'misleading.'" *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 762-63 (N.D. Ohio 2010) (citing *e.g., Westerfield v. Quizno's Franchise Co*., 527 F. Supp. 2d 840, 2007 WL 1062200, *3 (E.D. Wis.); *Jenifer v. Del. Solid Waste Auth*., 1999 U.S. Dist. LEXIS 2542, 1999 WL 117762, *7 (D. Del.); *Carnegie v. H&R Block, Inc*., 180 Misc. 2d 67, 687 N.Y.S.2d 528, 532 (N.Y. Sup. Ct. 1999); *see also Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc*., 214 F.R.D. 696, 699 (S.D. Ala. 2003) ("The failure to recognize the existence of a putative class action [in

securing releases from putative class members], however, could be abusive only if the class action sought recovery in excess of that proposed by the defendant[.]")).

In *Friedman*, the court found that "[u]nlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23, by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation." *Friedman*, 730 F. Supp. 2d at 765 (citing *Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239 (E.D. Tex. 1997); *Motisola Malikha Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) ("Regardless of whether these [potentially coercive] communications occur before or after class certification, the effect is still the same[.]")).  The *Friedman* court ultimately held that "defendant's failure to notify putative class members of this litigation before obtaining settlements and releases from them is based on a 'clear record,' … and constituted a misleading communication meriting action." *Friedman,* 730 F. Supp. 2d at 765-66 (citing *Gulf Oil, supra*, 452 U.S. at 101-02; *Williams, supra*, 658 F.2d at 436.

Furthermore, the record demonstrates that Defendant's conduct is coercive. This Court has found "communications to be coercive (or to at least have the potential for coercion) where there is an ongoing business relationship between the potential class members." *Tolmasoff*, 2016 U.S. Dist. at \*34 (citing *Sorrentino v. ASN Roosevelt Ctr. LLC*, 584 F. Supp. 2d 529, 533 (E.D.N.Y. 2008)).  Here, there

is an ongoing business relationship between the putative class members and Defendant JPay, and absent the conduct at the subject of this motion, Plaintiff's complaint is premised upon the harmful and coercive conduct at the heart of that business relationship. The present motion details Defendant's coercive communications that seek to alter terms of the agreement that is central to this litigation, which serves to both limit the putative class members' rights, as well as limit the liability of the Defendant. Curiously, when faced with similar circumstances regarding a challenge to the operative JPay terms, Defendant has previously conceded that the terms that were in effect at the time of the initiation of the suit are the operable terms to be applied. *See Jpay, Inc v Salim*, ___F Supp 3d___; 2016 U.S. Dist. LEXIS 165631, at *7 (SD Fla, May 21, 2016).  Here, Defendant has misled the putative class to agree to their new Terms of Service and Warranty Policy, which alters and affects their rights under the Kensu Terms.

As Defendant contends, under the new terms, "prospective claimants are required to seek informal dispute resolution in accordance with the Terms prior to initiating an arbitration." Exhibit D.  Defendant JPay has also removed the three-arbitrator panel. *Id*.  Defendant JPay further contends that "each and every claimant" is bound by these terms. *Id*. Where Defendant contends Plaintiff engaged in "clear bad faith gamesmanship," here, Defendant clearly contacted the putative class and had them agree to new terms, seemingly not only to limit claimant's abilities to

challenge Defendant JPay's harmful, abusive conduct as outlined in the complaint but also, to limit their own financial liability based upon arbitration provisions they themselves have stipulated to and contracted for.

