## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEMUJIN KENSU, INDIVIDUALLY,
AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

        Plaintiff,

    v.

JPAY INC.

      *Defendant.*

Case No. 2:18-cv-11086-SFC-PTM

Hon. Sean F. Cox

Mag. Judge Patricia T. Morris

---

| | |
|---|---|
| EXCOLO LAW PLLC | MORGAN, LEWIS & BOCKIUS LLP |
| Keith L. Altman (P81702) | Elizabeth Herrington (IL#6244547) |
| Solomon M. Radner (P73653) | Zachary R. Lazar (IL#6325727) |
| Ari Kresch (P29593) | 77 West Wacker Drive, Fifth Floor |
| 26700 Lahser Road, Suite 401 | Chicago, IL 60601 |
| Southfield, MI 48033 | 312-324-1000 |
| 516-456-5885 | beth.herrington@morganlewis.com |
| kaltman@lawampmmt.com | |
| | HICKEY HAUCK BISHOFF & JEFFERS PLLC |
| | Benjamin W. Jeffers (P57161) |
| | One Woodward Avenue, Suite 2000 |
| | Detroit, MI 48226 |
| | 313.964.8600 |
| | bjeffers@hhbjlaw.com |
| *Attorneys for Plaintiff* | |
| | *Attorneys for Defendant* |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CORRECTIVE ACTION AND TO COMPEL ARBITRATION

# <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED.................................................................iii

STATEMENT OF CONTROLLING AUTHORITY ............................................. iv

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................... 5

ARGUMENT ........................................................................................................ 11

I.      THIS ACTION IS STAYED ..................................................................... 11

II.     JPAY HAS NOT IMPROPERLY CONTACTED ANY CLASS ................... 12

        A.    Potential Claimants Expressly Waived the Right to Participate in a Class Action............................................................................ 13

        B.    The May 3, 2019 Amendment to the TOU Was Necessary and Appropriate. .................................................................................. 15

III.    THE KENSU TERMS ONLY APPLY TO KENSU.................................... 17

        A.    The Informal Agreement with Eight Additional Claimants Was Non-Binding........................................................................... 18

        B.    The Eight Additional Claimants Are Not Harmed by Arbitration Under the TOU. ............................................................................ 19

IV.     NON-PARTY CLAIMANTS ARE NOT ENTITLED TO THE RELIEF SOUGHT ................................................................................................. 20

CONCLUSION..................................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fazio v. Lehman Bros.*,
340 F.3d 386 (6th Cir. 2003) ...........................................................................12

*Friedman v. Intervet Inc.*,
730 F. Supp. 2d 758 (N.D. Ohio 2010) ............................................................14

*Gulf Oil Co. v. Bernard*,
452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) ...................................15

*Kleiner v. First Nat'l Bank of Atlanta*,
751 F.2d 1193 (11th Cir. 1985) ........................................................................14

*Lancaster & York, LLC v. Oakland Cty. Treasurer*,
No. 333064, 2017 WL 4654937 (Mich. Ct. App. Oct. 17, 2017),
*appeal denied*, 503 Mich. 870, 918 N.W.2d 187 (2018)..................................18

*McKee v. Audible, Inc.*,
No. CV 17-1941-GW(EX), 2018 WL 2422582 (C.D. Cal. Apr. 6,
2018) ..................................................................................................................14

*PTN-NRS, LLC v. Cty. of Wayne*,
No. 332135, 2017 WL 4447016 (Mich. Ct. App. Oct. 5, 2017) .......................19

*Simon v. Pfizer Inc.*,
398 F.3d 765 (6th Cir. 2005) ............................................................................12

*Ulticare, Inc. v. Cty. of Wayne*,
No. 272229, 2007 WL 2807938 (Mich. Ct. App. Sept. 27, 2007) ......................9

**Statutes**

9 U.S.C. § 3 ................................................................................................1, 6, 7, 11

9 U.S.C. § 5 ..........................................................................................................*passim*

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether Plaintiff's Motion on behalf of non-parties violates the stay ordered by this Court and mandated by the Federal Arbitration Act, and should be stricken?

**Defendant answers: Yes**

2. Whether Defendant's Amendment of its Terms of Use, as expressly permitted by the terms, and necessitated by factual circumstances, with respect to non-parties who have waived the right to participate in a class action, constitutes improper communication with a class?

