UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

    *Plaintiff*,

v.

JPAY, INC.,

    *Defendant*.

                               /

CASE NO. 2:18-CV-11086

DISTRICT JUDGE SEAN F. COX
MAGISTRATE JUDGE PATRICIA T. MORRIS

## ORDER ON PLAINTIFF'S MOTION TO COMPEL
## AND FOR CORRECTIVE ACTION[1]
(ECF No. 35)

### I. Introduction

Before the Court is Plaintiff's motion to compel and for corrective action. (ECF No. 35.) Defendant has responded (ECF No. 36) and Plaintiff replied. (ECF No. 37.) In a previous Report and Recommendation (R&R) (ECF No. 23), which was adopted over objections (ECF No. 27), the Court granted Defendant's motion to compel arbitration. After the R&R was adopted, Plaintiff filed a motion to lift the stay and rule on the validity of the arbitration agreement. (ECF No. 28.) Defendant responded and Plaintiff replied. (ECF Nos. 29, 30.) A hearing was held on June 26, 2019, on the motion but the parties indicated to the court that they believed they could come to a resolution themselves and they were granted time to attempt to resolve the matter. (ECF Nos. 32, 33.) On July 18,

---

[1] Even if this motion were considered to be primarily one to lift the stay, such a motion is considered a non-dispositive motion that is not in excess of a magistrate judge's authority under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A). *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010); *Touton, S.A. v. M.V. Rizcun Trader*, 30 F. Supp.2d 508, 510 (E.D. Pa. 1998).

1

2019, the parties entered into a stipulated order resolving the motion to lift the stay. (ECF No. 34.) In the order, Plaintiff agreed to withdraw the motion to lift stay, reserved the right to challenge the validity of the arbitration agreement during arbitration, and agreed to arbitration under the AAA's Consumer Arbitration Rules before a panel of three arbitrators. (ECF No.34, PageID.1338.)

## II. Analysis

Defendant's response first raises the question of whether this Court may even rule on any motions, such as the instant motion, because the case has been stayed until arbitration is concluded. (ECF No. 36, PageID.1424-1425.) Plaintiff responds that the stay is immaterial because "[g]iven that there is still a putative class . . . either the parties must agree to arbitration terms [as to the putative class members] or the Court must impose them. This is exactly what is contemplated under FAA § 5." (ECF No. 37, PageID.1526.)

> First, § 5 of the FAA does not appear to support Plaintiff's position. It provides:
>
> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. Although the statute is not a model of clarity, one thing is clear: it addresses only the topic of appointment of an arbitrator, not providing the terms of arbitration, let

2

alone compelling terms of arbitration. Plaintiff offers no further support for the argument that the stay is immaterial and I find the presence of the stay does matter.

While the stay is in place, the Court should refrain from acting. One way to circumnavigate the stay would be to lift the stay either temporarily or permanently. Plaintiff has not expressly asked the Court to lift the stay; however, such a motion is not needed since "'the same court that imposes a stay of litigation has the inherent power and discretion to lift the stay.'" *Willick v. Napoli Bern Ripka & Assoc.*, 2018 WL 6443081, at *3 (C.D. Calif. Mar. 23, 2018) (*quoting Sierra-Med. Servs. Alliance v. Maxwell-Jolly*, 2011 WL 3837076, at *2 (C.D. Cal. Aug. 29, 2011) (temporarily lifting stay to allow plaintiff to amend his complaint)).

However, I find that lifting the stay is not advisable under these circumstances. In the instant case the stay was imposed until the conclusion of arbitration. (ECF No. 27, PageID.1228.) Arbitration is on-going. Thus, the reason for the stay persists. Cf., *Abington Emerson Capital, LLC v. Adkins*, 2018 WL 4771526, at *4 (S.D. Ohio Oct. 3, 2018) (lifting stay based on court's inherent authority to control its own docket where "reasons for staying this action in its entirety are no longer sufficiently compelling")

No circumstances have changed with respect to the reason for staying the case since arbitration has not yet concluded. *Colas Solutions, Inc, v. Blacklidge Emulsions, Inc.*, 2016 WL 9356209, at *2 (S.D. Ohio Aug. 8, 2016) (declining to lift stay to consider motion for change of venue where "the circumstances for imposing the stay have not changed" (citing and contrasting *March v. Johnson*, 263 F. Supp. 2d 49 (D.D.C. 2003) ("When

circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay *sua sponte* or on motion.""))).

Therefore, I suggest that lifting the stay would only serve to undermine the purpose of the stay, *i.e.*, to allow arbitration to be completed. *In Re Walsh Construction Co.*, 2018 WL 1411267, at *4 (W.D. Ky. Mar. 21, 2018) (declining to lift stay where the "stays were put in place to prevent litigation in other forums adjudicating the rights and liabilities of the parties . . . [and] [t]he Court will not now lift the stay and frustrate its own purpose in imposing them in the first place"). Accordingly, the stay will not be lifted.

Even if the Court were to lift the stay and consider the motion on the merits, the motion would be denied. In other words, Plaintiff's argument that the Court should enter an order "forbidding JPay from communicating with the putative class in any way that affects their rights, instructing JPay that changes to the terms in the agreements are null and void, and allowing all putative members of the class to arbitrate their claims under the terms that were in effect []at the time Defendant substituted AAA (the Kensu Terms)" does not compel a different result. (ECF No. 35, PageID.1354.)