Similar unapproved, misleading, and coercive communications were examined in *Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985), where the court held that a defendant's solicitation of exclusion requests from putative class members "constituted an intolerable affront to the authority of the district court to police class member contacts." *Kleiner,* 751 F.2d at 1203.  In *Kleiner*, a defendant bank communicated with putative class members for the purpose of "soliciting class exclusion requests as a means to reducing its potential liability and quelling the adverse publicity the lawsuit had spawned." *Id.* at 1197.  The Eleventh Circuit Court of Appeals found that such conduct "reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." *Id.* at 1102 (citing *In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1106, 1140 n. 60 (7th Cir.1979)). Ultimately, the court concluded that the defendant's actions "obstructed the district court in the discharge of its duty to 'protect both the absent class and the integrity of the judicial process by monitoring the actions before it.'" *Id*. at 1203 (citing *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 331, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980); *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, n. 8 (5th Cir. 1977)).

Finally, this Court should invalidate Defendant's contention that claimants are bound under JPay's new terms.  Courts have "exercised their discretionary power under Fed. R. Civ. Proc. 23(d) to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with members' rights." *McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2018 U.S. Dist. LEXIS 179978, at *12-13 (C.D. Cal. Apr. 6, 2018) (citing *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS 172477, at *7 (N.D. Cal. Dec. 6, 2013) (invalidating arbitration agreement imposed before class certification where imposing agreement risked interference with putative class members' rights); *Balasanyan v. Nordstrom, Inc.*, No. 11-CV-2609-JM-WMC, 2012 U.S. Dist. LEXIS 30809, 2012 WL 760566, *1-2, 4 (S.D. Cal. Mar. 8, 2012) (declining to enforce individual arbitration agreement in class action where defendant's implementation of arbitration agreement was an improper class communication); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 U.S. Dist. LEXIS 75502, 2011 WL 2713818, *1 (E.D. Pa. July 13, 2011) (refusing to enforce arbitration agreement imposed during pendency of putative class action); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-54 (S.D.N.Y. 2005) (refusing to enforce arbitration agreement instituted after putative class action was filed as it might mislead class members).  Defendant's improper communication seeks to implement and enforce a new arbitration

agreement during this pending putative class action.  This conduct is detrimental to all putative class members' rights.

The present situation is analogous to *McKee v. Audible, Inc.*, where the court found a defendant's conduct to be coercive when it required "members to agree to its then current COU in order to" utilize the defendant's services. *Audible, Inc.*, 2018 U.S. Dist. at *17.  The court determined that a user's "choice was inherently coercive because it forced Audible members to give up a paid-for benefit and end an ongoing business relationship in order to refuse to waive their class action rights." *Id*. (citing *Kleiner*, 751 F.3d at 1202).  Here, this "choice" provided by Defendant JPay is inherently one and the same: prisoners were indubitably forced to either agree to JPay's new terms of service, or forfeit their use of their purchased content, products, or services entirely.  This Court should find that Defendant's actions were "1) unilateral, (2) directed at putative class members following the initiation of the lawsuit… (3) did not include notice of the current action, and (4) forced putative class members to waive their rights or give up benefits." *Id*. at *18. For these reasons, JPay's "actions constitute coercive and misleading communications that have interfered (and could continue to interfere) with the present litigation." *Id*.

The record demonstrates the need for this Court to limit Defendant's harmful interference with the rights of the putative class members. *Tolmasoff,* 2016 U.S. Dist. at *31; *Gulf Oil*, 452 U.S. at 101.  Plaintiff moves this Court to take corrective action

by way of an order forbidding Defendant JPay from communicating with the putative class in any way that affects their rights, instructing JPay that changes to the terms in the agreements are null and void, and, as outlined below, compelling Defendant to allow all putative members of the class to arbitrate their claims under the Kensu Terms.

## II.   THIS COURT SHOULD COMPEL ARBITRATION PURSUANT TO THE STIPULATED AGREEMENT OF THE PARTIES

On September 13, 2019, the parties entered into a stipulated agreement arbitrate eight of the putative class members' cases individually pursuant to the Kensu Terms and as outlined in the July 18, 2019 Order. *See* Exhibit A; Exhibit B. On November 27, 2019, Defendant reneged on their agreement, informing Plaintiff that they would no longer follow the stipulated agreement and refused to arbitrate the claims of the eight claimants under the Kensu Terms. Exhibit E[1]. Plaintiff respectfully requests this Court enforce the stipulated agreement of the parties and compel Defendant to arbitrate these claims pursuant to the terms defined in the stipulation.