**Defendant answers: No**

3. Whether this Court should enforce a non-binding agreement between Defendant and non-parties to this litigation?

**Defendant answers: No**

4. Whether there is any basis for this Court to compel Defendant to arbitrate with non-parties under any terms other than the Terms of Use to which the non-parties have expressly agreed?

**Defendant answers: No**

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to Local Rule 7.1(d)(2), Defendant states that the following authorities are the controlling or most appropriate authorities for the relief requested by Plaintiff's motion and this opposition:

9 U.S.C. § 3

*Fazio v. Lehman Bros.*, 340 F.3d 386 (6th Cir. 2003)

*Kensu v. JPay, Inc.*, 2019 WL 1109948, at *2 (E.D. Mich. Mar. 11, 2019)

*Kensu v. JPay, Inc.,* No. 2:18-cv-11086 (E.D. Mich. Oct. 22, 2018), *report and recommendation adopted* 2019 WL 1109948 (E.D. Mich. Mar. 11, 2019)

*Lancaster & York, LLC v. Oakland Cty. Treasurer*, No. 333064, 2017 WL 4654937 (Mich. Ct. App. Oct. 17, 2017), *appeal denied*, 503 Mich. 870, 918 N.W.2d 187 (2018)

## PRELIMINARY STATEMENT

On March 11, 2019, this Court granted Defendant JPay's Motion to Compel Arbitration. (ECF No. 27.) The Court upheld the arbitration provision contained in JPay's Terms of Use ("TOU"), compelled Plaintiff Temujin Kensu to arbitrate his claims on an individual basis, and stayed this action. (*Id.*) As Judge Cox wrote, "this action is **STAYED** until the conclusion of any arbitration." (*Id.*) The Federal Arbitration Act ("FAA") also requires that this action is stayed until the conclusion of Kensu's arbitration. *See* 9 U.S.C. § 3.

On December 9, 2019, both Parties to this litigation confirmed to Magistrate Judge Morris that Kensu's arbitration is ongoing. (Minute Entry, 12/09/2019.) This has not changed. Nevertheless, on December 10, 2019, Plaintiff filed this "Motion for Corrective Action" in blatant violation of the stay, demanding relief on behalf of non-parties to this litigation. Plaintiff's motion offers <u>no basis</u> to lift the stay. Because the action is stayed, Plaintiff's motion must be struck.

If the Court were to consider Plaintiff's motion on the merits, Plaintiff's motion would fail.[1] Plaintiff's first argument is founded on the false premise that JPay has improperly communicated with a class, and seeks relief on behalf of a class. As the Court expressly acknowledged, Plaintiff and all similarly situated individuals

---

[1] To be clear, it is JPay's position that the ongoing stay of this action is a threshold issue, which cannot be overcome, and that consideration of Plaintiff's motion on the merits would violate the stay and the Federal Arbitration Act.

1

have waived the right to participate in a class action lawsuit or class arbitration, and "[s]uch waivers are enforceable" under Michigan law.  (*See* ECF No. 23, n. 4, MAGISTRATE'S REPORT AND RECOMMENDATION.)   JPay cannot have improperly communicated with a class that does not exist.

Furthermore, Plaintiff has not alleged any improper communication.  As this Court may recall, on March 11, 2019, Kensu was compelled to arbitrate his claims under the TOU that was then in effect, which named JAMS as the arbitrator. Subsequently, in April of 2019, JPay was informed by JAMS that it would no longer hear prisoner arbitrations.  (*See* ECF No. 29-1.)  On May 3, 2019, as permitted by the terms of the TOU itself, JPay revised its arbitration agreement to provide for an alternative arbitration tribunal.[2]  But non-parties who agreed to JPay's revised terms had already agreed to a valid and enforceable class action waiver and agreement to arbitrate.  Accordingly, the revision—necessitated by circumstances beyond JPay's control—did not harmfully interfere with any rights of these individuals.

Plaintiff's second argument improperly asks this Court to enforce a non-binding agreement between JPay and non-parties to this litigation.  These claimants

---

[2] Plaintiff's argument is, in part, predicated on the false allegation that this revision occurred subsequent to the Parties' July 18, 2019 Stipulated Order (ECF No. 34), despite Plaintiff having been informed otherwise in prior briefing (ECF No. 29, pp. 5, 14, 18).  This is the second time since this action was stayed that Plaintiff has brought a motion predicated on false factual allegations.  (*See* ECF No. 28, falsely alleging that JAMS would not arbitrate this dispute because JAMS found JPay's arbitration clause did not meet JAMS' minimum standards.)