Under Fed. R. Civ. P. 23(d)(1) the court may enter orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

(B) require – to protect class members and fairly conduct the action giving appropriate notice to some or all class members of

    (i) any step in the action;

    (ii) the proposed extent of judgment;

> > (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defense, or to otherwise come into the action;
>
> (C) impose conditions on the representative parties or on intervenors;
>
> (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or
>
> (E) deal with similar procedural matters.

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil C. v. Bernard*, 452 U.S. 89, 100 (1981). This authority exists even prior to class certification. *Friedman v. Intervet, Inc.*, 730 F. Supp. 2d 758, 765 (N.D. Ohio 2010).

However, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. "[S]uch a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102. The need to curtail communication and protect potential class members is most clearly raised when the communication "omitted critical information or were otherwise misleading or coercive." *McKee v. Audible, Inc.*, 2018 WL 2422582, at *5 (C.D. Cal. April 6, 2018) (collecting cases and holding that where defendant's communication was directed at putative class

members, did not include notice of the current action, and forced putative class members to waive their rights or give up benefits, the court would grant relief under 23(d)).

Plaintiff argues that Defendant "contacted the putative class, and in an unknown way, had them agree to JPay's 'most recent Terms of Service and Warranty Policy'" and that Defendant "now seeks to bind the putative class to these new terms, rather than the previously agreed Kensu Terms" and that "these new terms affect[] the rights of each putative class member." (ECF No. 35, pageID.1358.) Plaintiff further argues that Defendant's conduct is abusive, coercive, and misleading because the putative class members are bound by new terms of arbitration including the absence of a three-arbitrator panel.

Defendant responds that "separate and apart from Kensu's arbitration [that commenced on August 19, 2019], Plaintiff's counsel wrote to JPay identifying eight additional claimants" that defense counsel "informally consented" to arbitration under the Kensu terms but that after Plaintiff's counsel identified an additional 19 claimants, Defendant "declined to extend the Kensu Terms to the nineteen claimants identified on September 20, 2019, and informed Plaintiff's counsel that these individuals could initiate arbitration pursuant to the terms of the most recent TOU." (ECF No. 36, PageID.1423.) On November 4, 2019, and December 2, 2019, Plaintiff's counsel wrote to Defendant and identified 30 additional claimants. (*Id*.) Defendant responded to Plaintiff's counsel "again declining to extend the Kensu terms to non-parties, and reminding Plaintiff's counsel that arbitration is available under the terms of the current TOU." (ECF No. 36, PageID.1424.) Defendant contends that any communication was not improper because the potential

claimants expressly waived the right to participate in a class action, the recent (May 3, 2019) amendment to the TOU was necessary and appropriate, and because the Kensu terms apply only to Kensu. Defendant further argues that the informal agreement with the eight claimants was non-binding, the eight additional claimants are not harmed by arbitration under the current TOU, and that these non-parties are not entitled to any relief. (ECF No. 36, PageID.1426-1434.)

I find that the most salient and undisputed fact is understated by both parties. In this case, any direct communication between Defendant and the putative class members is only alleged to have occurred *after* Plaintiff's counsel identified the person and attempted to negotiate with defense counsel regarding terms of arbitration for those persons. Since all communication began with Plaintiff's counsel and the putative class member, surely Plaintiff's counsel apprised the putative class members of the on-going putative class action. Thus, potential class action members were not contacted unilaterally by Defendant out of the blue but instead were only approached by Defendant, if at all, after having been identified by Plaintiff's counsel. Plaintiff's counsel's concern is not that putative class members were unaware of the instant putative class action but rather that Defendant has not agreed to extend the terms negotiated with Plaintiff to all other putative class members. Rule 23(d) does not guarantee putative class members any specific terms of arbitration; it merely requires communication to be fair and not misleading. After Plaintiff's counsel and defense counsel negotiated, and defense counsel refused to provide the requested terms, then and only then is Defendant alleged to have communicated with them in the "unknown way." (ECF No. 35, PageID.1358.) Since these potential class members were already in

communication with and advised by Plaintiff's counsel, they were no doubt well-informed of the on-going litigation and their rights and options. Thus, they do not need to be protected. Armed with the information and awareness given them by Plaintiff's counsel, the potential claimants should be free to communicate with Defendant and accept or reject Defendant's offers. *See Jones v. Wafflehouse, Inc.*, 866 F.3d 1257, 1272 (11th Cir. 2017) ("Nothing in this case implicates the concerns we have expressed about '[u]nsupervised, unilateral communications with the plaintiff class [that] sabotage the goal of informed consent,'" where the plaintiff initiated communication with defendant.). Plaintiff has not made the necessary showing to justify curtailing Defendant's speech. *Gulf Oil, supra*. Therefore, even if the Court were to lift the stay, it would not enter any Order taking corrective action under 23(d).

Finally, Plaintiff's request that the court enforce an alleged contract to allow arbitration to proceed under the Kensu terms for the first eight identified putative class members and then expand this requirement to all putative class members (ECF No. 35, PageID.1364-1370) is also beyond the purview of Rule 23(d) and raises entirely new claims that are not properly pleaded in this case thus far. Accordingly, the court will take no action on this request.

### III. Conclusion

For the reasons above, Plaintiff's motion to compel and for corrective action (ECF No. 35) is **DENIED** and the case remains stayed pending the conclusion of arbitration.

**IT IS SO ORDERED.**

Review of this order is governed by 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and E.D. Mich. LR 72.1(d).

Date: February 7, 2020                    S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 7, 2020                    By s/Kristen Castaneda
                                          Case Manager