First, the record demonstrates that the parties entered into a valid and enforceable agreement to arbitrate.  Plaintiff wrote to Defendant on behalf of the eight claimants each seeking arbitration.  Exhibit A.  Plaintiff identified each

---

[1] The redaction to the footnote on page one of the letter is because it contained references to confidential settlement discussions.

claimant's specific injuries, as well as definite terms for the proposed arbitration. *Id.* Defendant JPay accepted Plaintiff's offer. Exhibit B. Consideration was given in that the parties agreed to proceed through arbitration, rather than pursue each of these cases individually in federal court. Thus, a valid agreement existed. *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 608 (E.D. Mich. 2017) ("A contract requires an 'offer, acceptance, consideration, and sufficient specification of essential terms.'")

Second, a "stipulation once entered into should be construed to give it legal effect." *Van Dorn Plastic Machinery Co v NLRB*, 881 F2d 302, 304 (CA 6, 1989) (citing *National Audubon Society, Inc. v. Watt*, 219 U.S. App. D.C. 435, 678 F.2d 299, 307 (D.C.Cir. 1982)). "Interpretation of the stipulation is primarily a matter of ascertaining the intent of the parties. The intent of the parties, in turn, is a question of fact to be determined by the district court based on the evidence before it." *Van Dorn Plastic Machinery Co.,* 881 F2d at 305.

Here, as evidenced by the stipulation and agreement, in clear and definite terms, the parties intended to arbitrate the claims of the eight additional claimants pursuant to terms defined in the stipulation and the July 18, 2019 Order. Defendant only later sought to breach this agreement upon unfounded allegations of "clear bad faith gamesmanship" due to Plaintiff pursuing arbitration in accordance with the terms that Defendant themselves contracted for. Defendant's rescission of their

agreement to the stipulation has no basis in law and is only supported by their baseless allegations which challenge Plaintiff's mere following of rules and terms Defendant imposed.

Furthermore, a review of Exhibits A and B shows that Defendant's accusations are unfounded. Exhibit A demonstrates that Plaintiff's counsel was seeking agreement on arbitrating claims of putative class members who were choosing to arbitrate independently. As things stood, Plaintiff would have needed to file a motion similar to ECF #28 because JAMS was no longer arbitrating Jpay claims and AAA would not arbitrate without specific consent from Jpay. It was natural for Plaintiffs to seek to arbitrate under the same terms as Kensu. Nowhere in Exhibit A are there any representations concerning the existence of other claimants. The entire exchange between the parties concerning these eight claimants is reflected in Exhibit B. Once again, nowhere is there any language that could possibly be interpreted as bad faith or misrepresentation on behalf of Plaintiffs. Even more telling is that Exhibit B explicitly references that additional claims would be coming.

Also missing from Exhibit B is any indication that the agreement to arbitrate the eight under the Kensu terms was "[i]n the interest of good faith, efficiency, consistency, and courtesy, and with the understanding that only these claims would proceed as a finite set of matters, we agreed that these eight claimants could also

proceed with arbitration before AAA "under the Kensu terms"". Thus Defendants justification for reneging on the agreement to arbitrate the eight claims is simply a weak attempt to justify their outrageous conduct. This Court should not be misled.

Plaintiff respectfully requests this Court compel Defendant to follow the stipulated agreement between the parties, compelling Defendant to arbitrate the claims of the eight additional claimants pursuant to this Court's July 19, 2019 Order and under the Kensu Terms.