2

have all expressly waived their right to participate in a class action, and are not parties to the action before this Court. But even if this Court could grant relief on behalf of non-parties, there is no contract to enforce. JPay offered a non-binding accommodation to opposing counsel in the interest of good faith cooperation. This accommodation would have permitted eight claimants to seek arbitration before a three-arbitrator American Arbitration Association ("AAA") panel, as JPay had agreed to do with Kensu.[3] After realizing the high costs charged by AAA to JPay to initiate each three-arbitrator panel, Plaintiff then identified an <u>additional</u> forty-nine claimants, and demanded that these arbitrations be heard under the "Kensu Terms," which provide for a AAA three-arbitrator panel.[4] Given Plaintiff's bad-faith gamesmanship, intended to extort an unreasonable settlement under the threat of run-away fees, JPay rescinded its prior accommodation, and notified Plaintiff's counsel that claimants would be required to bring any claims under the most recent TOU, as amended in May of 2019. Plaintiff asks this Court to set aside the binding TOU in favor of an informal accommodation. This accommodation was not a contract, as

---

[3] At the time of Judge Cox's order compelling arbitration, JPay's Terms provided that arbitration would be heard by a three-arbitrator panel of JAMS. At the time of the stipulation, JPay's Terms provided that arbitration would be heard by a single AAA arbitrator.

[4] Plaintiff's Motion understates the total number of claimants Plaintiff's counsel purports to represent. To be clear, including Kensu, Plaintiff's counsel is currently seeking individual AAA arbitrations before three-arbitrator panels for <u>fifty-eight</u> claimants, and has alluded to bringing "hundreds" of future claimants.

the purported agreement lacks consideration.  And even if the agreement were binding, Plaintiff's counsel has not and cannot articulate actionable damages resulting from the supposed breach, as claimants are still permitted to bring their arbitration claims under the most recent binding TOU.

Finally, even if Plaintiff could overcome the stay and succeed on either ground for relief sought, there is no basis to award the relief Plaintiff seeks.  Plaintiff seeks, through both theories, an order requiring JPay to arbitrate individually with each future claimant under the "Kensu Terms" inclusive of an AAA three-arbitrator panel. These terms were individually negotiated and stipulated with Plaintiff Kensu, and were never included in any version of the TOU.  What Plaintiff seeks is not "relief," it is a judicial order that would rewrite the terms of the TOU so as to enable Plaintiff's counsel to bring hundreds of meritless or *de minimus* claims against JPay at extraordinary cost to JPay.

JPay respectfully requests that this Court uphold the stay currently in effect, as required by the FAA, and strike Plaintiff's Motion for Corrective Action and to Compel Arbitration.  Further, because Plaintiff's counsel seeks arbitration on behalf of non-parties under the terms of this Court's Stipulated Order, ECF No. 34, JPay requests that this Court issue an Order clarifying that ECF No. 34 applies only to Plaintiff Kensu, and no other claimants.

## STATEMENT OF RELEVANT FACTS

Kensu is an inmate in the custody of the Michigan Department of Corrections ("MDOC").  (Am. Compl. ¶ 12.)  As a legal consequence of Kensu's incarceration, Kensu has limited access to commerce, and may purchase products and services only from MDOC and vendors who contract with MDOC for such purposes.  (Am. Compl. ¶ 31.)  JPay is one such vendor, providing electronic communication services, tablets, media content, and accessories to inmates in the custody of MDOC. (Am. Compl. ¶ 33.)

Inmates purchase JPay's products and services through electronic kiosks and tablets, which require users to accept JPay's TOU prior to making a purchase.  Kensu first accepted the TOU in 2016, and accepted updated terms in 2017 and 2018.  Each of these TOUs contained a broad, binding arbitration provision:

> Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those rules (the "JAMS Rules"). . . . Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(2016 TOU § 5(a); 2017 TOU § 8(a); 2018 TOU § 8(a).)[5] The 2017 and 2018 TOU added clarifying language to this provision, in bolded typeface, stating that "**You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration**," as well as additional text at the beginning of the section stating "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.**" (2017 TOU § 8; 2018 TOU § 8 (emphasis in original).) As such, all persons who use JPay's products and services expressly waive their right to participate in a class action.