## III.    THIS COURT SHOULD COMPEL ARBITRATION FOR FUTURE LITIGATIONS

As Defendant has refused to conduct arbitrations pursuant to the stipulated Kensu Terms for the eight claimants discussed in the previous section, an issue before this Court is how future claimants, who are putative class members to the current suit, should bring their claims for resolution. As putative class members under the current suit, this Court maintains jurisdiction over their claims and can provide a resolution to determine who should adjudicate their cases. Plaintiff respectfully requests and moves this Court to compel arbitrations for all putative class members who wish to pursue their claims through arbitration.

Presently, the arbitrator of this case has failed. While the parties have stipulated and agreed to have AAA arbitrate the matter, this avenue for resolution is not available for all putative class members absent an Order or stipulation as AAA will not arbitrate claims without an agreement to arbitrate naming AAA as the

designated arbiter.  Here, the effective agreement between Defendant JPay and the putative class members designates JAMS as the chosen arbiter.  Plaintiff respectfully requests this Court name AAA as the arbitrator designated for all putative class members for arbitration pursuant to the Kensu Terms.

As argued by Defendant in their Opposition to Plaintiff's Motion to Lift Stay, "[i]f for any reason there is a lapse in the parties' ability to name an arbitrator as provided in an arbitration agreement, upon application of a party the court shall designate or appoint a substitute arbitrator." ECF No. 29, PageID 1272 (citing 9 U.S.C. § 5). Accordingly, "[a]s a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above." *Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739, at *2 (E.D. Mich. Dec. 3, 2009) (upholding arbitration agreement where contractually-selected arbitrator would no longer hear the relevant category of arbitration).  Therefore, Plaintiff requests this Court substitute AAA for JAMS and allow putative class members to pursue their claims through arbitration.

Additionally, this Court should conclude that future arbitrations for litigants who are putative class members should be held pursuant to this Court's July 18, 2019, which includes the provision that arbitrations be conducted before a panel of three arbitrators. Based upon prior stipulation of the parties, and arbitration

provisions instituted by Defendant, the parties agreed upon arbitration for Plaintiff Kensu, as well an additional eight claimants, pursuant to the Kensu Terms, which includes the provision of the three-arbitrator panel.  The Court should keep in mind that it was Jpay- not Plaintiffs- that attempted to force Plaintiffs to accept arbitration terms involving three arbitrators by including such a provision in the operative agreement.  Defendant has since reneged on their agreement, seemingly seeking to limit the panel that they both contracted for and insisted upon.  This Court should not allow Defendant to escape contractual provisions that they themselves have demanded for years that Plaintiff and the putative class abide by.

Accordingly, Plaintiff respectfully requests this Court compel Defendant to arbitrate the claims of putative class members pursuant to the Kensu Terms until after the class certification issue is resolved. As putative class members, this Court maintains jurisdiction over their claims and can provide a resolution to determine who should adjudicate their cases. Absent an Order or ruling from this Court, each putative class member would be required to file individualized cases and litigate the same issues discussed above. Plaintiff requests an order compelling Defendant to simply follow the terms and rules they themselves contracted for.

## <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests that the enter an Order forbidding JPay from communicating with the putative class in any way that affects

their rights, instructing JPay that changes to the terms in the agreements are null and void, and allowing all putative members of the class to arbitrate their claims under the Kensu Terms.

Dated: December 10, 2019                    Respectfully Submitted,

                                            EXCOLO LAW, PLLC

                                            */s/ Keith Altman*

                                            Keith Altman (P81702)
                                            Solomon Radner (P73653)
                                            Ari Kresch (P29593)
                                            Excolo Law PLLC
                                            26700 Lahser Road, Suite 401
                                            Southfield, MI 48033
                                            (516)456-5885
                                            kaltman@excololaw.com

                                            *Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2019, I served the foregoing document on Defendants *via* electronic filing.

Dated: December 10, 2019                          Respectfully Submitted,

EXCOLO LAW, PLLC

*/s/ Keith Altman*

Keith Altman (P81702)
Solomon Radner (P73653)
Ari Kresch (P29593)
Excolo Law PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
(516)456-5885
kaltman@excololaw.com