Kensu brought this action on April 4, 2018 asserting various claims arising from Kensu's core allegation that JPay's products and services are of deficient quality. (ECF No. 1.) JPay moved to compel arbitration pursuant to the TOU. (ECF No. 12.) Kensu then filed an Amended Complaint in an attempt to circumvent the arbitration provision. (ECF No. 18.) JPay filed a Motion to Compel Arbitration directed at the Amended Complaint. (ECF No. 19.) Magistrate Morris issued a Report recommending JPay's motion be granted. (ECF No. 23.)

Plaintiff Kensu was compelled to submit this dispute to arbitration on March 11, 2019. (ECF No. 27.) The Federal Arbitration Act, 9 U.S.C. § 3, requires that

---

[5] All three versions are included in ECF No. 19-2.

this action is stayed "until such arbitration has been had…."  Accordingly, Judge Cox ordered this matter "**STAYED** until the conclusion of any arbitration."  (ECF No. 27.)

In April of 2019, JPay was informed by JAMS that it would no longer hear arbitrations brought by inmate claimants.  In a letter to JPay, JAMS explained that this decision resulted from JAMS' administrative and logistical difficulties arbitrating inmate actions.  (ECF No. 29, Exhibit A.)  JAMS did not, in any way, criticize JPay or JPay's arbitration practices.  *Id*.

Effective May 3, 2019, JPay revised its TOU to remedy the failed term and select AAA as its designated arbitrator on a go-forward basis.  (Alegre Decl. ¶ 3.) Whereas the original TOU naming JAMS provided that arbitration would be conducted by a panel of three arbitrators, the 2019 TOU provides for arbitration conducted by AAA pursuant to AAA's Consumer Arbitration Rules.  (Ex. A § 9.) AAA's Consumer Arbitration Rules provide that "[i]f the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator."  *See* AAA Consumer Arbitration Rules, p. 17.  This revision was necessary because of the excessive costs of three-arbitrator panels.  Specifically, each three-arbitrator AAA panel generates a $9,700 invoice from AAA to the business at the initiation of the dispute, irrespective

of the merits of the underlying claims.[6]  Where, as here, Plaintiff's counsel identifies fifty-seven claimants, each asserting damages of approximately $1,000, Plaintiff's counsel would be able to leverage the costs of AAA arbitration to demand pre-arbitration settlements far in excess of the value of claims asserted, irrespective of the merits of the underlying claim.  (*See* Exs. B, C, F, G.)

To further prevent such bad-faith gamesmanship tactics, the 2017, 2018 and 2019 versions of the TOU all require claimants to attempt to resolve complaints directly with JPay prior to initiating arbitration, to permit resolution without incurring unnecessary arbitration costs.  (2017 TOU § 8; 2018 TOU § 8; 2019 TOU § 9(b).)  The 2019 TOU added new language clarifying the informal dispute resolution process, including by providing a mailing and email addresses where disputes may be submitted, but the dispute resolution requirement itself existed in prior agreements.  (2017 TOU § 8; 2018 TOU § 8.)  The fifty-seven additional claimants Plaintiff's counsel purports to represent have not yet complied with the informal dispute resolution provision. (Alegre Decl. ¶ 6.)

On May 13, 2019 Plaintiff filed a Motion to Lift Stay, asserting that JAMS' decision to not hear Plaintiff Kensu's claim rendered the arbitration agreement

---

[6] AAA's Consumer Arbitration Rules require the business to pay a $425 filing fee, $7,500 in arbitrator compensation deposits, and a $1,775 case management fee at the initiation of any three-arbitrator panel arbitration.  *See* AAA Consumer Arbitration Rules, p. 33.

unenforceable.  (ECF No. 28.)  JPay opposed the motion, pointing out that pursuant to the FAA, 9 U.S.C. § 5, the correct course of action was for the Court to appoint a substitute arbitrator.  JPay did not seek to hold Kensu to the May 3, 2019 revised TOU, given that the Court had ordered arbitration under the prior TOU.  To resolve the motion sequence, Kensu and JPay agreed to substitute the term naming JAMS, and stipulated that Kensu would be permitted to bring his action before a three-arbitrator AAA panel (hereinafter, the "Kensu Terms").  (ECF No. 34.)  The substituted terms of the Stipulation apply to Plaintiff Kensu and Defendant JPay, and no other parties.  (*Id*.)

Kensu initiated his arbitration with AAA on August 19, 2019.  On December 11, 2019, a case management conference was held between Kensu and JPay before three arbitrators.  AAA issued a scheduling order on December 17, 2019.  As Kensu admitted before this court at the December 9, 2019 status conference, Kensu's arbitration is ongoing.

Separate and apart from Kensu's arbitration, on August 26, 2019, Plaintiff's counsel wrote to JPay identifying eight additional claimants, each alleging approximately $1,000 in damages, and asked for consent to arbitrate these eight claimants under the Kensu Terms.  (Ex. B)  In the interests of good faith, efficiency, consistency and courtesy, and with the understanding that Plaintiff's counsel would bring a limited set of claims to test common legal and factual arguments, JPay

informally consented to arbitrations for these eight claimants under the Kensu Terms.

Upon realizing the cost to JPay for initiating each three-arbitrator panel before AAA, Plaintiff's counsel wrote to JPay again on September 20, 2019 identifying an additional nineteen claimants, again uniformly asserting $1,000 in damages per claimant. (Ex. C.) As a point of fact, many of these claimants have spent less than $1,000 on JPay services in total. (Alegre Decl. ¶ 7.) In one particularly egregious instance, Plaintiff's counsel asserts damages of $1,000 on behalf of a claimant who has spent less than $35 on JPay products and services. (Alegre Decl. ¶ 8.) In contemporaneous phone conversations, Plaintiff's counsel threatened to bring "hundreds" of similarly *de minimus* actions before expensive AAA three-arbitrator panels.

In response, JPay declined to extend the Kensu Terms to the nineteen claimants identified on September 20, 2019, and informed Plaintiff's counsel that these individuals could initiate arbitrations pursuant to the terms of the most recent TOU. (Ex. D.) Undeterred, Plaintiff's counsel wrote on October 31, 2019 of their intent to file the motion now before this Court, to compel arbitration under terms other than the terms of the TOU. (Ex. E.) To bolster this motion, and exert further leverage over JPay, Plaintiff's counsel wrote again on November 4, 2019 and December 2, 2019 identifying 30 additional claimants. (Exs. F, G.) JPay responded

10

to each letter, again declining to extend the Kensu Terms to non-parties, and reminding Plaintiff's counsel that arbitration is available under the terms of the current TOU.

Now recognizing Plaintiff's counsel's improper strategy, on November 27, 2019 JPay withdrew its consent to arbitrate the eight claimants identified in the August 26, 2019 letter under the Kensu Terms, and directed all future claimants represented by Plaintiff's counsel to the TOU.  (ECF No. 35, Ex E.)

Plaintiff's counsel now brings this motion, in violation of the stay and seeking relief on behalf of non-parties, in an attempt to obtain settlement leverage driven by the extraordinary cost to JPay of never-ending arbitrations under the Kensu Terms, brought in connection with *de minimus* and potentially meritless claims and without precondition.

## **ARGUMENT**

## I.   **THIS ACTION IS STAYED**

As a threshold issue, this action is stayed pursuant to Judge Cox's March 11, 2019 order until the conclusion of Kensu's arbitration.  (ECF No. 27, p. 6.)  Because this action is stayed, Plaintiff's motion cannot be considered.

 This stay is mandatory under the FAA, 9 U.S.C. § 3, which provides "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…." *See also Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) ("If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete.").

Critically, the reason the FAA mandates a stay is because "a compulsory arbitration provision divests the District Court of jurisdiction[.]" *Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005) (citation omitted). All arbitrable issues must be resolved before a Court may exercise jurisdiction over any remaining disputes.

As admitted by Plaintiff at the December 9, 2019 status conference before Magistrate Judge Morris, Kensu's arbitration is ongoing. A status conference was held as recently as December 11, 2019, and a scheduling order was issued by AAA on December 17, 2019. Accordingly, the stay required by Judge Cox's order and the FAA remains in effect. Plaintiff has presented no legal basis to lift the stay. Plaintiff's motion must therefore be struck or denied.

## II.    JPAY HAS NOT IMPROPERLY CONTACTED ANY CLASS

Plaintiff seeks corrective action as a consequence of alleged "harmful interference with the rights of the putative class members." (ECF No. 35, p. 24.) Plaintiff's argument is meritless because Plaintiff and all alleged class members have expressly waived their right to participate in a class action. JPay could not possibly

12

communicate with a class, as there cannot possibly be a class.  Moreover, the alleged communication with these non-class members was necessary and appropriate following JAM's decision to no longer hear inmate arbitrations, and did not substantively injure or diminish the rights of the non-class.

### A.    Potential Claimants Expressly Waived the Right to Participate in a Class Action.

As acknowledged by the Magistrate Judge's Report and Recommendation, the TOU has contained the phrase "**You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration**" since 2017.  (ECF 23, p. 3 (emphasis in original).)  The Report also noted that, since 2016, the TOU has contained additional language stating "ALL DISPUTES, REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS.  YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT . . . ." (*Id*.)  In light of these clear class-waivers, the Report further opinioned that these waivers are enforceable.  (*Id*., p. 9 n. 4.)

It is logically untenable that JPay could have communicated with a class when all purported class members have expressly waived their right to pursue a class action.  Plaintiff's authorities are uniformly distinguishable on the grounds that they involve actions where there was no waiver in place at the initiation of litigation, such

that a putative class could be brought at that time, and defendants later attempted to modify the rights of putative class members.

For example, in *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2018 WL 2422582 (C.D. Cal. Apr. 6, 2018), defendant Audible moved to compel arbitration of a putative class action, but the court found Audible's then-existing arbitration agreement was unenforceable. *Id.* at *1. While litigation was ongoing, Audible revised its arbitration agreement in a manner that remedied the prior defects, and required putative class members to agree to the now-enforceable arbitration agreement. *Id.* at *3. The court found that this communication was improper because at the inception of litigation alleged class members had the right to join a class, and thus constituted a putative class. Likewise, in *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1196 (11th Cir. 1985), the court found a defendant had acted inappropriately by soliciting class exclusions from potential class members after a putative class action was filed. And in *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010), a defendant sought to obtain settlements and releases from individual putative class members while the action was pending.

These facts are in stark contrast to this matter, where at the inception of litigation all potential class members—and the named plaintiff himself—had already

expressly waived the right to participate in a class action.[7]  Simply put, in Plaintiff's authorities, defendants sought to exclude members of a putative class from ongoing litigation.  Here, pre-existing waivers have precluded the existence of a class from day one of the litigation.

### B.     The May 3, 2019 Amendment to the TOU Was Necessary and Appropriate.

Even if JPay's actions could constitute communications with a "putative class," no relief is warranted because JPay's communications did not constitute harmful interference with any recipient's rights.  Plaintiff broadly alleges that claimant's rights were hindered when JPay replaced the 2018 TOU with the 2019 TOU.  But Plaintiff cannot assert any factual basis demonstrating that these amendments substantively interfered with the rights of claimants.  As the Supreme Court has determined, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S. Ct. 2193, 2200, 68 L. Ed. 2d 693 (1981).  Plaintiff's allegations do not meet this standard.

---

[7] There are additional facts and circumstances unique to each of Plaintiff's authorities which warrant distinction from the matter at issue before this Court.  But for simplicity, the Court need not go beyond the common distinction discussed herein.

Under the 2018 TOU, in effect at the time of Judge Cox's March 11, 2019 order compelling arbitration, claimants were permitted, "[i]n the event JPay is unable to resolve a complaint you may have to your satisfaction," to bring an arbitration before JAMS.  (2018 TOU § 8.)  However, due to no fault of JPay's, JAMS determined in April of 2019 that it would no longer hear prisoner arbitrations.  Accordingly, any party asserting a new claim in April of 2019 would be permitted to—after providing JPay an opportunity to resolve the complaint—bring arbitration and have a court appoint a substitute arbitrator pursuant to 9 U.S.C. § 5.

The "improper communication" at issue is JPay's May 3, 2019 amendment to the TOU, which substitutes AAA's Consumer Arbitration Rules in place of a three-arbitrator JAMS panel, to remedy the failed term.  The 2018 TOU and all prior versions expressly permit JPay to amend the TOU at any time.  (*See* 2018 TOU Preamble.)  Plaintiff does not and cannot explain how the substitution of AAA for JAMS, or three arbitrators for one, interferes with any claimant's rights.  The amendment further clarified and formalized the existing pre-arbitration dispute resolution requirement, but again, Plaintiff does not and cannot explain how these amendments interfere with any substantive right.

In fact, the 2019 TOU expands the rights of claimants, as it adds a provision expressly permitting small claims court as an alternative jurisdiction for any dispute.  (2019 TOU § 9(a).)  Moreover, while the 2018 TOU required arbitration to occur in

16

Miami, Florida, the 2019 revision permits arbitration in the county of claimant's correctional facility.  (2018 TOU § 8(c); 2019 TOU § 9(C).)

In sum, JPay's communication with prospective claimants was necessary to amend the selection of arbitrator, and expanded the rights of prospective claimants. There is no basis to find that the 2019 TOU improperly interfered with the rights of the non-class claimants.

## III.    THE KENSU TERMS ONLY APPLY TO KENSU

The July 18, 2019 Stipulated Order to Resolve Plaintiff's Motion to Lift Stay (ECF No. 34), which sets forth the so-called Kensu Terms, is between Kensu and JPay.  At the time of Judge Cox's order to compel arbitration, the TOU provided that arbitrations would be heard by a three-arbitrator JAMS panel.  When JAMS declined to hear inmate arbitrations as of April 2019, the arbitration provision remained enforceable under 9 U.S.C. § 5, and the Court was empowered to appoint a substitute arbitrator.  By the time Plaintiff brought his motion to lift the stay, the 2019 TOU was already in effect.  The 2019 TOU provides that arbitrations are to be heard by a single AAA arbitrator.   By way of compromise, JPay stipulated that Plaintiff Kensu—and only Plaintiff Kensu—could bring his arbitration before a three-arbitrator AAA panel, as a substitution of the arbitrator selection term contained in the TOU.  (ECF No. 34.)  The Stipulation specifically provides that "Plaintiff will

17

submit this dispute to arbitration before the American Arbitration Association." (*Id.* (emphasis added).)

Plaintiff now asks this Court, in purpose and effect, to rewrite the Stipulation to include non-party claimants. Plaintiff incorrectly claims that "[o]n September 13, 2019, the parties entered into a stipulated agreement arbitrate [sic] eight of the putative class members' cases individually pursuant to the Kensu Terms…." (ECF No. 35 p. 25.) No such stipulation exists.

### A. The Informal Agreement with Eight Additional Claimants Was Non-Binding.

JPay informally agreed to accommodate claims brought by eight claimants under the Kensu Terms in the interests of good faith, efficiency, consistency and courtesy, and with the understanding that Plaintiff's counsel would bring a limited set of claims to test common legal and factual arguments. When it became clear that Plaintiff's counsel intended to use the costs associated with the Kensu Terms to exert settlement leverage far in excess of the value of the underlying claims, JPay rescinded its consent.

JPay's accommodation did not constitute a valid or enforceable agreement to arbitrate. It is axiomatic that, "[t]o be enforceable, a contract must be supported by legal consideration." *Lancaster & York, LLC v. Oakland Cty. Treasurer*, No. 333064, 2017 WL 4654937, at *1 (Mich. Ct. App. Oct. 17, 2017), *appeal denied*, 503 Mich. 870, 918 N.W.2d 187 (2018). Moreover, under the pre-existing duty rule,

"a party's promise to provide performance that he is already otherwise required to provide . . . is not valid consideration to render an agreement an enforceable contract." *Id.*

Plaintiff contends that consideration was provided "in that the parties agreed to proceed through arbitration, rather than pursue each of these cases individually in federal court." (ECF No. 35 p. 26.) But all eight claimants had already agreed to proceed through arbitration, rather than in federal court, by accepting the TOU. Plaintiff asserts that consideration exists because claimants agreed to not breach their existing obligations under the TOU. *See Ulticare, Inc. v. Cty. of Wayne*, No. 272229, 2007 WL 2807938, at *3 (Mich. Ct. App. Sept. 27, 2007) ("Under the 'preexisting duty' rule, doing what one is legally bound to do is not consideration for a new promise.") This is a crystal-clear application of the pre-existing duty rule, and as such, no valid consideration exists. Therefore, there is no binding agreement for this Court to enforce.

## B.      The Eight Additional Claimants Are Not Harmed by Arbitration Under the TOU.

Plaintiff's breach-of-contract theory also fails because Plaintiff has not and cannot allege ascertainable damages resulting from JPay rescinding its consent to arbitrate under the Kensu Terms, as an alternative to arbitration under the terms of the 2019 TOU. *See PTN-NRS, LLC v. Cty. of Wayne*, No. 332135, 2017 WL

19

4447016, at *2 (Mich. Ct. App. Oct. 5, 2017) ("To state a claim for breach of contract, plaintiff must allege a contract, a breach of that contract, and damages.")

Under both sets of terms, claimants are permitted to bring arbitration before AAA, with two notable differences. First, under the Kensu Terms, arbitration is to be heard by a three-arbitrator panel, while the 2019 TOU does not provide for three arbitrators. Second, the 2019 TOU requires claimants to attempt to resolve complaints with JPay prior to escalating the dispute to arbitration and incurring unnecessary arbitration expenses. Plaintiff cannot meaningfully demonstrate that claimants are injured by arbitration before a single AAA arbitrator, in place of arbitration before three AAA arbitrators. Likewise, Plaintiff cannot reasonably allege that claimants are "damaged" by a pre-arbitration dispute resolution provision. Accordingly, absent damages, there is no basis for this Court to find a breach of the alleged agreement, or to award relief requested therewith.

## IV. NON-PARTY CLAIMANTS ARE NOT ENTITLED TO THE RELIEF SOUGHT

Plaintiff's motion cannot overcome the stay of this action, and does not articulate a valid basis for relief. But even if Plaintiff was entitled to some form of relief, there is no justification for the form of relief sought. Specifically, Plaintiff seeks an order compelling that all future arbitration for non-party claimants occur under the Kensu Terms, as are presented in the parties' July 18, 2019 stipulation between Kensu and JPay.

If this Court finds that the 2019 TOU is not applicable to future claimants, claimants would then be bound by the 2018 TOU, which selects JAMS as the arbitrator, and the Court would then be permitted under 9 U.S.C. § 5 to select a substitute arbitrator. But the Kensu Terms go beyond selection of an arbitrator, and contain additional substituted terms including the number of arbitrators and the location of arbitration, as a consequence of the negotiated compromise between Kensu and JPay. There is no legal basis for the Court to compel compliance with the full suite of Kensu Terms for disputes involving claimants other than Kensu.

At present, Kensu's arbitration is ongoing, and this matter is stayed pursuant to the FAA, which divests this Court of jurisdiction during the pendency of arbitration. All non-party claimants are fully capable of bringing arbitrations under the terms of the 2019 TOU. Plaintiff is improperly asking this Court to expand the individually-negotiated Kensu Terms to non-party claimants so that Plaintiff's counsel may exert improper settlement leverage over JPay vis-à-vis the Kensu Terms, which are more expensive to JPay than arbitration under the terms of the 2019 TOU. There is no legal basis to grant Plaintiff's request.

## CONCLUSION

For the above reasons, Defendant respectfully requests that the Court strike or deny Plaintiff's motion, and further issue an order for the benefit of any arbitrators

21

clarifying that the Stipulated Order ECF No. 34 applies only to Plaintiff Kensu and

no other claimants.

 Dated:  December 24, 2019                    Respectfully submitted,

                                              JPAY INC.

                                              By:   */s/ Elizabeth Herrington*
                                              MORGAN, LEWIS & BOCKIUS LLP
                                              Elizabeth Herrington (IL#6244547)
                                              Zachary R. Lazar (IL#6325727)
                                              77 West Wacker Drive, Fifth Floor
                                              Chicago, IL 60601
                                              312-324-1000
                                              beth.herrington@morganlewis.com

                                              HICKEY HAUCK BISHOFF &
                                              JEFFERS PLLC
                                              Benjamin W. Jeffers (P57161)
                                              One Woodward Avenue, Suite 2000
                                              Detroit, MI 48226
                                              313.964.8600
                                              bjeffers@hhbjlaw.com

                                              *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies the foregoing Opposition to Plaintiff's Motion for Corrective Action and to Compel Arbitration was filed on December 24, 2019 with the Clerk of Court using the CM/ECF system.

*/s/ Elizabeth Herrington*

Elizabeth Herrington (IL#6244547)
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312-324-1000
beth.herrington@morganlewis.com

*Attorney for Defendant*